## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JESSICA HERZFELD, on behalf of herself and all others similarly situated, | Civil Action No.: |
| Plaintiff, | |
| v. | **CLASS/COLLECTIVE ACTION COMPLAINT** |
| 1416 CHANCELLOR, INC. d/b/a THE GOLD CLUB, and DOES 1 through 10, inclusive, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Jessica Herzfeld ("Herzfeld" or "Plaintiff"), individually and on behalf of all similarly situated employees, brings this Class/Collective action lawsuit against Defendants 1416 Chancellor, Inc., and Does 1 through 10, inclusive (collectively, "The Gold Club" or "Defendants"), seeking to recover for Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* (the "FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.* and common law. Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

### INTRODUCTION

1.     As explained herein, under applicable employment laws all employees are entitled to premium overtime compensation for all hours worked in excess of forty in a given work week, unless the employee is determined to be exempt. However, Defendants (as defined herein) improperly classified Plaintiff and other exotic entertainers ("Dancers") as "independent contractors." Consequently, Defendants failed to pay Plaintiff and class members at least the

applicable minimum wage.  In addition, Defendants improperly collect a portion of the tips Plaintiff and other Dancers receive from customers.  Further, Defendants required Dancers to work in excess of forty hours per work week, and then failed to pay them premium overtime compensation as required by applicable employment laws.  As set forth herein, such conduct is in violation of applicable state and federal wage and hour laws.

2.      Dancers who work, or have worked, for Defendants, including Plaintiff and her current and former co-workers, work in an "unorganized" industry where many workers are "disenfranchised" by the wide disparities in bargaining power between workers and club owners. *See* Holly Wilmet, *Naked Feminism: The Unionization of the Adult Entertainment Industry*, 7 Am. U.J. Gender Soc. Pol'y & L. 465, 466 (1999).

3.      Accordingly, adult entertainment clubs such as those operated by Defendants are well-positioned to take advantage of Dancers and routinely deny them basic workplace rights.

4.      Over the past two decades, the Department of Labor ("DOL") and courts across the country have recognized that Dancers are employees, not independent contractors, and thus entitled to protection under various state and federal wage and hour laws.

5.      Despite these significant strides, adult night clubs across the country still routinely deny Dancers the basic protections they are accorded under state and federal law.  Indeed, The Gold Club is no exception.  As set forth herein, The Gold Club regularly deprives Dancers of their rights under federal law, as well as the laws of Pennsylvania.  Plaintiff brings this lawsuit to address these improper pay practices.

## SUMMARY OF CLAIMS

6.      Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the

"Act").

7.      In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Dancers who have worked for Defendants within the statutory period covered by this Complaint and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) (the "Nationwide FLSA Class").

8.      In addition, Plaintiff also brings this action as a state-wide class action to recover unpaid wages, including inappropriately withheld tips, pursuant to the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), the Pennsylvania Wage Payment and Collection Law ("WPCL"), and common law (the "PA State Laws").

9.      Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Dancers who have worked for Defendants in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint (the "PA Class").

10.      Plaintiff alleges on behalf of the Nationwide FLSA Class that they are: (i) entitled to unpaid minimum wages from Defendants for hours worked for which Defendants failed to pay the mandatory minimum wage, as required by law; (ii) entitled to unpaid overtime wages for all hours worked in excess of forty in a work week; and (iii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

11.      Plaintiff alleges on behalf of the PA Class that Defendants violated the PA State Laws by, *inter alia*: (i) failing to pay Dancers the appropriate minimum wages for all hours worked; (ii) improperly denying Dancers overtime wages for all hours worked in excess of forty hours in a work week; and (iii) inappropriately withholding and/or deducting unlawful amounts from the gratuities earned by the PA Class.

## PARTIES

12.     Plaintiff Jessica Herzfeld is a resident and citizen of the State of Ohio who was employed by Defendants as a "Dancer" at The Gold Club at 1416 Chancellor Street in Philadelphia, Pennsylvania, from 2006 to April 2014.  While dancing, she used the stage name "Ivy."

13.     While employed by Defendants, Plaintiff was improperly classified as an independent contractor and, consequently, Defendants failed to compensate Plaintiff properly for all hours worked.

14.     Plaintiff consents in writing to be a Plaintiff in this action and has filed her executed Consent to Sue form.

15.     Defendant 1416 Chancellor, Inc. d/b/a The Gold Club is a Pennsylvania corporation with its principal place of business located in Philadelphia, Pennsylvania.  Upon information and belief, Defendant 1416 Chancellor, Inc. owns and operates The Gold Club located at 1416 Chancellor Street, Philadelphia, Pennsylvania.

16.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this complaint once their identities become known to Plaintiff.  Upon information and belief, each defendant was the co-owner, officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants.  In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.  Accordingly, unless otherwise specified herein, Plaintiff will refer to all defendants collectively as "Defendants" or "The Gold Club" and each allegation pertains to each of the defendants.

17.     Upon information and belief, at all relevant times, Defendants' annual gross volume of sales made or business done was not less than $500,000.00.

18.     At all relevant times Defendants have transacted business, including the employment of Dancers, within the Commonwealth of Pennsylvania, including within this district.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

20.     This Court also has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed Rule 23 class consists of over 100 or more members; (ii) at least some of the members of the proposed class, including Plaintiff Herzfeld, have a different citizenship from Defendant; and (iii) the claims of the proposed Rule 23 class exceed $5,000,000.00 in the aggregate.

21.     This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendants are subject to personal jurisdiction in this district..

23.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## FACTUAL ALLEGATIONS

24.     The crux of the FLSA and PA Laws is, *inter alia*,: (i) that all employees are entitled to be paid mandated minimum wages for all hours worked; (ii) that all employees are

entitled to premium overtime compensation for all hours worked in excess of forty hours per work week; and (iii) that all gratuities earned by an employee are the property of the employee.

25.     Contrary to these basic protections, The Gold Club improperly classifies its Dancers, including Plaintiff, as "independent contractors" despite The Gold Club's near total control over them.  Consequently, Dancers are, and have been:  (i) deprived of the mandated minimum wage for all hours they worked; (ii) deprived of premium overtime compensation for all hours worked in excess of forty hours per work week; (iii) forced to improperly share a percentage of their gratuities with The Gold Club; and (iv) forced to reimburse The Gold Club for its ordinary business expenses.

26.     Plaintiff and the members of the Classes are, or were, Dancers who worked at Defendants' location at 1416 Chancellor Street operating under the name "The Gold Club"

27.     The Gold Club is operated by Defendants under uniform policies applicable to all the members of the Classes.  Through these policies and procedures, Defendants maintain significant supervision and control over Plaintiff and members of Classes.

28.     Notwithstanding Defendants' classification of Dancers as independent contractors, as set forth below, due to the amount of control Defendants have over their Dancers, Dancers are legally Defendants' employees.

### Hiring, Firing, and Scheduling

29.     Defendants have the power to hire and fire Dancers at will, and have rules governing the conditions under which Dancers work.

30.     The Gold Club required Dancers to schedule their shifts one month in advance. Although Dancers were allowed to request specific shifts, The Gold Club's management exercised complete control over the final schedule.  The Gold Club could require certain Dancers

to work particular shifts and could for any reason deny a Dancer's request to work a particular shift.

31.    The Gold Club schedules Dancers using four shifts per workday: 12 p.m. to 6 p.m.; 5 p.m. to 10 p.m.; 7 p.m. to 12 a.m.; and 9 p.m. to 2 a.m.  Dancers may not create their own shift times beyond these established shifts.

32.    Defendants' managers routinely modify the predetermined schedule, often requesting that certain Dancers come in to work shifts they have not originally scheduled, or asking Dancers to stay beyond the end of their scheduled shifts.

33.    Dancers may not voluntarily stay to work beyond their scheduled shift without express permission from Defendants' managers.

34.    Dancers are subject to discipline in the forms of fines and possible termination if they do not arrive for a shift at the predetermined time.

35.    Plaintiff's schedule varied during the course of her employment, though she typically worked two to four days per week, usually on Thursdays through Saturdays.

36.    On several occasions, Plaintiff worked more than forty hours in a given workweek.  Despite this, Defendants did not pay her overtime wages.  Indeed, Defendants never pay minimum or overtime wages to any Dancers, regardless of the number of hours the Dancers work.

37.    Dancers are required to check in with the House Mom in the dressing room as soon as they arrive for their shift.  They must report to the main floor by their scheduled start time or they will be assessed additional fees.

38.    Defendants' scheduling policy also requires that all Dancers stay until the end of their shift, under threat of fines or termination.  Incredibly, even if a Dancer falls ill during a

shift, she will not be permitted to leave the club immediately unless she pays a fine to the manager on duty.

39.     When the club closes at 2 a.m., all Dancers must remain in the dressing room until club management gives them permission to leave.  The Dancers are not compensated in any way for the time they spend waiting to leave.

40.     Defendants schedule several "staff meetings" per year.  Dancers are required to attend these meetings and are not compensated in any way for their time.

41.     Defendants required Dancers to participate in special events without compensation.  For instance, the club has an annual "Foxy Boxing" night, during which a boxing ring is placed on stage and the Dancers must "box" against each other.  Dancers are not paid by the club for participating, and tip income is significantly lower than on regular nights because Dancers are not performing normal dances.

## House Fees & Fines

42.     Rather than pay its Dancers the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendants classified their Dancers as independent contractors and required their Dancers to pay Defendants in order to work at Defendants' establishment.  Consequently, Defendants do not compensate Dancers in an amount at least equal to the mandated minimum wage for each hour worked during their shift.

43.     Despite routinely charging customers a "cover fee" at the door, and selling food and alcohol, Defendants retain all of that income and do not pay Dancers any wages.

44.     Typically, there are "House Fees" for each shift worked.  While the club "waives" the House Fee for Dancers who arrive at 12:00 pm or 5:00 pm, Dancers arriving at any other time must pay a House Fee ranging from $6 to $81.

45.     Dancers must pay all fees every night they work regardless of the amount of tips they receive during their shift.  Accordingly, a Dancer must pay the fees even if that means borrowing money from another Dancer or using an ATM machine.  Defendants' system of fees, fines, and mandatory tips creates a realistic possibility that a Dancer may finish a shift with a negative balance, owing Defendants money from the Dancer's personal finances and taking home zero dollars for a day or night of work.

46.     Dancers are not permitted to perform if they have any outstanding fees or fines.  Indeed, Defendants maintain a list of all Dancers and the current fines owed.

### Tip Retention & Mandatory Tip Outs

47.     It is black letter law that tips received by an employee are the employee's tips and an employer has no ownership interest in said tips.  Indeed, according to the DOL's Regulations, "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA."  29 C.F.R. § 531.52.

48.      Despite this plain fact, Defendants unlawfully retained a portion of tips Dancers received from Defendants' customers.

49.     Moreover, Defendants also mandate the fees a Dancer may charge customers for her services.  By way of example, Defendants maintain a policy establishing the amount a Dancer is required to charge for private performances.

50.     Dancers are required to follow the following schedule of private dance prices, with Defendants receiving a portion of each amount:

|  | Total Price | Dancer | Defendant |
| --- | --- | --- | --- |
| Private Dance - One Song | $20.00 | $15.00 | $5.00 |
| Private Dance - Two Songs | $30.00 | $20.00 | $10.00 |
| "Champagne Court" (15 min.) | $150.00 | $100.00 | $50.00 |
| "Champagne Court" (30 min.) | $300.00 | $175.00 | $125.00 |

51.     Dancers may not perform more than three private dances in a row with a given customer.  If a customer wants a Dancer to perform more than three private dances in a row, the Dancer must convince the customer to pay for a Champagne Court dance.  If the customer refuses to buy the Champagne Court dance, the Dancer loses potential income because Defendants will not permit a fourth consecutive private dance.

52.     Dancers usually collect money from customers after completion of the private dances.  If a customer refuses to pay or leaves the club without paying, the club still requires the Dancer to pay the club its "share" of the private dance fee, despite providing no assistance to the Dancers with the enforcement and collection of the fee from customers.

53.     In addition, Defendants also subject Dancers to mandatory tip-outs.  That is, Dancers are required to share their tips with certain of Defendants' employees.  Importantly, the individuals with whom Defendants require its Dancers to share their tips with do not provide customer service.

54.     Upon information and belief, Defendants use these mandatory Dancer tip-outs to offset Defendants' ordinary business expenses.  Stated another way, Defendants require Dancers to share their tips with individuals so that Defendants can then reduce their labor costs by having the Dancers supplement the compensation Defendants pays their other employees.

55.     Defendants have a *mandatory* tip out policy whereby Dancers must each pay a minimum of (i) $5 or $10 to the House Mom, per shift, and (ii) $10 to the club's DJ, per shift.

56.     The aforementioned amounts are the required minimum tip-outs, and Defendants require Dancers to pay all tips by the end of their shift, regardless of how much money the Dancer has earned during the shift.

57.     In addition, Dancers are often required to tip the managers or the persons monitoring the private dance areas and Champagne Court. These tips are required in order for the Dancers to leave early or obtain assistance with protecting themselves from aggressive customers.  If the Dancers do not tip these individuals, the Dancers will not receive any cooperation from the club's employees.

58.     As a result of the mandatory house fees, required tip-outs, and assessed fines, Dancers sometimes receive little to no actual compensation despite hours of work.

**Additional Control**

59.     As described below, Defendants exercised significant control over the Dancers' work environment through a long list of policies and rules.

60.     Defendants require Dancers to wear certain types of clothes.  Dancers were not permitted to wear certain items, such as boots, and Defendants exercise authority over Dancers' apparel by refusing to let a Dancer perform if her clothing does not meet Defendants' requirements.  Defendants do not reimburse Dancers for the cost of their apparel.  In addition, Defendants do not pay for the cost of laundering or maintaining these required outfits.

61.     On a regular basis, Defendants hold themed nights.  For those nights, Dancers are required to procure, at their own expense, apparel in conformity with the theme, and wear the items during their shifts.  For instance, on "Beach Night," Dancers were required to wear swimsuits. Other items Dancers have been required to procure and wear for themed nights include: school girl outfits, Halloween costumes, Philadelphia Eagles apparel or colors, and wigs.  If a Dancer comes to the club on a themed night without the required apparel, the club's managers will not permit the Dancer to work.

11

62.     Defendants exercise significant control over the Dancers' physical appearance. For instance, Dancers are required to wear makeup, Dancers may not have visible body hair on places such as the legs, armpits, or bikini line, and certain hairstyles are forbidden, such as dreadlocks.

63.     A Dancer's stage performance must comply with certain rules set by Defendants. Two Dancers appear on stage at a time, as part of a rotation set by the DJ. Dancers could not voluntarily skip their turn in the rotation. A Dancer's stage rotation lasts for two songs, and the Dancer must remove her top during the first song and remove her bottom during the second song. The club's DJ would control the songs played. Although Dancers could ask for a certain type of music, the DJ exercised full and final control over the music selection. In many cases, a Dancer was forced to dance to songs chosen by another Dancer or chosen solely by the DJ.

64.     Dancers are not permitted to use their cell phones at all during their shifts, even when in the dressing room.

65.     Dancers are not permitted to carry purses on the floor, which means that Dancers must strap the money they earn during a shift to their bodies using rubber bands.

66.     Dancers are not permitted to use the club's main restroom.

67.     Dancers must rent lockers in the dressing room from Defendants, and may only use locks provided by Defendants, which require payment of a deposit fee.

68.     If a featured performer (usually a high-profile adult film star) was appearing at the club, all Dancers were required to be on the floor during the featured performer's stage sets.

69.     Dancers are often required to do promotional work for the club, which includes attending outside events and distributing advertisements for the club. Dancers are never paid any compensation for this work.

70.     In short, The Gold Club maintains significant supervision and control over Plaintiff and members of the Classes and sets the rules governing the conditions under which Dancers work.  These rules were applied uniformly to Plaintiff and all other Dancers.

71.     Further, The Gold Club determined the rate and method of payment Dancers received, including but not limited to the percentage of tips that The Gold Club would retain and the fact that Dancers would not receive any wages while working at the club.

72.     The Gold Club has been unjustly enriched to the detriment of the Classes by:  (i) requiring Dancers to pay money out of their tips to subsidize the ordinary business expenses of the club; (ii) requiring Dancers to forfeit a portion of their tips to The Gold Club; (iii) paying Dancers less than the mandated minimum wage (indeed, no wages whatsoever) while failing to comply with the requirements for doing so; (iv) failing to pay Dancers premium overtime compensation for all hours worked in excess of forty in a work week; and (v) requiring Dancers to advertise and promote the club, and to attend special events at the club, without compensating Dancers for their time.

73.     At all times relevant to this Complaint, Plaintiff believed she was, and in fact was, an employee of The Gold Club.

74.     Evidence generally reflecting the number of uncompensated hours worked by Dancers is in the possession of The Gold Club.

75.     While Plaintiff is unable to state at this time the exact amount owed to the Classes, Plaintiff believes that such information will become available during the course of discovery.  Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the

burden of overcoming such testimony shifts to the employer. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## CLASS & COLLECTIVE ACTION ALLEGATIONS

76.     Plaintiff brings this action on behalf of the Nationwide FLSA Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b). Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA Class for claims under the PA State Laws.

77.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b). The claims brought pursuant to the PA State Laws may be pursued by all similarly-situated persons who do not opt out of the PA Class pursuant to Fed. R. Civ. P. 23.

78.     Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable. While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are over one hundred individuals in each of the Classes.

79.     Defendants have acted or have refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

80.     The claims of Plaintiff are typical of the claims of the Classes she seeks to represent. Plaintiff and the members of the Classes work or have worked for The Gold Club and were subject to the same compensation policies and practices, including not being compensated for all hours worked.

81.     Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

(a)  whether Plaintiff and Dancers were improperly classified as independent contractors by Defendants;

(b)  whether Defendants failed to pay Dancers statutorily required wages for each hour worked;

(c)  whether Plaintiff and Dancers were required to pay Defendants, in cash, fees for each shift worked;

(d)  whether Defendants improperly retained any portion of Plaintiff's and Dancers' tips;

(e)  whether Defendants have failed to pay overtime compensation for all hours worked in excess of forty per work week;

(f)  whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages;

(g)  whether Plaintiff and members of the Classes are entitled to restitution; and

(h)  whether Defendants are liable for attorneys' fees and costs.

82.  Plaintiff will fairly and adequately protect the interests of the Classes, as her interests are aligned with those of the members of the Classes.  She has no interests adverse to the Classes she seeks to represent, and she has retained competent and experienced counsel.

83.  The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

84.  Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from Defendants' illegal pay policies, practices and customs.

85.  Defendants have acted willfully and have engaged in a continuing violation of the FLSA and PA State Laws.

## FIRST CLAIM FOR RELIEF
### Fair Labor Standards Act
### (On Behalf of the Nationwide FLSA Class)

86.     Plaintiff, on behalf of herself and the Nationwide FLSA Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

87.     At all relevant times, Defendants have had gross annual revenues in excess of $500,000.

88.     At all relevant times, Defendants have been and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

89.     At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the Nationwide FLSA Class Members within the meaning of the FLSA.

90.     Pursuant to Defendants' compensation policies, rather than pay Dancers the federally-mandated wages, Defendants' improperly classified Plaintiff and other Dancers as independent contractors.

91.     As a result of Defendants' willful practices, The Gold Club was not entitled to pay Plaintiff and the members of the Nationwide FLSA Class less than the mandated wage for all hours worked.

92.     Defendants have violated and, continue to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

93.     Due to Defendants' FLSA violations, Plaintiff and the members of the Nationwide FLSA Class are entitled to recover from Defendants: compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF
### Pennsylvania Minimum Wage Act – Minimum Wage Violations
### (On Behalf of the PA Class)

94.     Plaintiff, on behalf of herself and the members of the PA Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

95.     At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

96.     At relevant times in the period encompassed by this Complaint, Defendants have had a willful policy and practice of improperly classifying Plaintiff and Dancers as independent contractors and, consequently, failing to pay these individuals the applicable minimum wage for each hour worked.

97.     Pursuant to Defendants' compensation policies, Defendants improperly classified Dancers as independent contractors rather than pay Plaintiff and Dancers the Pennsylvania minimum wage.

98.     As a result of Defendants' willful practices, Defendants were not entitled to pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

99.     Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

100.    Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid minimum wages, attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
#### Pennsylvania Minimum Wage Act – Overtime Wage Violations
#### (On Behalf of the PA Class)

101.    Plaintiff, on behalf of herself and the members of the PA Class, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

102.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

103.    At relevant times in the period encompassed by this Complaint, Defendants have had a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek.

104.    Pursuant to Defendants' policies and practices of classifying Plaintiff and Dancers as independent contractors, Plaintiff and the members of the PA Class were not paid overtime for all hours worked in excess of forty per week.

105.    Defendants have violated and, continue to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

106.    Due to the Defendants' violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid overtime wages, attorneys' fees and costs.

### FOURTH CLAIM FOR RELIEF
#### Pennsylvania Wage Payment Collection Law
#### (On Behalf of the PA Class)

107.    Plaintiff, on behalf of herself and the PA Class Members, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

108.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiff and each of the PA Class Members within the meaning of the WPCL.

109.    Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiff and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

110.    As a result of Defendants' unlawful policies, Plaintiff and the members of the PA Class have been deprived of compensation due and owing.

111.    Further, due to Defendants' policy of deducting amounts from the tips of Plaintiff and the PA Class to offset business expenses, Plaintiff and the PA Class were subject to improper deductions from their compensation.

112.    Plaintiff, on behalf of themselves and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

**FIFTH CLAIM FOR RELIEF**
**PA Common Law - Unjust Enrichment/Quantum Meruit**
**(On Behalf of the PA Class)**

113.    Plaintiff, on behalf of herself and the PA Class Members, re-alleged and incorporates by reference the paragraphs above as if they were set forth again herein.

114.    Plaintiff and the members of the PA Class were employed by Defendants within the meaning of the PA State Laws.

115.    At all relevant times, Defendants have had a willful policy and practice of denying Dancers their full share of gratuities.

116.    During the class period covered by this Complaint, Defendants have had a willful policy and practice of having Dancers subsidize Defendants' business expenses by requiring Dancers to tip certain individuals a required minimum amount.

117.    Moreover, Plaintiff and Dancers were subjected to unlawful deductions from their gratuities.

118.    Defendants retained the benefits of their unlawful deductions from the gratuities from Plaintiff and Dancers under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

119.    Defendants were unjustly enriched by subjecting Plaintiff and Dancers to such unlawful deductions.

120.    Defendants have had a willful policy and practice of requiring Dancers to participate in promotional events at the club without compensation.

121.    Further, Defendants have had a willful policy and practice of requiring Dancers to appear at promotional events outside the club and to distribute advertising materials at said events.

122.    Defendants retained the benefits of Plaintiff's and the PA Class Members' time and promotional services under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits.

123.    Defendants were unjustly enriched by benefiting from the uncompensated time and efforts of Plaintiff and the PA Class Members to promote Defendant's business.

124.    As direct and proximate result of Defendants' unjust enrichment, Plaintiff and the members of the PA Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendants of the benefits conferred by Plaintiff and the PA Class.

125.    Plaintiff the members of the PA Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, the Nationwide FLSA Class, and members

of the PA Class, prays for relief as follows:

a) Designation of this action as a collective action on behalf of the Nationwide FLSA Class and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all Nationwide FLSA Class members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms pursuant to 29 U.S.C. § 216(b);

b) Designation of Plaintiff as representative of the Nationwide FLSA Class;

c) Designation of counsel of record as counsel for the Nationwide FLSA Class;

d) Certification of this action as a class action on behalf of the PA Class pursuant to Federal Rule of Civil Procedure 23;

e) Designation of Plaintiff as representatives of the PA Class;

f) Designation of counsel of record as counsel for the PA Class;

g) A Declaration that Defendants have violated the FLSA;

h) A Declaration that Defendants have violated the PMWA;

i) A Declaration that Defendants have violated the WPCL;

j) A Declaration that Defendants have been unjustly enriched;

k) An Order enjoining The Gold Club, its officers, agents, successors, employees, attorneys, assigns, and other representatives, and all those acting in concert with it at its direction, from engaging in any employment policy or practice which violates the FLSA, PMWA, and WPCL;

l) An Order requiring Defendants to make whole those persons adversely affected by the policies and practices described herein by providing appropriate back pay, and reimbursement for lost wages in an amount to be shown at trial;

m) A Declaration that Plaintiff and members of the PA Class are entitled to the value, *quantum meruit*, of the services rendered by them to the Defendants;

n)  An Order requiring Defendants to pay back to Plaintiff and members of the PA Class the amounts representing Defendants' unjust enrichment and the value, *quantum meruit*, of the services rendered by them to the Defendants;

o)  All applicable statutory damages to Plaintiff, the Nationwide FLSA Plaintiffs, and members of the PA Class;

p)  Appropriate liquidated damages to Plaintiff, the Nationwide FLSA Plaintiffs, and members of the PA Class;

q)  Reasonable attorneys' fees and costs of action incurred herein; and

r)  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  August 25, 2014                    Respectfully submitted,

Gary F. Lynch (PA 56887)
glynch@carlsonlynch.com
CARLSON LYNCH LTD
PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
Telephone:  (412) 322-9243
Facsimile:  (412) 231-0246