**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JESSICA HERZFELD, on behalf of herself and All others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>1416 CHANCELLOR, INC., d/b/a THE GOLD CLUB, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.: 2:14-CV-04966-PD<br><br>Hon. Paul S. Diamond<br><br>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR TO STAY PROCEEDINGS**<br><br><u>ORAL ARGUMENT REQUESTED</u> |

<u>**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR TO STAY PROCEEDINGS**</u>

**INTRODUCTION**

Plaintiff Jessica Herzfeld performed in the past as an exotic dancer at an establishment owned by Defendant 1416 Chancellor, Inc., dba the Gold Club (the "Gold Club," or "Defendant"). Before being allowed to perform, Ms. Herzfeld signed a comprehensive contract pursuant to which she was to provide her services to her customers entitled "STAGE RENTAL/LICENSE AGREEMENT" (the "License Agreement"). Contained within the License Agreement was a fully enforceable arbitration provision that complies both with the Federal Arbitration Act ("FAA," 9 U.S.C. § 1 *et seq*.), and the binding jurisprudence related thereto. That arbitration clause required that all disputes between the parties were to be resolved by binding arbitration administered by the American Arbitration Association ("AAA"). Consequently, all of the claims asserted by Ms. Herzfeld are subject to binding arbitration. The agreement to arbitrate should, therefore, be enforced pursuant to the FAA.

1

In addition, as a matter of procedure, 42 Pa. C.S.A. § 7304 mandates that an "action or proceeding allegedly involving an issue subject to arbitration, shall be stayed" upon the filing of an application for an order to proceed with arbitration.  Therefore, all proceedings in this action should be stayed until this motion is fully adjudicated.

## STATEMENT OF FACTS

Ms. Herzfeld was an independent professional entertainer who executed the License Agreement on August 30, 2013, before performing at the Gold Club.  Declaration of Zachary Weithoner ("Weithoner Dec."), Exhibit A, at ¶¶ 2-3, and Exhibit 1 thereto (which is the actual License Agreement signed by Ms. Herzfeld).  Pursuant to the License Agreement, Plaintiff paid a license fee to the Gold Club for the right to use the Gold Club's facilities for her independent business activities related to live performance dance entertainment.  License Agreement, ¶ 1.  Ms. Herzfeld alleges in this action that rather than being a licensee of the Gold Club she was, in fact and at law, its employee.  As a consequent result, she alleges entitlement to minimum wage payments and to other related employee benefits.  Complaint, Dkt. 1, at ¶¶ 1, 6-11.

Contained in the License Agreement that Ms. Herzfeld executed was an arbitration agreement that states as follows:

> If any dispute arises out of this agreement it shall be settled by arbitration in accordance with the rules and regulations of the American arbitration association in Philadelphia by a sole arbitrator made available through the American arbitration association which shall be final and conclusive and binding upon both parties. Licensor and licensee shall each pay their own costs and expenses of abrasion including but not limited to their own respective attorneys face if any.

License Agreement, p. 2, ¶ 16 (misspellings in original).

Despite the clear and unambiguous language of this arbitration agreement, Ms. Herzfeld did not seek to initiate arbitration but, rather, filed her complaint against the Gold Club in this Court.  In addition, although the Undersigned requested Plaintiff's counsel to dismiss this action and submit Ms. Herzfeld's claim to arbitration as is required by the agreement between the parties,

2

Plaintiff's counsel refused by asserting that he will claim that the arbitration provision is invalid and unenforceable.  *See* Exhibits B and C.

Plaintiff's complaint does not dispute that these supposed claims arose out of her performance activities at the Gold Club, which were governed by the terms of the License Agreement.  In fact, during the entire time that she performed at the Gold Club, Plaintiff did so in full conformity with the terms of the License Agreement and it was not until *after* she ceased performing and initiated this litigation that she first asserted that she was not in fact bound by the terms of the License Agreement.  Exhibit A, ¶ 7.  Accordingly, this action should stayed in favor of arbitration.

## LEGAL STANDARD

A party properly seeks dismissal of an action in favor of arbitration pursuant to Rule 12(b)(1), which may be converted to a motion for summary judgment if matters outside the pleadings are considered.  *See Ramos v. Air Liquide*, 10-cv-979, 2011 WL 1253266 at *3 n. 3 (D.N.J. March 28, 2011) (citing *Palco v. Airbourne Express*, 372 F.3d 588, 597 (3d Cir. 2004) and *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 45 n. 1 (3d Cir. 1991).

This Court has typically granted a defendant's motions to dismiss under Rule 12(b)(6) upon finding a dispute referable to arbitration.  *See, e.g. Jones v. Judge Technical Services, Inc.*, 11-CV-6910, 2014 WL 3887733 (E.D. Penn, Aug. 7, 2014) (granting defendant's Rule 12(b)(6) motion to dismiss for arbitration) and *Renfrew Centers, Inc., v. Uni/Care Systems, Inc.*, 920 F.Supp.2d 572, 573 (E.D. Penn. 2013) (same).

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE SUBJECT TO ARBITRATION.

The Federal Arbitration Act states that a written agreement "to settle by arbitration a controversy" arising out of a contract or transactions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C.

3

§ 2.  *See also Century Indem. Co. v. Certain Underwriters at Lloyd's,* 584 F.3d 513, 522 (3d Cir. 2009) (quoting 9 U.S.C. § 2).

The FAA "reflects a liberal federal policy favoring arbitration agreements."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) (citing *Mitsubishi Motors Corp. v. Soler Crysler-Plymouth, Inc.*, 473 U.S. 614, 626-627 (1985)).  *See also Moses H. Cone Memorial Hosp. v. Mercury Construction Co.*, 460 U.S. 1, 24-25 (1983); and *AT&T Mobility, LLC v. Concepcion*, 536 U.S. ---, 131 S.Ct. 1740, 1745 (2011). "The FAA was designed to override judicial reluctance to enforce arbitration agreements, relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d, 709, 714 (6th Cir. 2000).  Under the FAA, "***any doubts concerning the scope of arbitrable issues should be resolved <u>in favor</u> of arbitration.***"  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (quoting *Moses H. Cone*, 460 U.S. at 24-25) (emphasis added).

The FAA leaves no place for the exercise of discretion, but, instead, directs district courts to order the parties to proceed to arbitration on all issues as to which an arbitration agreement was signed.  *See* 9 U.S.C. §§ 3, 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985).  Indeed, *courts* must "'rigorously enforce' arbitration agreements according to their terms …." *American Express Corp. v. Italian Colors Rest.*, --- U.S. ---, 133 S. Ct. 2304, 2309, 186 L. Ed. 2d 417 (2013) (quoting *Dean Witter*, 470 U.S. at 221).  *See also Concepcion*, 131 S. Ct. at 1745.

In its recent decision in *Italian Colors,* the Supreme Court has also noted that "courts must '*rigorously enforce' arbitration agreements according to their terms*, … including terms that 'specify *with whom* [the parties] choose to arbitrate their disputes,' … and 'the rules under which the arbitration will be conducted.'" 133 S.Ct. at 2309 (*quoting Dean Witter*, 470 U.S. at 221, *and*

4

*Stolt-Nielson S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010)). Further, the Court held that this rule "holds true for claims that allege a violation of a federal statute, unless the FAA's mandate has been overridden by a contrary congressional command." *Italian Colors*, 133 S. Ct. at 2309 (internal quotations omitted).

Accordingly, the provision referring disputes to arbitration conducted by the AAA is fully enforceable.

The FAA is the supreme law of the land regarding an arbitration clause in any agreement "affecting commerce" (9 U.S.C. § 2), and "provides 'for the enforcement of arbitration agreements within the full reach of the commerce clause.'" *Citizens Bank v. Alfabco, Inc.*, 539 U.S. 52, 56 (2003) (quoting *Perry v. Thomas*, 482 U.S. 483, 490 (1987)) (other citation omitted). And, it is too late in the day to contend that a public accommodation facility such as the Gold Club is not subject to the Interstate Commerce Clause. The entire civil rights movement was predicated upon findings that bars, restaurants, and other places of public accommodation fall within the purview of the Interstate Commerce Clause.

Moreover, both the FAA and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), which serves as the basis of Plaintiff's federal cause of action (*See* Complaint, Dkt. 1, ¶¶ 86 – 93), are specifically predicated upon the engagement in interstate commerce.

In regard to the FAA, the Supreme Court has interpreted the "commerce" provision as contained in 9 U.S.C. § 2 as exercising the full scope of Congress's commerce-clause power. *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) (citing *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-77, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995)). And, the phrase "evidencing a transaction" as contained in the FAA (9 U.S.C. § 2) requires only that the

transaction in fact involve interstate commerce; not that the parties contemplated it as such at the time of the agreement. *Rota-McLarty*, 700 F.3d at 697, *citing Allied-Bruce*, 513 U.S. at 281.[1]

In addition, the FLSA is premised *entirely* upon the effect of employment on interstate commerce. *See, e.g.*, 29 U.S.C. § 202(A)-(B)). As Congress stated in § 202(B):

> It is declared to be the policy of this chapter, through the exercise by Congress of its power *to regulate commerce among the several States and with foreign nations,* to correct and as rapidly as practicable to eliminate the conditions above referred to in such industries without substantially curtailing employment or earning power.

Thus, were Plaintiff to contend that she was not involved in commerce within the meaning of the FAA, she would also be conceding that she has no federal wage claims under the FLSA since there would be jurisdiction under those federal wage statutes. Rather, Plaintiff has *herself* alleged that "Defendants have been and continue to be, employers engaged in commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a)." Complaint, Dkt. 1, ¶ 88. As such, Plaintiff had conceded jurisdiction under the FAA.

"The FAA preempts any contradictory provision of state law." *Stutler v. T.K. Contractors*, 484 F.3d 343, 345 (6th Cir. 2006) (citing *Circuit City Stores v. Adams*, 532 U.S. 105, 111-112 (2001)). More specifically, "Federal law preempts state law on issues of

---

[1] The FAA does not impose a burden upon the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction. *Rota-McLarty,* 700 F.3d at 697 (*citing Maxum Founds., Inc. v. Salus Corp.,* 779 F.2d 974, 978 n.4 (4th Cir. 1985) ("Where . . . the party seeking arbitration alleges that the transaction is within the scope of the [FAA], and the party opposing application of the [FAA] does not come forward with evidence to rebut jurisdiction under the federal statute, we do not read into the [FAA] a requirement of further proof by the party invoking the federal law"). Second, in deciding to apply the FAA, the Court need not identify any specific effect upon interstate commerce so long as "in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control.'" *Id.* at 698 (*citing Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (citation omitted).

arbitrability." *Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1139 (9th Cir. 1991) (citing *Moses H. Cone*, 460 U.S. at 24).

Moreover, there is now simply no dispute whatsoever that employment agreements are subject to arbitration under the FAA.[2] *See, e.g.*, *Gilmer*, 500 U.S. at 26-35; and *Circuit City Stores*, 532 U.S. at 109-124. In addition, Plaintiff's state law claims (Complaint, Dkt. 1, ¶¶ 94-125) are equally subject to arbitration. *Circuit City*, 532 U.S. at 124 – 125 (citing *Southland Corp. v. Keating*, 465 U.S. 1 (1984); and *Allied-Bruce Terminex Companies v. Dobson*, 513 U.S. 265 (1995)). In *Circuit City*, the plaintiff had argued that "a state statute ought not be denied state judicial enforcement while awaiting the outcome of arbitration." 532 U.S. at 123 – 124. The Court rejected the argument and stated it was foreclosed by the Court's previous decisions in *Southland* and *Allied-Bruce*, which the Court observed it would not revisit. *Id.* at 124. Hence, any Pennsylvania statutory or common law claims are subject to the arbitration requirement as contained in the License Agreement.

As the Third Circuit has observed, however, "Before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem.*, 584 F.3d at 522 (citing *Kirleis v. Dickie, McCamey & Chilcote, P.C.,* 560 F.3d 156, 160 (3d Cir.2009)). In deciding whether the parties have agreed to arbitrate, the court is to apply "ordinary state law principles that govern the formation of contracts." *Id.* at 524 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). *See Schwartz v. Comcast Corp.,* 256 Fed.Appx. 515, 518 (3d Cir.2007). Under Pennsylvania law, to determine whether a contract was formed, a court must look to: (1)

---

[2] This comment by the Gold Club should not be construed as any type of acknowledgement or concession that the Plaintiff was, in fact, an employee. In fact, the Gold Club specifically and vehemently argues to the contrary. This statement is made, rather, simply in light of Ms. Herzfeld's claim in this lawsuit that she performed as an employee of the Gold Club irrespective of the terms of the License Agreement to the contrary that she signed.

7

whether both parties manifested an intention to be bound by the agreement; (2) whether the terms of the agreement are sufficiently definite to be enforced; and (3) whether there was consideration. *Id.* at 533, *citing Shovel Transfer & Storage, Inc. v. Pa. Liquor Control Bd.,* 559 Pa. 56, 739 A.2d 133, 136 (Pa. 1999). *Sims v. EQT Corp.,* CIV.A. 13-1235, 2014 WL 4384593 (W.D. Pa. 2014).

Here, as to the first prong of the Third Circuit test, there is clearly an agreement to arbitrate as it is contained in the written License Agreement that Ms. Herzfeld signed. As to the second prong, the dispute clearly falls within the scope of the License Agreement. In fact, Ms. Herzfeld's suit is contingent upon a determination being made that the License Agreement is materially *unenforceable*.

In regard to the Pennsylvania test, both parties clearly manifested an intention to be bound to the License Agreement. *In fact, Ms. Herzfeld made all payments to the Gold Club as required by its terms*. Exhibit A, ¶¶ 5, 7. In addition, the terms are both clear and definite, and there was clearly consideration as Ms. Herzfeld made her license fee payments and as direct result thereof she was able to make significant sums of money through her use of the Gold Club's facilities. *Id.*, at ¶¶ 4-5. Therefore, all of Plaintiff's claims are subject to arbitration.

### II.  PLAINTIFF HAS NO HOPE OF INVALIDATING HER AGREEMENT TO ARBITRATE.

As demonstrated by Plaintiff's counsel's correspondence (Exhibit C), Ms. Herzfeld will attempt to argue that her agreement to arbitrate any claims that she may purport to have against the Gold Club via the License Agreement are somehow invalid and unenforceable. Presumably, she will contend that the arbitration clause is unconscionable, even in the face of a tidal wave of contrary case law. As the eminent Judge Easterbrook of the Seventh Circuit has noted, the argument that arbitration clauses contained in standard-form contracts are unconscionable has been rejected "as often as it has been raised." *Oblix, Inc. v. Winiecki*, 374 F.3d 488, 491 (7th Cir. 2004). *See also Concepcion*, 131 S.Ct. 1740 (FAA preempts California judicial rule that

8

arbitration agreements with class action waivers are unconscionable under state law); *Marmet Health Care Center v. Brown*, ---U.S.---, 132 S.Ct. 1201 (2012) (FAA preempts West Virginia's judicial rule that arbitration agreements in nursing home admission agreements are unenforceable under state law).

In any event, Judge Joyner of this Court has addressed this issue in the context of Pennsylvania law:

> Plaintiff alternatively asserts that the Defendants' arbitration policy is unconscionable in its entirety and thus should not be enforced. In accordance with the Federal Arbitration Act, the Court must honor agreements made between parties to arbitrate their conflicts and issue an order compelling arbitration unless the agreement is *seriously problematic*. *Brentwood Medical Associates v. United Mine Workers of America,* 396 F.3d 237, 239 (3d Cir.2005). To determine if an arbitration agreement is *seriously problematic* under the Federal Arbitration Act, arbitration agreements are interpreted and construed under contract law. 9 U.S.C.A. § 2 (West 2014). Thus, the federal courts look to the relevant state law regarding contracts to determine if a valid agreement exists. *Spinetti v. Service Corp. Int'l.,* 324 F.3d 212, 214 (3d Cir.2004). Pennsylvania favors enforcement of arbitration agreements unless a contract defense, such as unconscionability, invalidates the arbitration agreement. *Kaneff v. Delaware Title Loans, Inc.,* 587 F.3d 616, 624 (3d Cir.2009). Under Pennsylvania law, the doctrine of unconscionability contains *both* procedural and substantive elements. *Salley v. Option One Mortg. Corp.,* 592 Pa. 323, 925 A.2d 115, 119 (2007). "Procedural unconscionability pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear language." *Harris v. Green Tree Fin. Corp.,* 183 F.3d 173, 181 (3d Cir.1999). Substantive unconscionability refers to "terms that unreasonably favor one party to which the disfavored party does not truly assent." *Id.,* at 179.

*Cirino v. L. Gordon Holdings, Inc.,* 13-CV-4800, 2014 WL 2880291 (E.D. Pa. June 25, 2014) (emphasis added).

Moreover, as the Pennsylvania Supreme Court has stated: "The burden of proof generally concerning *both elements* has been allocated to the *party challenging the agreement . . . .*" *See Bishop v. Washington,* 331 Pa.Super. 387, 400, 480 A.2d 1088, 1094 (1984); *accord* 13 Pa.C.S. § 2302." *Salley v. Option One Mortg. Corp.,* 925 A.2d 115, 118-20 (Pa. 2007) (emphasis added).

9

From these two cases, it is then apparent that: *Plaintiff here bears the burden of proof with regard to any claim of unconscionability*; to be found to be unconscionable, the agreement to arbitrate must be "*seriously problematic*"; and unconscionability cannot be established unless *both* substantive *and* procedural unconscionability are proven. Plaintiff cannot meet these standards.

First, any claim by Ms. Herzfeld that the License Agreement is not enforceable (and therefore the arbitration provision as well) because no representative of the Gold Club signed that document, finds no support whatsoever under Pennsylvania law. *See, e.g., Wagner v. Marcus*, 136 A. 847, 848 (Pa. 1927) ("The fact that it is signed by only one of the parties to the transaction makes no difference, of course, on the score of it being a contract") (citing 1 Williston on Contracts, § 13); *Cleland v. Evans*, 25 Pa. D. 287, 289, 1915 WL 3047 ("When a contract is signed by one of the parties only, but is accepted and acted on by the other party, it is just as if it were signed by both parties. It is hardly necessary to cite authorities to sustain this proposition . . . .") (Pa. Com. Pl. 1915), and cases cited therein; and *Flannery v. Dechert*, 13 Pa. 505, 507 (1850) (a contract signed by one party is binding where the other offers or tenders to perform under the agreement). *Accord N. L. R. B. v. Loc. 825, Intern. Union of Operating Engineers, AFL-CIO*, 315 F.2d 695, 698-99 (3d Cir. 1963) (arising out of the NLRB, New Jersey). Both parties performed under the License Agreement and are therefore unquestionably bound by its terms. *See* Weithoner Dec., ¶¶ 2-7, Exhibit A (Hertzfeld was permitted to perform at the Gold Club only after she executed the License Agreement and the relationship was thereafter governed by the License Agreement).

Second, any assertion that the arbitration clause is unenforceable because of the allocation of costs and fees is equally meritless. The U.S. Supreme Court has clearly held that litigants can be required to bear their fair share of the expenses of arbitration. *See, e.g., Green Tree Financial*

10

*Corp. v. Randolph,* 531 U.S. 79, 89 - 92 (2000).  A party challenging arbitration on the ground it would be prohibitively expensive bears the burden of showing arbitration would be so prohibitively expensive so as to prevent effective vindication of a statutory right.  *Id*. at 90 (citing *Gilmer*, 500 U.S. at 26).

This holding was further explained in *Concepcion* and *Italian Colors*.  The *Conception* decision, addressed California's "*Discover Bank*" rule (*Discover Bank v. Superior Court*, 113 P.3d 1100 (Ca. 2005)), which provided that class action waivers in standard form consumer contracts would be deemed unconscionable where a small potential recovery would discourage individual actions.  The Court held that this state law rule amounted to "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress,' and was therefore preempted by the FAA."  *Id*. at 1573.  Indeed, "the switch from bilateral to class arbitration sacrifices the principal advantages of arbitration – its informality – and makes the process slower, ***more costly***, and more likely to generate procedural morass than final judgment."  *Id*. at 1750 (emphasis added).  Here, Plaintiff does not bring a small claim.  But even if she did, the allegation that individual arbitration would make the claim less attractive does not in any way affect her right to pursue that claim or the enforceability of her agreement to arbitrate.

Further, in *Italian Colors*, the court directly addressed its prior statement in *Green Tree* that unduly high arbitration costs (where proven) could prohibit the "effective vindication" of statutory rights.  133 S.Ct. at 2310.  The Court held that so long as a party has the right to bring her claim in arbitration, "the statute will continue to serve both its remedial and deterrent function." *Id*. (citing *Mitsubishi Motors*, 473 U.S. at 637).   The "effective vindication" doctrine, in turn, is rooted "in the desire to prevent 'prospective waiver of a party's *right to pursue* statutory remedies.'"  *Id*. (emphasis in original; quoting *Mitsubishi Motors*, 473 U.S. at 637 n. 19).

11

However, it explained, "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy. *Id*. at 2311 (emphasis in original). Hence, any attempt by Plaintiff to show her claim would be more costly to pursue in arbitration (which is counter-intuitive to begin with, since arbitration is designed to be cheaper and quicker overall) would be of no effect.

In addition, no "effective vindication" claim can be based on speculative assertions of how the arbitrator will construe the agreement to arbitrate. *Aluminum Bahrain B.S.C. v. Dahdaleh*, --- F.Supp.2d ---, Civ. No. 8-299, 2014 WL 1681494, at *8 (W.D. Penn. April 28, 2014) (". . . since we do not know how the arbitrator will construe the arbitration agreements vis-à-vis RICO, it is speculative for me to decide that Alba cannot effectuate its statutory remedy"). *See also Shearson/American Exp. Inc., v. McMahon*, 482 U.S. 220, 232 (1987) (agreement to arbitrate cannot be invalidated on the fear that the arbitrator will not follow the law) (citing *Mitsubishi Motors*, 473 U.S. at 636-37).

Other than these two issues, there does not appear to be any other claims that the Plaintiff could even *plausibly* make in an effort to invalidate the agreement to arbitrate. The parties agreed to resolve any disputes through quick, economical arbitration and Plaintiff is unable to present a valid reason to be excused from that covenant.

### III. ALL OTHER JUDICIAL PROCEEDINGS MUST BE STAYED PENDING ADJUDICATION OF THE PRESENT MOTION.

42 Pa.C.S.A. § 7304(d) provides: "An action or proceeding, allegedly involving an issue subject to arbitration, shall be stayed if a court order to proceed with arbitration has been made *or an application for such an order has been made under this section*." *See also* 42 Pa.C.S.A. § 7342(a) (providing that both statutory and common law claims for arbitration are subject to § 7304) (emphasis added).

This state law provision is consistent with Section 3 of the FAA (9 U.S.C. § 3), which provides that:

> [I]if any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

As a result, this Court should, in addition to ordering that Plaintiff's claims be submitted to binding arbitration, either dismiss her cause of action entirely, or at least hold it in abeyance pending the outcome of the arbitration proceedings. And, no other proceedings should occur until the present motion is decided.

## IV. DEFENDANT REQUESTS THE OPPORTUNITY TO SUBMIT A REPLY PRIOR TO A RULING ON THE PRESENT MOTION.

Your Honor's Judicial Practice and Procedures provide that the Court normally will not await a reply brief before ruling on a motion. The current motion provides good cause to deviate from this normal practice.

Until Defendant receives Plaintiff's response, it will not be informed of all the bases on which Plaintiff will attempt to challenge her agreement to arbitration all disputes. Thus, Defendant's reply will be the first opportunity for it to directly respond to the specific challenges Plaintiff raises.

For this reason, Defendant requests the opportunity to provide the Court with a reply addressing the actual issues raised by the Plaintiff prior to the Court ruling on the present motion.

## **CONCLUSION**

WHEREFORE, for the forgoing reasons, Defendant 1416 Chancellor, Inc. dba the Gold Club, respectfully requests this Honorable Court to enter an order compelling the parties to

submit all claims to binding arbitration according to the terms of the parties' agreement to arbitrate, and also to either stay all further judicial proceedings or simply dismiss Plaintiff's suit for the reasons set forth above.

                                                Respectfully Submitted,

Dated: October 23, 2014                       */s/ Pasquale J. Colavita*
                                            By:  Pasquale J. Colavita
                                            Pennsylvania Bar No. 76369
                                            1026 Winter Street, Suite 300 B
                                            Philadelphia, PA 19107
                                            Telephone:  (215) 351-5300
                                            Facsimile:  (215) 440-7882
                                            pjcolavita@verizon.net
                                            *Attorney for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of October, 2014, I filed the foregoing **BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND TO DISMISS OR TO STAY PROCEEDINGS** with the Clerk of the Court via the Court's CM/ECF system, thereby causing service by operation of the CM/ECF system upon:

Gary F. Lynch
Carlson Lynch LTD
115 Federal Street, Suite 210
Pittsburgh, PA 15212
glynch@carlsonlynch.com
*Attorney for Plaintiff*

                                                       */s/ Pasquale J. Colavita*
                                                    Pasquale J. Colavita
                                                    *Attorney for Defendant*