## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSICA HERZFELD, on behalf of herself** | : | **CIVIL ACTION** |
| **and all others similarly situated** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 14-4966** |
| **1416 CHANCELLOR, INC. d/b/a THE** | : | |
| **GOLD CLUB, and DOES 1 through 10,** | : | |
| **inclusive** | : | |

## OPINION

**KEARNEY, J.**                                                        **July 22, 2015**

Compelling parties to arbitrate wage collective and class action claims requires evidence of an arbitration clause covering the claims which is not procedurally and substantively unconscionable.   Although Plaintiff began performing as an exotic dancer at Defendant's location in 2006, Defendant can now only produce a 2013 agreement which includes an arbitration clause.  After discovery, extensive briefing and oral argument, we conclude there is no clear and convincing evidence of an arbitration agreement between these parties before 2013. The 2013 arbitration clause facially governs a wage dispute between "both" signatories after August 30, 2013.    Based on facts developed in court-ordered discovery, however, we cannot enforce this 2013 arbitration clause. The 2013 arbitration clause is substantively unconscionable as it eliminates Plaintiff's ability to pursue a statutory collective action and class action in arbitration as a matter of law and, most telling, does so without an express waiver or even a mention of representative actions from which a court may imply notice and waiver.  Plaintiff also adduced enough evidence of procedural unconscionability to invalidate the arbitration clause including a "take-it-or-leave-it" requirement to be signed one night seven years into the relationship between parties of significantly disparate bargaining position after Plaintiff already

paid to use the Defendant's stage.  Upon close examination of the issues of law and finding no genuine issue of material fact relating to the controlling questions of law, we deny Defendant's motion to compel arbitration in the accompanying Order.

## I.    *Undisputed Material Facts[1]*

While attending college from sometime in 2006 until April 2014, Plaintiff Jessica Herzfeld performed as an exotic dancer at the Gold Club in Philadelphia, owned by Defendant 1416 Chancellor, Inc. ("Gold Club") (ECF Doc. No. 41-5, p. 5, No. 44-5, p.2).

### *Plaintiff begins performing at the Gold Club in 2006*

The parties agree Herzfeld began performing at the Gold Club in 2006, but cannot find any document with an arbitration provision signed by her.    Absent Herzfeld's signature on a document, Gold Club cites its standard procedures claiming, upon hiring a new performer, it provided him or her with a packet of documents to sign (ECF Doc. No. 41-3, p. 6). The packet included: an "Entertainer Information Sheet"; a "Commitment to a Drug Free Environment"; "Stage Rental License Agreement"; and an "Entertainer's Rules, Regulations, and Proper Conduct." *Id.* The "Stage Rental License Agreement" in the alleged packet contains an arbitration clause. (ECF Doc. No. 41-7, p. 12).

After her 2006 audition, Herzfeld recalls a manager giving her only one document to sign and could not recall its content. (ECF Doc. No. 44-1, p. 5). Gold Club managers Weinerman and Maker could not recall giving her paperwork. (ECF Doc. No. 44-3, p. 17; ECF Doc. No. 44-2, p. 14). Neither party can locate any document she signed. (ECF Doc. No. 41-1, p. 26). Herzfeld

---

[1] There are many disputed facts but none material to our summary disposition of Defendant's motion. We derive these undisputed material facts from Defendant's Motion to Compel Arbitration and to Dismiss or to Stay Proceedings (ECF Doc. No. 40), Plaintiff's Response in Opposition to Defendant's Renewed Motion to Compel Arbitration and to Dismiss or to Stay Proceedings (ECF Doc. No. 44) and admissions during oral argument.

continued to perform at The Gold Club.   The Gold Club claims a 2009 flood destroyed the document. (ECF doc. No. 41-8, p. 16-17). [2] Nonetheless, Herzfeld continued working at Gold Club for four years after the flood without signing any agreement. (ECF Doc. No. 44-5, p. 2). Herzfeld also performed at other clubs including, "Oasis," in 2009 or 2010, and "Delilah's" in 2012. (ECF Doc. No. 41-5, No. 2).

### *Herzfeld signs an arbitration provision in August 2013.*

On August 30, 2013, Herzfeld worked a night shift at the Gold Club. (ECF Doc. No. 44-1, p. 8). Although the exact details as to timing are disputed, either immediately before or during this shift the Defendant's representative Kristin Angelucci gave Herzfeld a new "Stage Rental License Agreement" ("2013 Agreement"), with an arbitration clause. Herzfeld testified if she did not then sign the 2013 Agreement, she could not continue working. (ECF Doc. No. 44-5, p. 3). Herzfeld already paid for stage time for this evening and anytime spent reviewing the document reduced her pre-paid time on the stage.   Herzfeld testifies asked to take the 2013 Agreement home, but Ms. Angelucci refused the request at management's instruction. (ECF Doc. No. 44-1, p. 16).

Herzfeld signed the "Entertainer's Rules, Regulations, and Proper Conduct" document, stating she "[a]cknowledge[d] reading all the rules and regulation and will follow them," including:

> 4. There is $6.00 administrative fee (house fee). If you show up on time for your scheduled shift you will be rewarded by only paying $6.00. If you work 7-12 or 9-2 the house fee is $11.00.
>
> * * *
>
> 7. The DJ tip is at minimum $10.00. If you work a split shift you split the tip. If you work a double shift you tip double. Anything over the minimum is greatly appreciated.

---

[2] Gold Club produced several agreements with other performers predating the 2009 flood despite all agreements being kept in the same drawer of the same filing cabinet at the time of the flood. (ECF Doc. No. 44, p. 2)

* * *

15. If you arrive 60 minutes past the start of your shift the Stage Rental Fee will increase $25.00. If you are 1 hour 45 minutes past your shift the Stage Rental Fee will be $50.00.

(ECF Doc. No. 41-2, p. 4, ¶¶ 4, 7, 15).

The Arbitration Clause in the 2013 Agreement ("2013 arbitration clause") provides:

16. If any dispute arises out of this agreement it shall be settled by arbitration in accordance with the rules and regulations of the American arbitration association in Philadelphia by a sole arbitrator made available through the American arbitration association which shall be final and conclusive and binding upon both parties. Licensor and licensee shall each pay their own costs and expenses of abrasion including but not limited to their own respective attorneys face if any.

(ECF Doc. No. 41-2, p. 2, ¶ 16)(typographical errors in original).   Herzfeld read and signed the

2013 Agreement. (ECF Doc. No. 44-1, p. 13). Herzfeld's mother, an attorney, later reviewed the

2013 Agreement.  Herzfeld continued working until April 2014.

## II.    *Analysis*

Herzfeld, on behalf of herself and all others similarly situated, filed suit under the Fair

Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq*., seeking: (i) unpaid minimum

wages for hours worked for which Defendant failed to pay the mandatory minimum wage; (ii)

unpaid overtime wages for hours worked in access of forty in a work week; and (iii) liquidated

damages. (ECF Doc. No. 1, ¶ 10). In addition, Herzfeld seeks to bring a class action on behalf of

all dancers performing at the Gold Club in Pennsylvania to hold Gold Club liable under the

Pennsylvania Minimum Wage Act of 1968, 43 P.S. §§ 331.101, *et seq*, the Pennsylvania Wage

Payment and Collection Law, 43 P.S. §§ 260.1, *et seq*., and Pennsylvania common law. (ECF

Doc. No. 1, ¶ 8).

4

Gold Club moves to compel arbitration directing Herzfeld to pursue all claims through arbitration, or alternatively, stay this proceeding on those claims not referred to arbitration. We granted the parties limited discovery on arbitrability.[3]

The Federal Arbitration Act ("FAA") governs questions of arbitrability. *Quilloin,* 673 F.3d at 228. The FAA requires arbitration in accordance with the terms of the agreement if the making, or failure to comply with, the arbitration agreement is not an issue. 9 U.S.C. § 4. However, the court must look to the relevant state law of contracts, here Pennsylvania, in deciding whether an arbitration agreement is valid under the FAA. *Spinetti v. Service Corp Intern*, 324 F.3d 212, 213 (3rd Cir. 2003) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, (1995)). State contract principles also generally determine whether an arbitration agreement is unenforceable based on any of the "applicable contract defenses, such as fraud, duress, or unconscionability….." *Quilloin,* 673 F.3d at 229 (quoting *AT&T Mobility LLC v. Concepcion,* ___U.S.___, 131 S.Ct. 1740, 1745-46 (2011)). The Supreme Court distinguishes between challenges to the contract in general and challenges to the arbitration provision specifically. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006). An arbitrator decides challenges to the validity of the contract as a whole. *Id.* at 445. The court decides

---

[3] As arbitration is not clear from the face of the Complaint and we ordered discovery, we review a motion to compel arbitration under a summary judgment standard after the parties' discovery on arbitrability. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F.3d 764, 774 (3d Cir. 2013). Under a summary judgment standard, a court must grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light most favorable to the plaintiff, the party who opposed summary judgment." *Lamont v. New Jersey*, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing *Scott v. Harris*, 550 U.S. 372 (2007)).

specific challenges to the arbitration clause. *Id.* Here, the Court may decide the issue since the parties currently dispute only the arbitration provision.

**A. There is no evidence of an arbitration agreement before August 30, 2013.**

Gold Club seeks to enforce arbitration from the 2006 beginning of Herzfeld's performing arguing alternatively the "lost document" doctrine or the 2013 Agreement retroactively applies. Neither argument succeeds in requiring arbitration of wage claims before August 30, 2013.

**1. Gold Club does not adduce clear and convincing evidence of a "lost document".**

Under Pennsylvania law, the party seeking to enforce a lost instrument must prove by clear and convincing evidence: (1) the loss and *bona fide* search for the lost instrument and (2) its existence, execution, delivery and contents. *Coregis Ins. Co. v. City of Harrisburg*, 401 F.Supp.2d 398, 402-403 (M.D. Pa. 2005) (citing *Hacker v. Price*, 71 A.2d 851, 853 (1950)). Clear and convincing evidence enables "the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue...." *United States v. Askari*, 222 F. App'x 115, 119 (3d Cir. 2007) (quoting *In re Adoption of J.J.,* 511 Pa. 590, 515 (1986)(alteration in original)(citations omitted)).

Through affidavits and testimony, Gold Club presents substantial and largely uncontested evidence it lost the alleged arbitration agreement with Herzfeld and of a *bona fide* search which uncovered other 2006 documents not destroyed by the 2009 flood. It does not provide evidence Herzfeld signed an arbitration agreement in 2006 other than ambiguous testimony she may have signed one document concerning independent contractor status. No one testifies she signed any agreement. No one claims they provided her with an agreement let alone watched her sign it. Herzfeld does not remember receiving the 2006 Agreement. Further, neither manager could attest to a specific recollection of giving it to her. Consequently, even if we determined Gold

Club could prove the existence, loss, and *bona fide* search for the 2006 Agreement, Gold Club still did not produce clear and convincing evidence of execution and delivery to Herzfeld.

### 2.   The 2013 Agreement does not, on its face, apply retroactively.

The 2013 Agreement cannot be applied retroactively because it only applies to any dispute arising out of "this agreement."   To properly interpret a contract, we must ascertain the intent of the parties. If the parties intend retroactive application, the arbitration agreement includes broad temporal language. *Levin v. Alms and Associates, Inc.*, 634 F.3d 260, 260-61 (4th Cir. 2011). Examples of such language include: "any claim or dispute relating to or arising out of this agreement *or the services provided*" or "any controversy or claim arising out of or relating to this agreement... *or any aspects of the relationship*" or "and controversy ... *between members*". *See Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006); *Cara's Notions v. Hallmark Cards*, 140 F.3d 566, 568 (4th Cir. 1998); *Zink v. Merrill Lynch Pierce Fenner & Smith*, 13 F.3d 330 (10th Cir. 1993).

Here, the 2013 Agreement simply states, "If any dispute arises out of this agreement it shall be settled by arbitration...."   (ECF Doc. No. 41-2, p. 2).    It does not reference the relationship or any context other than "this agreement."   We find this limiting language insufficient to warrant retroactive application and there is no other evidence of retroactive application.

### B.  Herzfeld's dispute falls within the scope of the existing 2013 Agreement.

Even assuming Herzfeld's claims before August 2013 are not governed by an arbitration clause, Gold Club argues any claim for wages and damages after August 30, 2013 and until April 2014 must be arbitrated under the 2013 Agreement.    We agree the 2013 Agreement exists and this dispute falls within the scope of the arbitration provision.

### 1.   Existence

It is undisputed Herzfeld read and signed the 2013 Agreement as shown to the Court. (ECF Doc. No. 40-1, p. 4); (ECF Doc. No. 41-2, p. 2).

### 2.   Scope

#### a.      Arising out of

"A court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis in original). We must consider whether the scope of the 2013 Agreement indicates the parties intended to arbitrate Herzfeld's claim mindful we presume arbitrability from an existing arbitration clause. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986). Congress enacted the FAA to "revers[e] centuries of judicial hostility to arbitration agreements" by "plac[ing] arbitration agreements upon the same footing as other contracts." *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 7 F.3d 1110, 1113 (3d Cir.1993) (quoting *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 225–26, (1987)).   Thus, "[w]hen phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction…" *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000).

Here, paragraph 16 of the 2013 Agreement provides "… any disputes arises out of this agreement … shall be settled by arbitration…." (ECF Doc. No. 41-2, p. 2). It is undisputed Herzfeld signed the 2013 Agreement and continued to work at the Gold Club until the following April.  Herzfeld contends the arbitration clause does not apply to her wage claims because the 2013 Agreement stipulates it is not an employment agreement and "in the event that any governing federal or state agency determines that the relationship between owner and performer

is other than that of landlord and tenant, performer agrees to reimburse… owner…" (*Id.* at p. 1.)
Herzfeld thus argues her wage dispute does not "arise out of" the 2013 Agreement. We do not
agree. Doubts resolve in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr.
Corp.*, 460 U.S. 1, 24-25 (1983). The 2013 Agreement provides "[t]he parties hereto
acknowledge that the status created between owner and performer is that of a lease for use of the
premises." ((ECF Doc. No. 41-2, p. 2, ¶ 6). Challenging this language, Herzfeld contends she is
an employee. This is a fundamental dispute concerning her claims and arises out of the 2013
Agreement.

### 3. As a matter of law, Plaintiff is not permitted to arbitrate her FLSA collective action or class action claim.

Having found the 2013 arbitration clause applies, we now address whether this clause
permits Herzfeld to bring her collective and class claims in arbitration. This is a two step
inquiry. A threshold question is who decides whether the parties can bring these claims in
arbitration. If the Court retains this authority, then we decide whether the parties expressly or
implicitly agreed to arbitrate the collective and class claims.

### a. We decide whether Gold Club and Herzfeld may bring the collective and class claims in arbitration.

Our Court of Appeals in 2014 became the second court of appeals to hold, absent clear
and unmistakable evidence to the contrary, the district court decides if an agreement to arbitrate
authorizes class arbitration. *Opalinski v. Robert Half Intern. Inc.*, 761 F.3d 326, 329 (3rd Cir.
2014). *Opalinski* represents the court of appeals' most recent precedential statement on this
issue, thus mooting Gold Club's reliance on the non-precedential *Vilches v. The Travelers
Companies, Inc.*, 413 F.Appx. 487, 492 (3d Cir. 2011). In *Opalinski*, the arbitration agreement
provided for arbitration of any dispute of a FLSA claim arising out of or relating to their

employment. It was silent on the availability of class arbitration. Consequently, the court of appeals found the district court must decide whether the arbitration agreement permitted class arbitration. 761 F.3d at 335.  Here, the arbitration clause did not mention class or collective action resolution.  It only mentions the arbitration "shall be final and conclusive and binding upon both parties."

The first district court to address *Opalinski*'s import found the parties' reference to AAA rules, in and of itself, constitutes clear and unmistakable evidence of an implicit agreement the parties agreed to have the arbitrator decide whether she can resolve a classwide claim. *See Chesapeake Appalachia LLC v. Burkett*, No. 13-3073, 2014 WL 5312829 (M.D.Pa. Oct. 17, 2014).  We respectfully disagree. The fundamental core differences between bilateral and class arbitration requires we find clear and unmistakable evidence of the parties' agreement to have the arbitrator decide a class claim, or whether she can even arbitrate the claim.

Further,  unlike the district court in *Burkett,* we cannot find the three-word reference to AAA "rules and regulations" incorporates a panoply of collective and class action rules applied by AAA once the matter is properly before the arbitrators by consent or waiver.  Gold Club's arbitration clause does not incorporate AAA Rules on collective or class actions.  This clause merely mentions AAA's "rules and regulations" with no clear reference to any underlying document or ever mention collective or class actions.  "Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." *Standard Bent Glass Corp. v. Glassrobots OY*, 333 F.3d 440, 447 (3d Cir. 2003).    The AAA rules on collective or class actions are never mentioned or described in any

terms and we cannot find the identity of those rules may be ascertained beyond doubt. *See* 11 Richard A. Lord, *Williston on Contracts* § 30.25 (4th ed. 1999).

Here, the parties did not clearly and unmistakably agree the arbitrator decides availability of class or collective arbitration nor did the arbitration clause mention any aspect of representative litigation. (ECF Doc. No. 41-2).   Accordingly, we decide whether collective or class arbitration is within the scope of Gold Club's 2013 arbitration clause.

### b.   The 2013 arbitration clause does not authorize collective or class arbitration.

We next determine whether the 2013 arbitration clause authorizes collective or class arbitration. The difference between class action arbitration and individual arbitration is fundamental and drives to the core of the parties' benefit of the bargain. "Class action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Stolt-Neilsen, S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 685 (2010).

Our Court of Appeals observed "[t]raditional individual arbitration and class arbitration are so distinct that a choice between the two goes, we believe, to the very type of controversy to be resolved." *Opalinski*, 761 F.3d at 334.   The Court of Appeals, quoting *Stolt-Neilsen*, described the numerous differences: "(1) [a]rbitrator …no longer resolves a single dispute between the parties to a single agreement, but instead resolves many disputes between hundreds or perhaps even thousands of parties…[;(2)] the presumption of privacy and confidentiality that applies in many bilateral arbitrations [does] not apply in class arbitrations[,] thus potentially frustrating the parties' assumptions when they agreed to arbitrate[; (3) t]he arbitrator's award no longer purports to bind just the parties to a single arbitration agreement, but adjudicates the rights

of absent parties as well [; and (4)] the commercial stakes of class action arbitration are comparable to those of class action litigation, even though the scope of judicial review is much more limited." *Opalinski*, 761 F.3d at 333 (alteration in original)(quoting *Stolt-Neilsen*, 559 U.S. at 686-87).

Due to *Opalinski's* recent vintage, we have minimal guidance in deciding whether the 2013 Agreement could be interpreted to allow for collective FLSA or class arbitration. As the Supreme Court has not as yet required the arbitration agreement to *expressly* recite an agreement to class arbitration, it is possible to find an implicit agreement to authorize class arbitration but such an implicit agreement cannot be "inferred solely from the fact of the parties' agreement to arbitrate." *Jack v. Sterling Jewelers, Inc.*, 646 F.3d 113, 121 (2d Cir. 2011)(quoting *Stolt-Neilsen*, 559 U.S. at 685).

Pennsylvania contract law also prohibits us from looking beyond the four corners of the arbitration clause unless we find ambiguity. *Respa of Pennsylvania, Inc. v. Skillman*, 768 A.2d 335, 340 (Pa.Super. 2001)(citing *Seven Springs Farm, Inc. v. Croker*, 748 A.2d 740, 744 (Pa. Super. 2000). We cannot imply a material term into a contract when the contract itself gives no indication either party intended to be bound by such an obligation. *Glassmere Fuel Service, Inc. v. Clear*, 900 A.2d 398, 403 (Pa. Super. 2006). We find no ambiguity.

In a decision the author characterized as diametrically opposed to *Burkett* in this Circuit, the district court in *Chesapeake Appalachia, L.L.C., v. Scout Petroleum, LLC*, reviewed an arbitration clause not mentioning classwide arbitration: "[e]xcept as provided below, any controversy, claim or counterclaim... arising out of or in connection with this Order ... will be resolved by binding arbitration under this section and the then-current Commercial Rules and supervision of the American Arbitration Association". No. 14-0620, 2014 WL 7335045, at * 13

(M.D.Pa. Dec. 19, 2014). Absent any reference to class arbitration, the district court exercised his authority under *Opalinski,* and held the parties did not agree to class arbitration: "[t]he principal reason to conclude that this arbitration clause does not authorize classwide arbitration is that the clause nowhere mentions it." *Id.* at *13. The district court further rejected defendant's argument classwide arbitration is permitted because the arbitration clause refers to the AAA's Commercial Rules, which incorporates the Supplemental Rules for Class Arbitration. *Id.* at * 14. As the district court observed, the AAA Supplemental Rules expressly provide one should "not consider the existence of these Supplementary Rules, or any other AAA rules, to be a factor either in favor of or against permitting the arbitration to proceed on a class basis." *Id.* (quoting *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599-600 (6th Cir.2013)). Lastly, the district court rejected the argument that since the agreement does not expressly exclude the possibility of classwide arbitration, the Court should find it available. The district court held the agreement must expressly include the availability of classwide arbitration for the court "to force that momentous consequence upon the parties here." *Id.* [4]

Likewise in *Chesapeake Appalachia LLC v. Suppa*, No. 14-159, 2015 WL 966326 (N.D.W.Va March 4, 2015), the district court following the reasoning in Judge Brann's decision in *Scout Petroleum,* found neither broad language in an arbitration clause nor reference to AAA rules clearly and unmistakably evinces the parties' intent to arbitrate the availability of classwide arbitration. While the parties agreed to arbitrate disagreements with each other, the arbitration

---

[4] The district court certified its decision for appeal pursuant to 28 U.S.C. § 1292(b) and the Court of Appeals is presently reviewing the *Scout Petroleum* ruling. *Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, No. 15-1275 (3d. Cir.)

clause never mentions a class of persons. *Id.* at \*10. [5] *See also Chico v. Hilton Worldwide, Inc.,* No. 14-5750, 2014 WL 5088240, \*12 (C.D.Cal. Oct. 7, 2014)(arbitration agreements do not authorize class arbitration when they make no mention of employee groups, putative class members or other employees).

We conclude the 2013 Agreement does not expressly or implicitly evidence an agreement for collective or class arbitration. The 2013 Agreement refers only to arbitration affecting "both parties." (ECF Doc. No. 41-2, p. 2 ¶ 16). It does not mention other parties of any type. Under standard contract principles, there is no "meeting of the minds" on this monumental change to the parties' agreement. Unlike *Torres*, there is no express agreement regarding class or representative claims. The 2013 Agreement does not address collective or class arbitration. We further find the mention of the AAA rules and regulations unpersuasive. The parties do not identify which, if any, rules apply including Commercial Rules or Supplementary Rules. Gold Club presents no evidence of which AAA rules would apply in any event. "Class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator." *Opalinski*, 761 F.3d at 333 (quoting *Stolt-Nielsen S.A.,* 559 U.S. at 685).

We find the 2013 arbitration clause, as a matter of law, does not permit Herzfeld to bring collective or class actions in arbitration.

---

[5] For this reason, Judge Brody's recent decision in *Torres v. Cleannet, USA, Inc.*, 14-2818, 2015 WL 500163 (E.D.Pa. Feb. 5, 2015) is also not applicable. Judge Brody addressed a specific clause waiving classwide arbitration thus evincing an agreement not to arbitrate classwide claims. *See also*, *Sutherland v. Ernst & Young LLP,* 726 F.2d 290, 294 (2d Cir. 2013) (arbitration agreement barred any class or collective proceedings); *Harrison v. Legal Helpers Debt Resolution, LLC*, No. 12-2145, 2014 WL 4185814 (D.Minn. Aug. 22, 2014)(parties agreed to arbitrate class claims); *Porreca v. Rose Group*, No. 13-1674, 2013 WL 6498392, \*2 (E.D.Pa. Dec. 11, 2013)(parties agreed to not arbitrate collective or class claims).

### C. The arbitration provision in the 2013 Agreement is unconscionable and therefore unenforceable.

Having found the arbitration clause in the 2013 Agreement applies to Herzfeld's FLSA and Pennsylvania class claim and bars, by operation of law, a collective and class action, we now examine Herzfeld's claim the arbitration provision in the 2013 Agreement is unconscionable mindful of our obligation to honor contracts and compel arbitration unless the clause is "seriously problematic." *Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237, 239 (3d Cir. 2005).

Section 2 of the FAA makes agreements to arbitrate, "valid, irrevocable, and enforceable, save upon grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. *See Nino v. Jewelry Exchange, Inc.*, 609 F.3d 191, 200 (3rd Cir. 2010) ("Generally applicable contract defenses, such as… unconscionability, may be applied to invalidate agreements without contravening § 2 (of the FAA).")(citations omitted)[6]. Unconscionability, under Pennsylvania law, requires the challenging party show the provision is both substantively and procedurally unconscionable. *Quilloin,* 673 F.3d at 225 (citing *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007)). Our evaluation requires a sliding scale approach; "where the procedural unconscionability is very high, a lesser degree of substantive unconscionably may be required" and presumably vice versa. *Id.* (quoting *Salley*).

### 1. Procedural unconscionability

Procedural unconscionability concerns the process under which parties entered into the contract, where there is an "absence of meaningful choice on the part of one of the parties." *Hopkins v. New Day Financial*, 643 F.Supp.2d 704, 717 (2009) (quoting *Witmer v. Exxon Corp.*,

---

[6] *See Quilloin,* 673 F.3d 221, n. 6 (finding although *Nino v. Jewelry Exchange, Inc.* applies Virgin Islands law, the principles of procedural unconscionability are substantially similar under the laws of those jurisdictions)

434 A.2d 1222, 1228 (1981)). Factors include: (1) "the take-it-or-leave-it nature of the standardized form of the document;" (2) "the parties' relative bargaining positions"; and (3) "the degree of economic compulsion motivating the 'adhering' party(.)" *Salley*, 925 A.2d at 125 (quoting *Delta Funding Corp. v. Harris*, 912 A.2d 104, 111 (NJ 2006)).

In *Nino v. Jewelry Exchange Inc.*, our Court of Appeals directed the first and most significant inquiry in a procedural unconscionability analysis is whether the arbitration agreement is presented in a take-it-or-leave-it manner. 609 F.3d at 201.  Here, Gold Club concedes presenting the 2013 Agreement in a take-it-or-leave-it manner. (ECF Doc. No. 40-1, p. 12).  Gold Club admittedly offered Herzfeld no opportunity to negotiate its terms although Herzfeld could have forfeited her stage time and not returned until she signed the 2013 Agreement.

We next consider the parties' relative bargaining positions. Although it is undisputed Herzfeld performed at other clubs from 2006-2014, there exists a significant disparity in bargaining power between her and Gold Club. Gold Club likens Herzfeld's bargaining power to the economist negotiating with a brokerage house in *Zimmer v. CopperNeff Advisors, Inc.,* 523 F.3d 224, 229 (3d Cir. 2008). In *Zimmer*, the employee-plaintiff, at the time he accepted the defendant's job offer, was weighing multiple offers of employment and previously employed by J.P. Morgan Chase and the Federal Reserve Bank of New York as an economist. *Nino*, 609 F.3d 191, 202(3rd Cir. 2010).  Dissimilarly, Herzfeld, at the time she signed the 2013 Agreement, had been performing at the Gold Club for six years and was a student and an exotic dancer. (ECF Doc. No. 44, p. 6).  There is no evidence she had any bargaining position other than not working after paying to use the stage.    While we acknowledge Herzfeld's collegiate status and

experience in renting space at clubs, we find she is not analogous to an economist in a commercial context.

We also address the degree of economic compulsion. Herzfeld worked at the Gold Club for approximately seven years when Gold Club finally gave her an Agreement at some point during her night shift for which she already rented time and space. Herzfeld already paid for the stage time and the more time she spent reviewing the document, the less time she had to recoup the house fee. (ECF Doc. No. 44-2, p. 15). Further, as displayed by the "Entertainer's Rules, Regulations, and Proper Conduct," the stage rental fee would not be the only fee Herzfeld would encounter that night.

We recognize Herzfeld's procedural unconscionability argument is not her strongest position.   Standing alone, she would have difficulty showing unconscionability. Sufficient undisputed evidence exists, however, to find some basis for procedural unconscionability on the sliding scale dependent on our analysis of substantive unconscionability.

### 2. Substantive unconscionability

Substantive unconscionability refers to arbitration terms which are unreasonably or grossly favorable to one side and which the disfavored party does not assent. *Hopkins v. New Day Financial*, 643 F.Supp.2d 704, 718 (2009) (citing *Huegal v. Mifflin Const. Co.,* 796 A.2d 350, 357 (Pa.Super.Ct.2002)).

### a.  Shifting attorneys' fees

"Provisions requiring parties to be responsible for their own expenses, including attorneys' fees, are generally unconscionable because restriction on attorneys' fees conflict with federal statutes providing fee-shifting as a remedy." *Quilloin,* 673 F.3d at 230-31. Where called for by statute, "arbitrators … must ordinarily grant attorney fees to prevailing claimants rather

than be restricted by private contractual language." *Spinetti*, 324 F.3d at 216 (internal citation and quotation marks omitted)). The FLSA states: "The Court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action...." 29 U.S.C. § 216(b). The 2013 Agreement changes this mandate requiring Herzfeld to "... pay [her] own costs and expenses of abrasion [sic] including but not limited to their own respective attorneys face [sic] if any."[7] (ECF Doc. No. 41-2, ¶ 16). The 2013 Agreement's unambiguous restriction on the arbitrator's ability to award attorney's fees, costs, and expenses is substantively unconscionable.

### b. Loss of collective or class action without a waiver

As shown *supra,* we find, under the 2013 Agreement, collective action arbitration is unavailable contrary to the FLSA's permission: "[a]n action to recover the liability prescribed ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

Courts have viewed the loss of a statutory right to a collective action permissible, but only in the context of a contractual waiver. In *AT&T Mobility LLC v. Concepcion*, the Supreme Court held the FAA preempts a state rule classifying most collective-arbitration waivers in consumer contracts as unconscionable. 131 S.Ct. at 1774. The Court focused on the FAA's purpose "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes

---

[7] The 2013 Agreement contains many typographical errors. At oral argument, the parties agreed the proper interpretation is "costs and expenses of *arbitration*, including but not limited to their own respective attorneys' *fees*."

with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.,* 131 S.Ct. at 1748.

Unlike any case cited to us or independently reviewed, Herzfeld did not waive her collective or class action right. *See Concepcion*, 131 S.Ct. at 1774 (contract stated all disputes between the parties go to arbitration and required claims be brought in the parties' "individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding."); *American Express Co. v. Italian Colors Restaurant,* __U.S.__, 133 S.Ct. 2304, 2308 (2013). (agreement provided "there shall be no right or authority for any Claims to be arbitrated on a class action basis"). Herzfeld lost her collective and class action right under operation of law because the arbitration clause does not recite this right.    Paradoxically, by <u>not</u> including language addressing a collective or class action in arbitration,  Gold Club is able to now argue Herzfeld loses her statutory right to a collective action and ability to bring her class claims in arbitration.    Herzfeld did not consent to the loss of this right.

Under Pennsylvania law, a waiver is the voluntary and intentional abandonment or relinquishment of a known right. *Kamco Indus. Sales, Inc. v. Lovejoy, Inc.*, 779 F. Supp. 2d 416, 423-24 (E.D. Pa. 2011) (internal citation and quotation marks omitted). "To constitute a waiver of legal right, there must be a clear, unequivocal and decisive act of the party with knowledge of such right and an evident purpose to surrender it." *Id.* (citing *Brown v. City of Pittsburgh*, 186 A.2d 399, 401 (Pa. 1962)). Herzfeld did not expressly waive her right to collective action in the contract. We find no evidence of her clear and unequivocal surrender of her right.[8]

---

[8] Nor does the Court find she implicitly waived her right to a collective or class action. Implicit waiver can be inferred from "acts or language so inconsistent with a purpose to stand on the contract provisions as to leave no opportunity for a reasonable inference to the contract." *GGIS Ins. Services, Inc. v. Lincoln General Ins.*, 773 F.Supp. 2d 490, 507 (M.D.Pa 2011)(citations omitted). "…Waiver should not be lightly inferred and a court should not find waiver unless a

We analogize Herzfeld's loss of her statutory right to collective action and class action arbitration to the loss of fee-shifting as a statutory remedy. Both the right to fee shifting and right to initiate collective action are under the same section in the FLSA: "(b) Damages; right of action; attorney's fees and costs; termination of right of action". 29 U.S.C.A §216. "It is well established that arbitration is merely a choice of dispute resolution and does not infringe upon statutory protections." *Spinetti*, 324 F.3d at 216 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 628 (1985)).

In *Spinetti*, our court of appeals invalidated an arbitration agreement infringing ADEA rights to fee-shifting. "'If arbitration is to offer claimants the full scope of remedies available under Title VII, arbitrators in Title VII cases, just like courts, must be guided by *Christianburg* and must ordinarily grant attorney fees to prevailing claimants' rather than be restricted by private contractual languages." *Spinetti*, 324 F.3d at 216 (quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 673 n.15 (6th Cir. 2003)). Here, the arbitrator cannot offer Herzfeld the full scope of FLSA remedies in arbitration because we held collective and class action arbitration under the 2013 Agreement is unavailable as a matter of law under *Opalinski*. Consequently, we find the arbitration provision imposing an involuntary unknowing loss of FLSA collective action and class action rights is substantively unconscionable.

### c.  Cost of arbitration

In its discussion of the "loss of effective vindication of a statutory right" basis for substantive unconscionability in *Italian Colors,* the Supreme Court addressed the desire to prevent "prospective waiver of a party's right to pursue statutory remedies." 133 S.Ct. at 2310 (quoting *Mitsubishi Motors Corp.,* 473 U.S.at 628). The Court found this exception would

---

party's conduct has gained that party "an undue advantage or resulted in prejudice to another." *Id.* (citations omitted).

"perhaps cover filing and administrative fees attached to arbitration that are so high as to make access to the forum impracticable." *Id.* (citing *Green Tree Financial Corp.-Ala. V. Randolph,* 531 U.S. 79, 90 (2000) ("It may well be that the existence of large arbitration costs could preclude a litigant … from effectively vindicating her federal statutory rights.))   The Supreme Court then determined, "[b]ut the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Id.,* 133 S.Ct. at 2311.

Here, filing fees would only reach impracticable levels if Herzfeld filed a collective or class action in arbitration.[9] As Herzfeld cannot file a collective or class action in arbitration, the Court need not decide if the high costs of "filing and administrative fees" would negate her effective vindication of a statutory right and availability of class treatment of allegedly similar claims.

**D.  The unconscionable terms cannot be severed.**

An unconscionable term may be severed from an arbitration agreement where it can be done "without disturbing the primary intent of the parties to arbitrate their disputes." *Parilla v. IAP Worldwide Services, CI, Inc.*, 368 F.3d 269, 287 (3rd Cir. 2004) (*quoting Spinetti*, 324 F.3d at 214). "We have no difficulty in concluding that the primary purpose of the arbitration bargain entered into by the Spinetti and SCI was not to regulate costs or attorney's fees. Instead, it was designed to provide a mechanism to resolve employment-related disputes." *Spinetti,* 324 F.3d at 219.

---

[9] Herzfeld initially contended the arbitration filing fee exceeded ten thousand dollars ($10,000). However, this estimate is based on the potential recovery in a collective action.

However, severance may be impermissible when, " 'the cumulative effect' of the unconscionable provisions 'permeated the agreement … and thoroughly tainted the central purpose of requiring the arbitration of employment disputes'." *Parilla*, 368 F.3d at 287 (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 271 (3d Cir.2003)). "A multitude of unconscionable provisions in an agreement to arbitrate will preclude severance and enforcement of arbitration if they evidence a deliberate attempt by an employer to impose an arbitration scheme designed to discourage an employee's resort to arbitration or to produce results biased in the employer's favor." *Id.* at 289.

While we could sever the attorney's fee shifting, we cannot restore the loss of Herzfeld's right to a collective and class action without an express waiver.   This fundamental change in the nature of dispute resolution cannot be severed or simply added to the parties' agreement. *Glassmere Fuel Service*, *supra*.  It is the core of the dispute resolution.

Similarly, severing Herzfeld's state law class action claims from her FLSA overtime claim and ordering piecemeal arbitration would only duplicate, rather than streamline, the parties' effort to resolve these claims.   Herzfeld's collective FLSA claims also form the basis of her Pennsylvania claims all of which are plead as claims on behalf of all similarly situated current and former dancers working for Gold Club in Pennsylvania.  As she has not agreed to waive either collective or class claims in arbitration, this Court declines to sever the class claims.

### E. The Court will not extend ratification to validate this unconscionable clause.

Gold Club argues Herzfeld ratified the arbitration clause in the 2013 Agreement when she took it home for her mother/attorney's review and then returned to work for almost a year. (ECF Doc. No. 40-1, p. 14).   The parties have not directed us to any case law where a party can ratify an unconscionable clause. We are aware of parties ratifying a contract made under known

economic duress. *See Seal v. Riverside Fed. Sav. Bank*, 825 F. Supp. 686, 695 (E.D. Pa. 1993) (finding plaintiff ratified a contract induced under economic duress); *National Auto Brokers Corp. v. Aleeda Development Corp.*, 364 A.2d 470 (Pa. Super. 1976) (finding ratification results if a party who executed a contract under duress accepts the benefits flowing from it, or remains silent, or acquiesces in the contract for any considerable length of time after having the opportunity to annul or avoid the contract); *Sams v. Sams*, 808 A.2d 206, 212 (Pa. 2002) (finding an unconscionable contract was not ratified because plaintiff did not benefit from it).

Unlike economic duress, this case involves the unconscionable loss of a FLSA collective action and state law class action not known to Herzfeld. We are addressing only the arbitration clause. There is no evidence Herzfeld knew of her loss of this right. She could not ratify terms which, as a matter of law, forego these rights. We decline to extend the law to permit an unknowing party to ratify an unconscionable clause.

## III. Conclusion

Gold Club cannot adduce clear and convincing evidence of a lost 2006 arbitration agreement with Herzfeld. Moving forward seven years, the 2013 arbitration clause governs arbitration only under its terms for claims after August 30, 2013. As such, we find no retroactive application of a 2013 arbitration clause. The 2013 arbitration clause facially covers Herzfeld's claims. We find, however, the 2013 arbitration clause is substantively and procedurally unconscionable in this case. The principal ground for unconscionability arises from the unknowing loss of Herzfeld's statutory right to a collective action and loss of a class action by operation of law. The arbitration clause, through silence, both eliminates Herzfeld's right to bring her wage claims in court and her ability to bring a FLSA collective and state law class action in arbitration. We see no evidence of an express or implied waiver of a FLSA collective

23

and state law class action in this 2013 arbitration clause.  The clause is seriously problematic. The only way to enforce the 2013 arbitration clause in arbitration is to write into the clause a material term not agreed by the parties and, as best we can discern following discovery, never discussed by them.  We decline to do so and find the 2013 arbitration clause is substantively unconscionable, and teamed with evidence of the admitted "take it or leave it" after Herzfeld paid for her stage time and the economic disparity between the parties, requires we find the 2013 arbitration clause is unenforceable.

In the accompanying Order, we deny Defendant's renewed motion to compel arbitration.