**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JESSICA HERZFELD, on behalf of herself and All others similarly situated, | ) ) ) | Case No.: 2:14-CV-04966-MAK |
| Plaintiffs, | ) ) | Hon. Mark A. Kearney |
| v. | ) ) | |
| 1416 CHANCELLOR, INC., f/d/b/a THE GOLD CLUB, APM Club, Inc. d/b/a THE GOLD CLUB, and DOES 1   through 10, inclusive, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**DEFENDANTS' COMBINED RESPONSES TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION PURSUANT TO FED. R. CIV P. 23 [ECF Doc. No. 97] AND
PLAINTIFF'S MOTION FOR CONDITIONAL COLLECTIVE ACTION
CERTIFICATION AND JUDICIAL NOTICE PURSUANT TO SECTION 216(b) OF THE
FAIR LABOR STANDARDS ACT [ECF Doc. No. 98]**

**<u>INTRODUCTION</u>**

Plaintiff's motions for class and collective action certification [ECF Doc. Nos. 97 and 98,

respectively] fail to address the elephant in the room  -- whether she can serve as a class or

collective action representative for individuals asserting a claim against a company she herself has

no direct wage and hour claim against.  Plaintiff performed for her own benefit as an exotic dancer

on the premises of 1416 Chancellor, Inc.  Having enjoyed the freedoms and reaped the financial

rewards of performing as her own business, she now seeks the windfall of also receiving minimum

wages, overtime wages, and liquidated damages in an equal amount, plus attorney's fees and cost.

After the filing of her lawsuit, the owner of 1416 Chancellor, Inc. ("1416 Chancellor"), died.  Defendant APM Club, Inc. ("APM Club") purchased its assets and began operating the same genre of establishment, a gentlemen's club, at 1416 Chancellor's prior location.  Plaintiff assumes without explanation that she can serve as a class and collective action representative for individuals who performed at APM Club's establishment after the asset purchase.

However, a review of the authorities referenced in this Court's Order [ECF Doc. No. 90] on Defendant APM Club and Anthony P. Milicia's Motion to Dismiss [ECF Doc. No. 84] demonstrates that she lacks Article III standing to serve as either a class or collective action representative for direct wage and hour claims against APM Club.  APM Club was never her employer or joint employer.  Simply alleging that both entities misclassify exotic dancers as non-employees is not enough.  If Plaintiff's assumed position were law, she could serve as a representative for any entertainer that worked at any gentlemen's club.  That is not the law.

## STATEMENT OF FACTS

Plaintiff alleges that she performed at the "Gold Club," located at 1416 Chancellor Street in Philadelphia, Pennsylvania, from 2006 to April of 2014.   [ECF Doc. No. 73, Amended Complaint, ¶ 12].  Defendant 1416 Chancellor owned and operated the Gold Club "at all relevant time until some point between July 1, 2015 and January 25, 2016."  [*Id*. at ¶ 12].

Entertainers who performed at 1416 Chancellor, such as Plaintiff, earned their income primarily in three fashions (1) patrons giving the entertainers voluntary tips for their stage performances ("Stage Tips"); (2) patrons paying the entertainers mandatory fees in order to obtain private dancer performances in designated areas of the premises ("Entertainment Fees"); and (3)

patrons giving the entertainers voluntary tips ("Dance Tips") on top of the mandatory fee for a private performance.  [**Exhibit 1**, Declaration of Zachary Weithoner ("Weithoner Dec."), ¶ 5].

Plaintiff claims that "she typically worked two to four days per week, usually on Thursdays through Saturdays."  [*Id*. at ¶ 39].  [**Exhibit 2**, Plaintiff's Answers and Objections to Defendant's (1416 Chancellor, Inc.'s) First Set of Interrogatories ("Herzfeld Ans. 1416 Chancellor First Interrogatories"), #8-9].  Plaintiff asserts that entertainers performed in 5 to 6 hour "shifts" at 1416 Chancellor."  [Id.].  Thus, under her own assertions Plaintiff typically performed from 12 to 24 hours per week.

Herzfeld was well compensated for her efforts.  Depending on the method of computation, she retained a net of $8.16-$28.17 per hour, in Entertainment fees, plus Stage Tips.[1]  After she

---

[1]     She typically performed three to ten private dances each day she performed.  [**Exhibit 3**, Deposition of Jessica Herzfled ("Herzfeld Dep."), p. 37:15-18; **Ex. 2**, Herzfeld Ans. 1416 Chancellor First Interrogatories, #10; **Exhibit 4**, Plaintiff's Responses and Objection to Defendant 1416 Chancellor Inc.'s Second Interrogatories ("Herzfeld Ans. 1416 Chancellor Second Interrogatories"), #3 (Referencing Plaintiff's Answer to Interrogatory #10 in Herzfeld Ans. 1416 Chancellor First Interrogatories for the entire time Herzfeld performed at 1416 Chancellor)].  She also performed "maybe on average, a couple" champagne courts per week.  [**Ex. 3**, Herzfeld Dep., p. 40:6-8].

Plaintiff alleges that for each one song private dance, a customer paid $20, she received $15, and 1416 Chancellor received $5; for each two song private dance, a customer paid $30, she received $20, and 1416 Chancellor received $10; for each 15 minute "Champagne Court", a customer paid $150, she received $100, and 1416 Chancellor received $50; and for each 30 minute Champagne Court, a customer paid $300, she received $200, and 1416 Chancellor received $100.  [Amended Complaint, ¶ 54].

Using the lower amount received for private dances (one song - $15) and champagne courts (15 min. - $100), Plaintiff typically earned $45-$150 from private dances each evening, plus an additional $200 from champagne courts each week.  Assuming a four-performance week, Herzfeld earned $180-$600 a week from private dances.  This does not include the $30-$150 per day (or $120-$600 per week [**Ex. 3**, Herzfeld Dep., pp. 42:22-43:3]) Herzfeld received in Stage Tips.  The weekly total for this "By Day Estimate" gives a total of $320-$800 in Entertainment Fees when champagne courts are included (the "By Day Estimate")).  Minus the $124 a week plaint claims she paid to the club or its DJ and House Mom, the By Day Estimate still leaves a net of $196-$676 per week Herzfeld received and retained in Entertainment Fees (plus Stage Tips).

ceased performing at 1416 Chancellor in April of 2014, she filed her lawsuit in August of 2014. [Complaint, ECF Doc. No. 1]. Since filing her lawsuit, Herzfeld has spoken to one other dancer about it. [**Ex. 4**, Herzfeld Ans. 1416 Chancellor Second Interrogatories, #5 (dated April 28, 2017)]. When asked directly whether she would like to represent her "co-workers" in this action, her answer was, "I guess." [**Ex. 3**, Herzfeld Dep., pp. 55:23-56:1].

1416 Chancellor moved to compel arbitration. [ECF Doc. No. 3]. After discovery on the arbitration issue, 1416 Chancellor renewed its motion to compel arbitration. [ECF Doc. No. 40]. The Court denied the motion [ECF Doc. Nos. 47 & 48], and the Third Circuit affirmed [ECF Doc. No. 60] on November 29, 2016.

During the pendency of the appeal, on August 15, 2015, Carmine M. Milicia, the sole shareholder, officer, and director of 1416 Chancellor, died of Colon Cancer. [Declaration of Deborah M. Milicia ("Milicia Dec."), ECF Doc. No. 62-2, ¶¶ 3 & 6]. Approximately six (6) weeks before his death, Carmine Milicia, as president of 1416 Chancellor, entered into an Agreement of Sale of Liquor License and Assets Only of 1416 Chancellor to APM Club, Inc (the "Asset Purchase Agreement"). [Attached hereto as **Exhibit 5**; see also Addendum to Asset Purchase Agreement, **Exhibit 6** hereto]. It is not disputed that Anthony P. Milicia is the president and sole shareholder of APM Club, Inc. Appropriate approvals were obtained, and APM Club was able to complete

---

Plaintiff also estimated her earnings in another fashion. She testified that each date she performed she would pay the club a fee of $11, plus the DJ $15, plus the house mom $5 (the "Daily Cost". [**Ex. 2**, Herzfeld Dep., p. 40:9-20]. She further testified that she "paid" to the club approximately $400 per week, $124 of that being four days of Daily Cost, plus $276 being the 1416 Chancellor's take from her private dance performances." She agreed that if the club received $276 from her private dances, then she received twice that amount in Dance Fees, being $552, plus Stage Tips (the "By Week Estimate"). [*Id*. at pp. 40:9-42:24].

the purchase and commence operations on January 25, 2016. [**Exhibit 7**, Certificate of Completion].

Plaintiff filed her Amended Complaint [ECF Doc. No. 73] on January 11, 2017, also naming APM Club, Inc., and Antony P. Milicia as Defendants. 1416 filed its Answer and Counterclaims [ECF Doc. No. 75] on January 25, 2017. Plaintiff moved to dismiss the counterclaims on February 15, 2017 [ECF Doc. No. 77], and the Court denied the motion on March 3, 2017 [ECF Doc. No. 83].

Defendants Anthony P. Milicia and APM Club, Inc., moved to dismiss the Amended Complaint against them on March 6, 2017. [ECF Doc. No. 84]. The Court granted the motion as to Mr. Milicia and denied it as to APM Club, Inc. [ECF Doc. No. 90]. APM Club filed its Answer and Counterclaims on April 5, 2017. [ECF Doc. No. 91].

1416 Chancellor asserts the following counterclaims against Herzfeld and any class or collective member who joins the suit: (I) Legal Requirement to Remit Entertainment Fees/Conversion/Restitution, (II) Fraud and Fraud in the Inducement, (III) Innocent Misrepresentation, (IV) Unjust Enrichment and Quantum Meruit, (V) Set Off, (VI) Accounting, and (VII) Constructive Trust. [ECF Doc. No. 75, pp. 49-71].

APM Club asserts the following counterclaims not against Herzfeld, but against any class or collective member who joints the suit: (I) Legal Requirement to Remit Entertainment Fees/Conversion/Restitution, (II) Breach of Contract, (III) Fraud and Fraud in the Inducement, (IV) Innocent Misrepresentation, (V) Unjust Enrichment and Quantum Meruit, (VI) Set Off, (VII) Accounting, and (VIII) Constructive Trust.

All of the entertainers who have performed at APM Club have done so under circumstances that are different in important respect than Entertainers who performed at 1416 Chancellor.  To begin with, after an entertainer auditions and APM Club desires to offer her the opportunity to perform at the club, a Manager for APM Club presents with entertainer with a document entitled "Business Status Selection by Entertainer" (a "Selection Document")  [Ex. 1, Weithoner Dec., ¶ 9].  A copy of the Selection document is attached hereto as Exhibit A to the Weithoner Dec. [**Ex. 1**].  The Selection Document sets forth the difference between performing at the Club as non-employee Independent Professional Entertainer (an "IPE") or under "Employee Status."  APM Club asserts that IPE Status reflects a true non-employee relationship, "Employee Status" reflects employment that is complaint with applicable state and federal wage and hour laws, and the Selection Documents accurately and thoroughly explains each option.  APM's representative does not instruct or coerce any entertainer to choose one or the other – it is completely up to the entertainer.  [Ex. 1, Weithoner Dec., ¶ 10]. Since APM Club began operating, no entertainer has chosen Employee Status.

The entertainers who chose IPE Status are then presented with an "APM Club, INC. d/b/a *The Gold Club* Dancer Performance Lease" (a "Lease"). [Sample attached as Exhibit B to **Ex. 1**, Weithoner Dec.]. The Lease is different in important material respects from the "Stage Rental/Licensce[sic] Agreement" by which entertainers performed at 1416 Chancellor.  These differences will be explained below as appropriate.

## **ARGUMENT**

## I.  **PLAINTIFF LACKS ARTICLE III STANDING TO REPRESENT ENTERTAINERS WHO PERFORMED AT APM CLUB.**

In order to serve as a class representative, Herzfeld must have standing to assert the claims on which she seeks to represent the class.  [*See* Order, ECF Doc. No. 90, p. 2 n. 2 (citing Neale v. Volvo Cars of North America, LLC, 794 F.3d 353, 362 (3d Cir. 2015)].  Because she lacks standing to assert direct wage and hour claims against APM Club, she cannot serve as a class or collective action representative for a class or portion of a class asserting such a claim.

The Third Circuit began its analysis in Neale by observing "[w]e have 'an obligation to assure ourselves' of litigants' standing under Article III."   Neale, 794 F.3d at *358 (quoting DiamlerCrysler Corp. v. Cuno, 547 U.S. 332, 340 (2006) (quoting Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000))).  Article III requires a litigant to show "(1) an injury in fact, (2) a sufficient causal connection between the injury and conduct complained of, and (3) a likel[ihood] that the injury will be redressed by a favorable decision."  Id. (quoting Susan B. Anthony List v. Driehaus, ---U.S.---, 134 S.Ct. 2334, 2341 (2014)).

> Standing requires that the party seeking to invoke federal jurisdiction "demonstrate standing for ***each claim he seeks to press***." DaimlerChrysler, 547 U.S. at 352, 126 S.Ct. 1854. Thus, we do not exercise jurisdiction over one claim simply because it arose "from the same 'nucleus of operative fact' " as another claim. Id. Accordingly,
>
> "[S]tanding is not a 'mere pleading requiremen[t] but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation.'"

Neale v. Volvo Cars of N. Am., LLC, 794 F.3d 353, 359 (3d Cir. 2015) (emphasis added)(quoting Ala. Legis. Black Caucus v. Alabama, ---U.S.---, 135 S.Ct. 1257, 1276 (2015) (alteration in original) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992))).

"In the class action context, that requirement must be satisfied by at least one named plaintiff."  McNair v. Synapse Group, Inc., 672 F.3d 213, 223 (3d Cir. 2012) (citing Warth v. Seldin, 422 U.S. 490, 502 (1975); O'Shea v. Littleton, 414 U.S. 488, 494 (1974) ("[i]f non of the

7

named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, non may seek relief on behalf of himself or any other members of the class")). Thus, prior to granting class or collective action certification against APM Club, the Court must ascertain whether Plaintiff has standing to assert the specific claims for which she seeks to act as a representative.  As to APM Club, she does not.

Plaintiff seeks certification of a Rule 23 class of, "All current and former Dancers who have worked for Defendants at Gold Club in the Commonwealth of Pennsylvania at any time since August 26, 2011" [ECF Doc. No. 97-1, p. 19], and conditional certification of a 29 U.S.C. § 216(b) collective of, "All current and former dancers who have worked for Defendants at Gold Club in the Commonwealth of Pennsylvania at any time in the past three years" [ECF Doc. No. 98-3, p. 1].  She does so "although admitting she worked from 2006 to April of 2014 . . . ." [Order, ECF Doc. No. 90, p. 2 n. 2].  Herzfeld has also pled that APM Club did not begin its operation or control over the former premises of 1416 Chancellor until "between July 1, 2015 and January 25, 2016." [Amended Complaint, ECF Doc. No. 73, ¶¶ 16, 81].  She has no direct claim against APM Club.

Herzfeld also, due to her admissions, cannot establish that APM Club was her joint employer under the test articulated in In re Enterprise Rent-A-Car Wage & Hour Emp't Prac. Litig., 683 F.3d 462 (3d Cir. 2012).  This "Enterprise test" looks to:

> (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.

> Id. at 469. As with the existence of an employer-employee relationship in the first instance, however, the determination depends on "all the facts in the particular case." 29 C.F.R. § 791.2(a).

Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 149 (3d Cir. 2014) (quoting Enterprise, 683 F.3d at 469).  [*See also* Order, ECF Dkt. No. 90, n. 2, p. 2].

As with Anthony Milicia, since Plaintiff admits that APM Club had no role in the operation of 1416 Chancellor (it did not even exist) during the time Herzfeld performed there, it cannot be her joint employer.  As to Herzfeld, this nonexistent entity did not have the power affect any of the factors (1)-(4) articulated above.

Similarly, the Pennsylvania Minimum Wage Act ("PWMA") defines an "employer" to be "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe[e]." 43 P.S. § 333.103.  And the Pennsylvania Wage Payment and Collection Law ("WPCL") defines employer to include, "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. § 260.2a.  To be an employer under the WPCL, "a person must have exercised a policy making function in the company and/or an active role in the corporation's decision making process."  Hirsch v. EPL Tech., Inc., 910 A.2d 84, 90 (Pa. Super. Ct. 2006) (citing Int'l Ass'n of Theatrical Stage Employees, Local Union No. 3 v. Mid-Atlantic Promotions, Inc., 856 A.2d 102, 105 (Pa. Super. Ct. 2004) For the same reasons, Herzfeld cannot establish that APM Club acted directly or indirectly on behalf of 1416 Chancellor, was its agent, or exercised a policy making function with it, at the time Herzfeld performed there.

Therefore, for the same reasons stated by this Court for the dismissal of Anthony Milicia, Herzfeld has suffered no injury in fact and otherwise lacks Article III standing to assert a claim or serve as a class representative for any direct FLSA, PMWA, or WPCL claims against APM Club. In the repetitive action context, she must have standing for "*each claim [s]he seeks to press.*"

Neale, 794 F.3d at 359 (emphasis added) (quoting DaimlerChrysler, 547 U.S. at 352).  Thus, her standing to assert a successor liability claim against APM Club for the acts of 1416 Chancellor is insufficient to supply standing for her asserted FLSA, PWMA, and WPCL claims.  Class and collective action certification must be denied in its entirety on those claims against APM Club.

## II.   AUTHORIZING SOLICITATION NOTICE FOR A CLASS REPRESENTATIVE WOULD BE IMPROPER AND FUTILE

### A.   Court Authorized Solicitation Would be improper

Nevertheless, recognizing without articulating this problem, Plaintiff suggests a solution. She asks the court to certify a subclass looking for a representative.  In other words, Plaintiff's asks this court to assist her and her counsel to solicit a plaintiff to bring a claim which competes for limited funds with the class she seeks to represent.  This would be in complete abrogation of the principles set forth above.

Further, "[s]uch a 'cart before the horse' approach to litigation is not the proper mechanism for the vindication of legal rights."  Bodner v. Oreck Direct, LLC, No. 06-cv-4756, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007) (quoting Meachum v. Outdoor World Corp., 171 Misc.2d 354, 654 N.Y.S.2d 240, 369 (1996) ("Solicitation of clients for the commencement or continuation of a class action is improper, sufficient to warrant denial of class action certification").  "[C]ourts . . . have a responsibility to avoid the 'stirring up' of litigation through unwarranted solicitation." D'Anna v. M/A –Com, Inc., 903 F.Supp. 889, 894 (D. Md. 1995).

Likewise, it has been recognized that where two "classes are competing for the same limited fund for their recovery . . . a single lead plaintiff will be unable to have undivided loyalties to vigorously pursue recovery on behalf of both classes . . . ." Friedman v. Quest Energy Partners LP, 261 F.R.D. 607, 610 (W.D. Ok. 2009) (citing Kuper v. Quantum Chem. Corp., 145 F.R.D. 80,

83 (S.D. Ohio 1992). Amazingly, Plaintiff requests solicitation of a class representative for a class that would compete with hers for recovery.

Plaintiff's improper approach to class litigation warrants denial of the Motions in full on that basis alone.

### B. Because All Entertainers Performing At APM Club Have Agreed To Arbitrate All Claims Individually, There Exists No Possible Class or Class Representative

All entertainers who have performed at APM Club have done so pursuant a Lease containing a fully enforceable agreement to arbitrate claims individually. [*See* **Ex. 1**, Weithoner Dec., ¶¶ 13-15 (all entertainers at APM Club perform pursuant to a Lease)]. The arbitration provisions of the Lease suffer from none of the defects contained in Herzfeld's agreement. *See generally* Herzfeld v. 1416 Chancellor, Inc., No. 14-4966, 2015 WL 4480829 (3d Cir. July 22, 2015). Instead, the arbitration provisions apply to:

> **ANY CONTROVERSY, DISPUTE OR CLAIM ARISING OUT OF, OR RELATING IN ANY WAY TO, THIS LEASE, ITS TERMINATION, OR ENTERTAINER PERFORMING AND/OR WORKING A THE CLUB AT ANY TIME . . . REGARDLESS OF WHETHER SUCH CLAIM IS CONTRACTUAL IN TORT, OR BASED UPON COMMON LAW OR STATUTE.**

[Lease, Ex. B to **Ex. 1**, ¶ 21(A)].

Any and all challenges to the agreement are validly delegated to be decided by the arbitrator.

> **THE ARBITRATOR SHALL HAVE EXCLUSIVE AUTHORITY TO RESOLVE ANY DISPUTES OVER THE FORMATION, VALIDITY, INTERPRETATION AND/OR ENFORCEABILITY OF ANY PART OF THIS LEASE, INCLUDING THESE ARBITRATION PROVISIONS.**

[Id.].  *See also* Allstate Ins. Co. v. Toll Brothers, Inc., 171 F. Supp.3d 417, 423 (E.D. Pa. 2016) (explaining the enforceability of delegation provisions) (citing Rent-A-Center, West, Inc., v. Jackson, 561 U.S. 63, 68-69 (2010)).

Nearly identical agreements to arbitrate have been upheld with the wage and hour Plaintiffs being assessed attorney fees and costs for challenging enforceability.  Robinson v. Taboo Gentlemen's Club, LLC, No. 3:14-cv-123, 2015 WL 3868531 (N.D.W.V. June 23, 2015).

Thus, this case presents a circumstance where the existence of arbitration renders class or collective certification improper or, at the very least, individuals who executed Leases should be excluded from any class or collective.  *See, e.g.*, Longnecker v. American Exp. Co., No. 2:14-cv-0069, 2014 WL 4071662, at *7 (D. Arz. Aug. 18, 2014); Livingston v. Associates Finance, Inc., 339 F.3d 553, 559 (7th Cir. 2003); Daugherty v. Ecana Oil & Gas (USA), Inc., 838 F.Supp.2d 1127, 1134 (D. Colo. 2011) (excluding from the collective individuals who had signed independent contractor agreement with arbitration provisions); Fischer v. Kmart Corp., 2014 WL 3817368, at *7-*8 (D.N.J. Aug. 4, 2014) (same) (citing Adami v. Cardo Windows, Inc., No. 12-cv-2804, 2014 WL 320048, at *9-10 (D.N.J. Jan.29, 2014) (individuals who signed arbitration agreements are not similarly situated since the other plaintiffs had "not signed any such agreement"); Morangelli v. Chemed Corp., CIV. 10–0876, slip op, at *8 (E.D.N.Y. June 17, 2010) ("It would be a disservice to judicial efficiency to certify all [employees], when those with arbitration agreements are subject to additional, prolonging motion practice which will likely disqualify them from the case."); Kirkpatrick v. J.C. Bradford & Co, 827 F.2d 718, 721 (11th Cir. 1987)

(existence of arbitration agreement was an individual question that dominated over common questions).

Generally, class procedures interfere with "with fundamental attributes of arbitration and thus create a scheme inconsistent with the [Federal Arbitration Act]." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011).  And, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration . . . ."  KPMG LLP v. Cocchi, 565 U.S. 18 (2011) (emphasis in original) (quoting Dean Witter Reynolds, Inc., v. Byrd, 470 U.S. 213, 218 (1985)).  Inviting individuals with agreements to arbitrate all disputes with APM Club to join this action would be a direct contravention of the FAA.  In addition, this Court recently recognized the enforceability of class action waiver, even outside the context of arbitration agreements.  Korea Week, Inc., v. Got Capital, LLC, 2016 WL 3049490, at *8-10 (E.D. Pa. May 27, 2016).

Because there exists no person who performed at APM Club currently before the court, it has no opportunity to compel arbitration.  Nevertheless, because Herzfeld is not similarly situated with such individuals, inviting those individual to join the action would violate the FAA, and because inviting those individuals to join the suit would be futile, class and collective certification should be denied in full as to APM Club.

III.   **CLASS AND COLLECTIVE CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFF HAS FAILED TO PRESENT EVIDENCE THAT OTHER ENTERTAINERS WISH TO JOIN HER CAUSE.**

Plaintiff's statement of "I guess" [**Ex. 3**, Herzfeld Dep., pp. 55:23-56:1] when asked if she wanted to represent her "co-workers" has been met with even less fervor by the individuals she

seeks to represent.  Since the filing of this lawsuit almost three years ago, no other entertainer has sought to join the lawsuit.  Because Plaintiff has not raised the possibility that others want to join this suit above the speculative level, class and collective action should be denied.

At the first step of the collective action certification process, even though the standard for issuing notice is a "fairly lenient standard," plaintiff must still make a "modest factual showing" that there exists similarly situated individuals.  Camesi v. University of Pittsburgh Medical Center, 729 F.3d 239, 243 (3d Cir. 2013) (quoting Zavala v. Wal-Mart Stores, Inc., 691, F.3d 527, 535)) Here, plaintiff has failed to demonstrate that there exists other individuals interested in challenging their non-employee status, so certification should be denied.  Numerous Courts have found that:

> . . . before a conditional-certification motion may be granted, a named plaintiff (or plaintiffs) must proffer some evidence that other similarly situated individuals desire to opt in to the litigation. In the absence of such evidence, there would be no basis upon which the Court could conclude that the action was an "appropriate case" for collective-action treatment. As one court has stated, "[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants." Simmons v. T-Mobile USA, Inc., No. H-06-1820, 2007 WL 210008, at *9 (S.D.Tex. Jan.24, 2007).

Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1164–65 (D. Minn. 2007).  *See also*, Id. at 1166 (collecting cases); *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983).

Collins v. Barney's Barn, Inc., 2013 WL 16688984, at*1 (E.D. Ark. April 17, 2013) involved exotic dancers who claimed they were misclassified and not paid wages.  In considering Plaintiff's motion for conditional certification under 29 U.S.C. § 216(b), the court reasoned:

> Viewing the claims of the Dancer Plaintiffs in isolation, the Court finds that they have demonstrated that they and other similarly-situated dancers were victims of a common policy that violated the FLSA. However, conditional certification will be denied at this time because the Dancer Plaintiffs have failed to demonstrate the existence of similarly-situated employees who desire to join this lawsuit. "*The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself* [to warrant the

creation of a collective action].” <u>Guerra v. Big Johnson Concrete Pumping, Inc.</u>, No. 2:05CV14237, 2006 WL 2290512, *10 (S.D.Fla. May 17, 2006). This ruling does not preclude the Dancer Plaintiffs from seeking conditional certification based on supplemental evidence that other similarly-situated individuals have an interest in joining a collective action.

<u>Id.</u> at *5 (emphasis added).

Other courts have recognized that the decision of whether exotic dancers wish to force their venues into treating them as employee is not a straightforward as their counsel might suggest.

It is unclear from the record as to whether there are dancers who are members of the proposed status class that share the plaintiff's view in the instant case regarding their relationship with defendants. As stated, some dancers may wish to be considered employees and receive FLSA protections. Others, however, may be neutral on this issue. As a result, since the record fails to reflect whether intervening-defendants seek to present a claim about which members of the status class have conflicting interests, this court agrees with Judge Pallmeyer's conclusion that the court “cannot say that Ms. Erwin and Ms. Senter are pursuing defenses that are typical of all potential class members and, without more information regarding the dancers positions, cannot recommend certification of a class with Ms. Erwin and Ms. Senter as the named representatives.” Hence, the motion for class certification is denied. However, the denial of the motion for class certification is without prejudice. If, within twenty-one days of the entry of this order, intervening-defendants can—consistent with their obligations under Fed.R.Civ.P. 11—cure the defects of the instant motion, this court will consider anew their motion for class certification and allow the parties to submit further briefs to the court on this issue. If, however, intervening-defendants are unable to do so, the denial of their motion for class certification will be deemed with prejudice.

<u>Reich v. ABC/York-Estes Corp.</u>, No. 91 C 6265, 1997 WL 321699, at *8 (N.D. Ill. June 6, 1997).

The Selection Document presented to entertainers seeking to perform at APM Club sets for the competing interests.  [*See* Ex. A to **Ex. 1**].  Where entertainers are not classified as employees, venues must the careful not to exercise substantial impermissible control over the entertainers.  [**Ex. 1**, Weithoner Dec., ¶ 15].  However, with entertainers classified as employees, their employer would be free to control their appearance, tell them who to dance for, tell them how

to dance.  The venue would be forced to report all Entertainment Fees[2] and tips to the IRS and the

Plaintiffs would be unable to deduct the same business expenses.  Such a business's margins would

be lower and everyone would make less money, including the entertainers.  The employee model

is no panacea for entertainers.   The fact that no entertainer seeking to perform at APM club has

even elected to perform under employee status shows just that.  [Id. at ¶ 12].

In terms of Rule 23(a)(1), this issue goes to numerosity.  A class is not so large that joinder

is impractical if no one is interested in participating in the class.  Feeko v. Pfizer, Inc., 2013 WL

782002, at *5 (E.D. Pa. Feb. 28, 2013).  Because the evidence perform the court does not present

even a modest showing that others are interested in joining or that joinder is impractical, class and

collective certification should be denied in full.

## IV.    CLASS    CERTIFICATION    IS    NOT    APPROPRIATE    BECAUSE INDIVIDUALIZED QUESTIONS PREDOMINATE.

Plaintiff has not demonstrated that common questions predominate in this case for purposes

of Rule 23(b)(3).  *See generally* Neale, 794 F.3d at 370.  Proof that common questions predominate

is a "rigorous analysis."  Comcast Corp. v. Behrend, ---U.S.---, 133 S.Ct. 1426, 1432 (2013).

> Accordingly, a court must examine the elements of a plaintiff's claims "through the
> prism" of Rule 23. In Re: Hydrogen Peroxide Antitrust Litigation, 552 F.3d at 310.
> In order to obtain class certification, a plaintiff "must demonstrate that each
> essential element of his claim is capable of proof at trial through evidence that is
> common to the class rather than individual to its members." Malack v. EDO
> Seidman, LLP, 617 F.3d 743, 746 n. 5 (3d Cir.2010). If proof of an essential
> element of the cause of action requires "individual treatment," then class
> certification is "unsuitable." In Re: Hydrogen Peroxide Antitrust Litigation, 552
> F.3d at 311.

---

[2]       Under the Internal Revenue Code, there is no question that any mandatory charge for a
service is subject to withholdings before it is distributed to the employee.  Rev. Rul. 2012-18 (June
25, 2012).  Employees must also report tips to their employer, and appropriate withholdings are
deducted from hourly waged.  Id.  This is why many bartenders and other highly tipped employees
receive $0 paychecks.

Verma v. 3001 Castor, Inc., No. 13-cv-3034, 2014 WL 2957453, at *14 (E.D. Pa. June 30, 2014)

Here, Plaintiff's provide minimal factual evidence, instead relying upon pejorative and inaccurate descriptions of Defendants' documents. This does not meet the rigorous analysis standard for class certification on the threshold issue of whether Herzfeld and the putative class are employees for purposes of the FLSA, PMWA, or WPCL.

> There is no single test to determine whether a person is an employee or an independent contractor for purposes of the FLSA. The statutory definitions regarding employment status are necessarily broad to effectuate the remedial purposes of the Act. *See United States v. Rosenwasser,* 323 U.S. 360, 363, 65 S.Ct. 295, 296–97, 89 L.Ed. 301 (1945); *Donovan v. American Airlines, Inc.,* 686 F.2d 267, 271 (5th Cir.1982). The Act defines an employee as "any individual employed by an employer," 29 U.S.C. § 203(e)(1) (1988), and an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee...." *Id.* § 203(d). In accordance with these expansive definitions, the Supreme Court has emphasized that the courts should look to the economic realities of the relationship in determining employee status under the FLSA. Rutherford Food Corp. v. McComb, 331 U.S. 722, 730, 67 S.Ct. 1473, 1477, 91 L.Ed. 1772 (1947).

> It is a well-established principle that the determination of the employment relationship does not depend on isolated factors but rather upon the "circumstances of the whole activity." *Id.* Courts have developed several criteria to assist them in determining the existence of an employment relationship under the Act. Although neither the presence nor the absence of any particular factor is dispositive, we have held that there are six factors to determine whether a worker is an "employee":

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

> Donovan v. DialAmerica Marketing, Inc., 757 F.2d 1376, 1382 (3d Cir.), *cert. denied,* 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985). *See also* Donovan v. Sureway Cleaners, 656 F.2d 1368, 1370 (9th Cir.1981); Real v. Driscoll Strawberry Associates Inc., 603 F.2d 748, 754 (9th Cir.1979). Not only should courts examine the "circumstances of the whole activity," they should "consider whether, as a matter of economic reality, the individuals 'are dependent upon the business to which they render service.' " DialAmerica, 757 F.2d at 1382 (quoting Sureway Cleaners, 656 F.2d at 1370). *See also* Bartels v. Birmingham, 332 U.S. 126, 130,

67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947); Usery v. Pilgrim Equipment Co., 527 F.2d 1308, 1311 (5th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976); Mednick v. Albert Enterprises, Inc., 508 F.2d 297, 299 (5th Cir.1975). Martin v. Selker Bros., 949 F.2d 1286, 1293 (3d Cir. 1991).

On the facts presented, the Court cannot conclude that common questions prevail on the individual factors of the above "economic realities test," let alone the final touchstone question of whether the individuals "are dependent upon the business to which they render service." In reality, "the economic reality with regard to each dancer necessarily depend on the circumstances of the individual dancer, evidence that is not in this record." State ex rl. Roberts v. Acropolis McLoughlin, Inc., 945 P.2d 647, 654 (Or. App. 1997) (affirming finding that entertainers were not employees). Courts come to varying conclusion as to whether a particular title of worker is an employee or not, even within the same court. *See* Carrell v. Sunland Const. Inc., 998 F.2d 330, 334 (5th Cir. 1993) (emphasis added) (welders determined to be independent contractors; distinguishing Robicheaux, v. Radcliff Material, Inc., 697 F.2d 662, 667 (5th Cir. 1983) (welders found to be FLSA employees)). Courts have found the entertainers are not employees under the FLSA. Matson v. 7455, Inc., 2000 WL 1132110 at *6 (D.Or. Jan 14, 2000) (exotic dancer determined to be independent contractor); Hillborn v. Prime Time Club, Inc., No. 4:11-cv-00197, 2012 WL 9187581 (E.D. Ark. July 12, 2012).

The Weithoner Declaration attached hereto demonstrates that the individual circumstances vary on numerous factors under the "economic realities test." (**Ex. 1**, at ¶¶ 18 (a)-(b) (permanence and control.), (c)-(d) (opportunity for profit/loss), (e) (investment), (f) (permanence), (g) (opportunity for profit/loss). In addition, Plaintiff offers no evidence of control contrary to the freedoms provided by the Lease at APM Club. [*See* Id. at ¶ 16]. Unlike Verma v. 3001 Castor, Inc., No. CV 13-3034, 2016 WL 6962522, at *1 (E.D. Pa. Nov. 29, 2016), summary judgment has

not been granted at the time class certification is sought.  And, the Court lacks the evidence necessary to balance all of the economic realities as the <u>Verma</u> court did in its summary judgment decision.  2014 WL 2957453, at *5-10.  In addition, Plaintiff's class definition would include "feature entertainers" who performed at defendants, even though Defendants do not understand Plaintiff to be claiming that these headliners are employees.  [*See* Exhibits D & E to **Ex. 1**, Weithoner Dec.].  Yet, the circumstances of the form contracts provided by these features differs only in degree from the circumstances of other entertainers.  [<u>Id.</u>].

Because Plaintiff has failed to demonstrate that common issues prevail on the threshold issue of predominance, Rule 23(b)(3) is not met and certification should be denied.

## V.    CLASS CERTIFICATION IS IMPROPER BECAUSE INDIVIDUALIZED DAMAGES QUESTIONS PREDOMINATE

For the same reasons stated by the <u>Verma</u> court as to claims of the plaintiffs there for stage rental fees, fines, and room rental fees, certification should be denied under Rule 23(b)(3) for all Plaintiffs claims against 1416 Chancellor.  2016 WL 6962522, at *8-11.  Quite simply, prior to the present suit being filed, 1416 Chancellor was not in the practice of maintaining records of entertainer's performances, so none are available.  Calculations for plaintiff's claims for minimum wages, rental fees, tip-outs, and private dance fees cannot come from records for this period.  Instead, calculation of such damages will require and individualized inquiry into the performance dates and actives of each individual dancer.   This monumental individualized inquiry will predominate over any individual questions of law.

## **CONCLUSION**

WHEREFORE, for the forgoing reasons, Defendants respectfully request that this honorable court deny Plaintiff's Motions in full.

Respectfully Submitted,

Dated: May 26, 2017                    /s/ Matthew J. Hoffer

Matthew J. Hoffer*
SHAFER & ASSOCIATES, P.C.
3800 Capital City Boulevard, Suite 2
Lansing, Michigan  48906
517-886-6560
Matt@BradShaferLaw.com
*Admitted Pro Hac Vice*
*Attorney for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of May, 2017, I filed the foregoing document with the

Clerk of the Court via the Court's CM/ECF system, thereby causing service by operation of the

CM/ECF system upon all counsel of record, including:

Gary F. Lynch, Esq.
Jamisen Etzel, Esq.
CARLSON LYNCH SWEET KIPELA & CARPENTER, LLP
1133 Penn Ave., 5th Floor
Pittsburgh, PA  15222
412-322-9243
glynch@carlsonlynch.com
jetzel@carlsonlynch.com


_____ */s/ Matthew J. Hoffer* _____
SHAFER & ASSOCIATES, P.C.

21