## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JESSICA HERZFELD, on behalf of** | **:  CIVIL ACTION** |
| **herself and all others similarly situated** | : |
| | : |
| **v.** | : |
| | :  **NO. 14-4966** |
| **1416 CHANCELLOR, INC. d/b/a THE** | : |
| **GOLD CLUB, and DOES 1 through 10,** | : |
| **inclusive and THE APM CLUB, INC.** | : |
| **d/b/a THE GOLD CLUB** | : |

## MEMORANDUM

**KEARNEY, J.**                                                           **June 9, 2017**

Persons suing their former Pennsylvania employer for misclassifying them as independent contractors or failing to pay lawful wages can, if supported by well plead facts, also sue entities who bought and now manage their former employer to collect a judgment because Pennsylvania Law allows the jury to evaluate liability of the new owner as a continuation of the original employer.    This judgment creditor theory of successor entity liability may impose obligations upon new owners of companies for conduct engaged in by their predecessor. As the person can sue her former employer for wages, she can also possibly represent others like her who worked for the same employer, even when it now has a new owner.    Today, we address a former worker's attempt to not only represent persons who, like her, worked for the same employer, but also those who only worked for the successor employer.    While she has standing to represent persons similar to her to pursue claims for wages arising from conduct by her employer, she lacks standing to represent persons who never worked for her employer. In the accompanying Order, we grant her motion for conditional and class certification against her

employer for conduct occurring while her employer owned the business but deny her motion to represent persons who, unlike her, worked only for the new owner.

**I.    Facts**

Jessica Herzfeld worked as an exotic dancer for 1416 Chancellor, Inc. as the owner of the gentleman's exotic dance nightclub known as The Gold Club from 2006 until April 2014. 1416 Chancellor hired dancers as independent contractors. The dancers paid a fee to lease the stage from 1416 Chancellor. 1416 Chancellor did not pay wages to the dancers as employees. Ms. Herzfeld alleges 1416 Chancellor improperly classified her and fellow dancers as independent contractors and by doing so, failed to pay minimum wage, failed to pay overtime, and improperly took a portion of their tips.

**A.    Facts supporting Ms. Herzfeld's class and collective allegations.**

Under uniform regulations, Ms. Herzfeld paid 1416 Chancellor a rental fee to perform during her shifts and paid the required tips to the "house mom" and disc jockey. Ms. Herzfeld also performed private dances for patrons at a price set by 1416 Chancellor and remitted a portion of private dance fee to 1416 Chancellor.

Ms. Herzfeld alleges 1416 Chancellor treated all dancers the same. The club managers would audition new dancers and decide whether they are "going to hire her or not."[1]  Before 1416 Chancellor allowed the dancer to perform for the first time, she had to sign four agreements, including a lease agreement to use the stage and "Entertainer's Rules, Regulations, and Proper Conduct."[2]

Dancers submitted their desired monthly shifts to 1416 Chancellor at the start of each month. A dancer paid 1416 Chancellor a rental fee to perform during her shift based on the time and day of the week they performed.[3]  1416 Chancellor required dancers to perform on stage

2

during their shift and the disc jockey decided and announced when the dancers needed to perform on stage.[4] Under the lease agreement, if a dancer did not show up for her scheduled shift, 1416 Chancellor could charge her a no show fee but did not always enforce this policy.[5] 1416 Chancellor also required dancers to tip the disc jockey and house moms during their shift and pay an administrative fee during their shift (reduced for on time arrival).[6]

Dancers could also give private dances to patrons during their shifts. 1416 Chancellor dictated "couch dances" are limited to 4 minutes and the dancer charges $20 if they are performed in the Main Room and $30 if they are performed in the VIP Room.[7] The dancer must pay a portion of her private dance fees ($5 for Main Room dances and $10 for VIP) to 1416 Chancellor.[8] 1416 Chancellor limits a dancer to performing three private dances in a row and a dancer must inform the floor host or manager before using the Couch or VIP room.[9] A dancer could also perform in champagne courts which cost patrons $150 or $300 and 1416 Chancellor received $50 or $100 from the dancer.[10] 1416 Chancellor kept track of the dancer's private dances during their shifts.[11]

On August 26, 2014, Ms. Herzfeld originally sued 1416 Chancellor under the Fair Labor Standards Act claiming it improperly classified her and other dancers as independent contractors. We denied 1416 Chancellor's motion to compel arbitration and 1416 Chancellor appealed.

**B.      Facts regarding the Gold Club's ownership.**

While our court of appeals reviewed our denial of arbitration, 1416 Chancellor signed an Agreement of Sale of Liquor License and Assets Only through which APM Club, Inc. purchased 1416 Chancellor's liquor license, furniture, fixtures, and equipment, and goodwill for $110,000.[12] Aware of this lawsuit, APM Club, Inc. agreed not to assume liability for Ms. Herzfeld's filed class action and collective action case against 1416 Chancellor.[13] The Liquor

3

Control Board of the Commonwealth of Pennsylvania approved the transfer of the liquor license on January 25, 2016.[14]

On remand after our court of appeals affirmed our holding on non-arbitrability, Ms. Herzfeld added APM Club as a Defendant claiming the broadly defined "Gold Club" (whether owned by 1416 Chancellor or APM Club) failed to pay her and other dancers the federal minimum wage for hours work and failed to pay overtime. Ms. Herzfeld also claims the Gold Club (whether owned by 1416 Chancellor or APM Club): (1) violated Pennsylvania's Minimum Wage Act by improperly classifying her as an independent contractor failing to pay minimum wage and overtime; (2) violated Pennsylvania's Wage Payment and Collection Law by taking her tips to cover its business expenses; and, (3) is unjustly enriched by her tips paid to the Gold Club and her working promotional events without being paid.

Ms. Herzfeld seeks to certify a collective under the Fair Labor Standards Act for all dancers employed by either 1416 Chancellor or APM Club from August 26, 2011 until present. Ms. Herzfeld also seeks to certify a class for her Pennsylvania claims for all dancers employed by either 1416 Chancellor or the APM Club from August 26, 2011 until present.

## II.    Ms. Herzfeld's collective action.

The Fair Labor Standards Act allows Ms. Herzfeld to pursue a representative action for herself and other employees under 29 U.S.C. § 216(b) if (1) the employees are all similarly situated; and, (2) each collective member individually consents with the court to join the action.[15]

Ms. Herzfeld did not rent space to dance at the Gold Club during APM Club's ownership. Ms. Herzfeld, however, seeks to hold APM Club liable for her claims against 1416 Chancellor through successor liability. In her collective, Ms. Herzfeld also seeks to include dancers who were employees of 1416 Chancellor and employees of APM Club. In Section A, we address Ms.

4

Herzfeld's collective action against 1416 Chancellor for dancers employed from August 26, 2011 until the January 24, 2016 takeover by APM Club[16], and we will then address Ms. Herzfeld's assertion of successor liability against APM Club for this collective action. In Section B, we address Ms. Herzfeld's collective action against APM Club directly for dancers who worked for APM Club on and after the January 25, 2016.

### A. Ms. Herzfeld may proceed in a collective action for conduct on or before January 24, 2016.

#### 1. Ms. Herzfeld makes a modest factual showing 1416 Chancellor treated dancers as employees.

Ms. Herzfeld seeks conditional certification under the Fair Labor Standards Act of a collective of all dancers who worked at the Gold Club from August 26, 2011 until January 24, 2016 alleging 1416 Chancellor improperly classified the dancers as independent contractors.

Our court of appeals directs a two-tier approach in certifying a collective action.[17] In the first tier, we require a "modest factual showing," where Ms. Herzfeld "must product some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees."[18] We apply a lenient standard because "conditional certification is not really a certification, but is rather [an] exercise of [our] discretionary power to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under the [Act]."[19]

Ms. Herzfeld alleges 1416 Chancellor applied the same policies to her and fellow dancers and misclassified her and other dancers as independent contractors. Ms. Herzfeld produced evidence 1416 Chancellor operated one location entitled the Gold Club in Philadelphia. Ms. Herzfeld produced evidence 1416 Chancellor classified all dancers as independent contractors

and used the same lease agreement, same regulations, and same fee and tip requirements for the dancers. Ms. Herzfeld "presents a modest factual showing" because she and the other dancers "(a) work or worked at the same location; (b) share the same "dancer" job duties and responsibilities; and (c) have been classified as independent contractors."[20] We conditionally certify a collective of dancers who danced at the Gold Club between August 26, 2011 and the January 24, 2016 for purposes of notice.

## 2. Ms. Herzfeld alleges successor liability against APM Club, Inc.

Ms. Herzfeld alleges APM Club is liable for her and the collective's claims from August 26, 2011 until January 24, 2016 because APM Club is the successor of 1416 Chancellor. Our court of appeals adopts the federal common law standard for Fair Labor Standard Act successor liability which is a "lower bar to relief than most state jurisprudence."[21] The court of appeals endorsed the Court of Appeals for the Seventh Circuit's reasoning a lower bar to relief is necessary for successor liability because "a violator of the Act could escape liability, or at least make relief much more difficult to obtain, by selling its assets without an assumption of liabilities by the buyer (for such an assumption would reduce the purchase price by imposing a cost on the buyer) and then dissolving."[22]

When reviewing APM Club's successor liability, we consider "(1) continuity in operations and work force of the successor and predecessor employers; (2) notice to the successor-employer of its predecessor's legal obligation; and, (3) ability of the predecessor to provide adequate relief directly."[23] A magistrate judge in Rhode Island denied a subsequent buyer's motion to dismiss because the less strict federal common law standard of successor liability allowed the workers to pursue Fair Labor Standards Act claims against the subsequent buyer for the wrongful conduct of the former owner.[24] In *Guarcas*, restaurant workers sued their

6

restaurant employer for failure to pay minimum wage in February 2015.[25] The workers worked at Gourmet Heaven's two locations and both locations were owned by Chung Cho.[26] Two months after the workers filed their complaint against Gourmet Heaven and Cho, Cho and his buyer Dae Hyun Yoo began the process of transferring Gourmet Heaven's ownership and on May 20, 2015, Cho sold Yoo the Gourmet Heaven location with all merchandise, equipment, trade name, and telephone number for $500,000.[27] Yoo closed the sale on September 30, 2015 and renamed the restaurant Serendipity Gourmet but "the store continues to operate at the same address, with many of the same employees, selling the same products, with a sign using the same font and colors..."[28] The court reiterated the workers' litigation against Cho was pending throughout the entire sale process.

The court considered Yoo/Serendipity Gourmet a *bona fide* successor because Yoo operated with the previous owner's merchandise and equipment, used the same signage, at the same address doing the same business with many of the same employees.[29] The court found Yoo had constructive notice of the worker' claims because the claims were filed on a public docket and also Gourmet Heaven/Cho's business practices were the subject of other litigation and news coverage.[30] The court found Cho/Gourmet Heaven is unlikely to provide adequate relief because Cho filed for personal bankruptcy and his corporations and limited liability companies were now defunct.[31] The workers satisfied the three factors of federal common law successor liability and the court denied Yoo/Serendipity Gourmet's motion to dismiss.

Ms. Herzfeld's allegations satisfy the federal common law standard for APM Club's successor liability. Ms. Herzfeld adduced evidence 1416 Chancellor sold APM Club the building, the trade name "Gold Club," and all equipment and inventory. Under APM Club's ownership, the Gold Club operates a dance club at the same location, under the same name, and

7

with many of the same managers and dancers. Ms. Herzfeld satisfies the *bona fide* successor prong because, as in *Guarcas*, the APM Club kept the same business model, same employees, purchased the merchandise and inventory of the business, and purchased the trade name.[32] The case for *bona fide* successor is stronger than in *Guarcas* because APM Club also kept using the Gold Club name, unlike *Guarcas*, where the court found successor liability even where the new owner changed the business' name.

APM Club had notice of 1416 Chancellor's legal obligations because APM Club carved out the assumption of liability for Ms. Herzfeld's claims by this docket number in the sale agreement. The final prong, the inability to obtain adequate relief from 1416 Chancellor, is also satisfied. Counsel for 1416 Chancellor moved to withdraw because the sole shareholder of 1416 Chancellor passed away and 1416 Chancellor is insolvent and has no assets.[33]

At the conditional certification stage, Ms. Herzfeld's allegations satisfy the federal common law standard for successor liability to allow her to pursue a collective action for claims from August 26, 2011 until January 24, 2016 against 1416 Chancellor to also go forward against APM Club.

## B. Ms. Herzfeld may not proceed in a collective action for conduct on or after January 25, 2016.

Ms. Herzfeld requests we also conditionally certify a collective action against the APM Club from January 25, 2016 until present for improperly classifying dancers as independent contractors and failing to pay minimum wage and overtime. Ms. Herzfeld never danced at the Gold Club when APM Club owned it. Ms. Herzfeld cannot bring a collective action against APM Club because she cannot demonstrate an alleged policy of APM Club affected her to establish standing. And because APM Club's alleged policies did not affect Ms. Herzfeld, she

8

cannot "demonstrate a factual nexus between the manner in which the employer's alleged policy affected [] her and the matter in which it affected the proposed collective action members."[34]

Standing is a core requirement for a federal lawsuit. "In order to invoke federal-court jurisdiction, [Ms. Herzfeld] must demonstrate that [she] possesses a legally cognizable interest, or "'personal stake,'" in the outcome of the action."[35] Ms. Herzfeld must allege an "injury in fact", a "casual connection between the injury and the conduct complained of", and the likelihood her injury "will be redressed by a favorable decision."[36]

Ms. Herzfeld cannot allege a "causal connection" between her "injury in fact" of being misclassified as an independent contractor and APM Club's conduct because APM Club never classified Ms. Herzfeld as anything. While Ms. Herzfeld and other dancers may recover from APM Club under successor liability, their recovery is for injuries caused by 1416 Chancellor's conduct.

The Fair Labor Standards Act allows Ms. Herzfeld to bring an action "in behalf of [her]self or themselves and other employees similarly situated."[37] The Supreme Court held an employee must have standing, a "personal stake", in the collective action to maintain it under the Act.[38] In *Genesis*, an employee brought a collective action against her employer for automatically deducting a thirty minute lunch break even if the employee did work during his or her lunch break.[39] The employer made a Rule 68 offer of judgment which fully mooted the employee's individual claim and no other employees had opted-in to the collective.[40] The Supreme Court held the employee's "suit became moot when her individual claim became moot, because she lacked any personal interest in representing others in this action."[41]

The Court's *Genesis* holding is not directly on point because Ms. Herzfeld's claims are not mooted by full financial compensation; however, the Court's holding affirms Ms. Herzfeld

9

must have a live controversy with the employer to maintain a collective action on behalf of other employees. Ms. Herzfeld cannot have a live controversy with an employer she has never worked for, no matter how similar APM Club treats its new employees to how 1416 Chancellor treated Ms. Herzfeld. Wage claims against APM Club which are not based on a successor liability theory require a representative plaintiff who worked for APM Club.

Ms. Herzfeld's arguments to the contrary blur the distinction between Ms. Herzfeld's ability to sue APM Club through successor liability and her ability to sue APM Club directly. Ms. Herzfeld argues "[i]n terms of the Article III standing requirements, there is no conceptual difference between a "direct" claim and one that depends on successor liability....[i]f it were the case that reliance on a successor liability theory deprived a plaintiff of standing, there would never be a circumstance in which a plaintiff could recover against a successor corporation and there would be no need for successor liability law."[42] Ms. Herzfeld cites no cases to support her alarmist argument because it lacks merit.

Ms. Herzfeld is only able to proceed against APM Club on the theory of successor liability because she has direct claims and standing to sue 1416 Chancellor. Put another way, if 1416 Chancellor never personally injured Ms. Herzfeld, she could not sue APM Club because she reaches APM Club through injuries caused by 1416 Chancellor. Ms. Herzfeld cannot represent dancers in their direct claims against APM Club from the January 25, 2016 until present because she lacks a direct personal injury caused by APM Club. Ms. Herzfeld's injuries caused by 1416 Chancellor do not count once APM Club took over the Gold Club. The dancers for APM Club after January 25, 2016 need a representative who suffered a direct personal injury caused by APM Club's conduct. Article III bars Ms. Herzfeld's collective action claims against APM Club for conduct on or after January 25, 2016 because she lacks standing.

**III.    Ms. Herzfeld may proceed on class action claims for conduct before January 25, 2016.**

Ms. Herzfeld seeks to certify a class for her Pennsylvania state law claims. Ms. Herzfeld alleges 1416 Chancellor violated Pennsylvania's Minimum Wage Act by improperly classifying her as an independent contractor and Pennsylvania's Wage Payment and Collection Law by taking her tips to cover its business expenses. Ms. Herzfeld also alleges 1416 Chancellor was unjustly enriched by taking her tips and forcing her to work promotional events without pay. In Section A, we address Ms. Herzfeld's class action against 1416 Chancellor for dancers employed from August 26, 2011 until January 24, 2016, and we will then address Ms. Herzfeld's assertion of successor liability against APM Club. In Section B, we address Ms. Herzfeld's class action against APM Club directly for dancers who worked for APM Club on or after January 25, 2016 and her alternative request for more time to find a suitable class representative.

When reviewing class certification, we identify the "common interests" of the class members and evaluate Ms. Herzfeld's and her counsels' "ability to fairly and adequately protect class interests" under Fed. R. Civ. P. 23.[43]  Rule 23(a) requires: (1) numerosity: meaning the class "must be so numerous that joinder of all members is impracticable"; (2) commonality: meaning there are "questions of law or fact common to the class"; (3) typicality: meaning the "claims or defenses of the representative parties" must be "typical of the claims or defenses of the class"; and, (4) adequacy of representation: meaning the named plaintiff and counsel will "fairly and adequately protect the interests of the class."[44]  We then turn to Rule 23(b)(3) which requires "(1) common questions of law or fact predominate (predominance); and, (2) the class action is the superior method for adjudication (superiority)."[45]

11

**A.    We certify a class for the Pennsylvania claims occurring on or before January 24, 2016 against both Defendants.**

We reviewed the post-discovery detailed record and, based on our findings below, determine Ms. Herzfeld establishes the propriety of certifying a class of dancers with Pennsylvania state law claims for conduct on or before January 24, 2016 by a preponderance of the evidence.[46]

### 1.    Ms. Herzfeld satisfies the Rule 23(a) requirements.

#### *The Class satisfies the numerosity requirement.*

Our court of appeals instructs "[n]o minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."[47]    1416 Chancellor's corporate designee estimated from June 2011and April 2015 "a couple hundred" dancers signed the 1416 Chancellor's lease agreement and became independent contractors.[48] This rough estimate suggests the class exceeds 40 members and we find the class meets the numerosity requirement of Rule 23(a).

#### *The Class satisfies the commonality requirement.*

"The commonality requirement [is] satisfied if [Ms. Herzfeld] shares at least one question of fact or law with the grievances of the prospective class."[49]    1416 Chancellor hired Ms. Herzfeld and its other dancers as independent contractors and used the same fee structure, dance fees, and tip-out policies for all class members.    Ms. Herzfeld alleges 1416 Chancellor misclassified her and each class member in the same manner.    The proposed class shares common legal questions because Ms. Herzfeld alleges 1416 Chancellor violated the Pennsylvania Minimum Wage Act, Pennsylvania Wage Payment and Collection Act, and was unjustly enriched with the same legal theories applied to all dancers in the class.

12

The commonality requirement is satisfied because 1416 Chancellor used standardized lease agreements, fee policies, and regulations to classify dancers as independent contracts and standardized requirements for dancers' tip-out to other employers evidencing dancers sharing common factual allegations and legal theories for recovery.

### *The Class satisfies the typicality requirement.*

The typicality requirement "focuses on whether the individual claim of the class representative has the essential characteristic common to the claims of the class."[50]   Ms. Herzfeld's claim is typical of the class because all class members were misclassified as independent contractors like Ms. Herzfeld. We also find 1416 Chancellor used the same fee policies and tip-out requirements for Ms. Herzfeld and 1416 Chancellor did not pay minimum wage or overtime to Ms. Herzfeld or any other dancer. Typicality also applies to 1416 Chancellor's defenses; it raises the same defense of proper classification as independent contractor for Ms. Herzfeld and the class members. Rule 23(a)'s typicality requirement is satisfied.

### *The Class is adequately represented.*

Rule 23(a)'s adequacy of representation requires: (1) "'plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation;' and, (2) 'the plaintiff must not have interests antagonistic to those of the class.'"[51]

Attorneys Jamisen A. Etzel and Gary F. Lynch and their firm Carlson Lynch Sweet Kilpela & Carpenter, LLP are qualified, experienced, and able to conduct this litigation. We reviewed Carlson Lynch's firm resume and find counsel and their firm have extensive experience in wage payment actions. Judge Brody recently found counsel and their firm

provided adequate representation when certifying a class of misclassified exotic dancers using the same legal theories as Ms. Herzfeld.[52]

Ms. Herzfeld has no interest antagonistic to the Class and is adequate to represent the Class of dancers who worked at the Gold Club under 1416 Chancellor's ownership. We reviewed Ms. Herzfeld's deposition testimony and find Ms. Herzfeld shares the same factual and legal theories of recovery as the class members. We do not find, and 1416 Chancellor does not show, Ms. Herzfeld has an interest antagonistic to class.

Ms. Herzfeld adequately represents the Class and Attorneys Etzel and Lynch and their firm are adequate class counsel.

## 2. The Class satisfies Rule 23(b)(3) predominance and superiority requirements.

Rule 23(b)(3) requires "(1) common questions of law or fact predominate (predominance); and, (2) the class action is the superior method for adjudication (superiority)."[53]

### *The Class satisfies the predominance requirement.*

The predominance requirement "begins, of course, with the elements of the underlying cause of action."[54] Ms. Herzfeld's underlying cause of action is 1416 Chancellor: (1) violated Pennsylvania's Minimum Wage Act by misclassifying her as an independent contractor and failing to pay minimum wage and overtime; (2) violated Pennsylvania's Wage Payment and Collection Law by taking her tips to cover its business expenses; and, (3) was unjustly enriched by taking her tips and forcing her to work promotional events without pay.

A class may have individual questions of fact so long as "common questions '*predominate* over any questions affecting only individual [class] members.'"[55] The predominant questions of fact and law for the class relate to how 1416 Chancellor misclassified its dancers as independent contractors and impermissibly required the dancers to tip-out other employers. We

14

find predominance is satisfied because 1416 Chancellor used the same classification policy, same fee policies, and same tip-out requirements for all dancers and they share the same causes of action as Ms. Herzfeld.

### *The Class satisfies the superiority requirement.*

Rule 23(b)(3)'s superiority requirement asks Ms. Herzfeld to "demonstrate that a class action will 'achieve economies of time, effort, and expense, and promote…uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.'"[56] In *Verma*, which concerned a class of exotic dancers alleging their employer misclassified them, Judge Brody noted a class action is superior because many dancers worked at the club for a brief period of time and "for these dancers, the costs of pursuing an individual action would almost certainly outweigh any potential recovery."[57] We find a class action is the superior method for the class' claims because of the small size of some individual recoveries.

This District is a desirable place to concentrate litigation under Rule 23(b)(3)(C) because 1416 Chancellor owned and operated the Gold Club in Philadelphia, Pennsylvania. We do not find likely difficulties in managing this class action under Rule 23(b)(3)(D).

### 3.     Ms. Herzfeld pleads successor liability against APM Club.

Ms. Herzfeld alleges successor liability against APM Club for her and the class' claims against 1416 Chancellor. Ms. Herzfeld's state law claims are governed by Pennsylvania's successor liability standard, not the federal common law standard for collective actions.[58]

Under Pennsylvania law, a corporation who purchases the assets of another corporation generally "does not assume the debts and liabilities of the selling corporation."[59] Ms. Herzfeld may overcome APM Club's claim of non-liability by pleading facts showing APM Club

15

purchase of 1416 Chancellor is a "*de facto* merger."[60] A "*de facto* merger" exception applies where: (1) there is a continuation of the enterprise of [1416 Chancellor], so that there is a continuity of management, personnel, physical location, assets, and general business operations; (2) there is continuity of shareholders which results from [APM Club] paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of [1416 Chancellor] so that they become a constituent part of the purchasing corporation; (3) [1416 Chancellor] ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and, (4) [APM Club] assumes those obligations of [1416 Chancellor] ordinarily necessary for the uninterrupted continuation of normal business operations of [1416 Chancellor]."[61]

### *Continuation of enterprise.*

Ms. Herzfeld adduced evidence APM Club's ownership of the Gold Club is a continuation of enterprise from 1416 Chancellor's ownership because it remained an exotic dance club with the same trade name, same liquor license, same equipment and inventory, at the same location, and with many of the same managers and dancers. Ms. Herzfeld adequately pleads continuation of enterprise because APM Club kept the same business, same employees, purchased the merchandise and inventory of the business, and purchased the trade name.

### *Continuation of shareholders.*

Ms. Herzfeld did not plead evidence continuity of shareholders. Mr. Carmen Milica, now deceased, was the sole shareholder of 1416 Chancellor. Mr. Anthony P. Milica is the sole shareholder of APM Club. This prong of *de facto* merger is "subject to the fact-specific nature of the particular underlying corporate realities and will not always be evident from the formalities of the proximal corporate transaction."[62] The lack of continuity of shareholders may

16

not be fatal to Ms. Herzfeld's claim of successor liability because "the elements of the *de facto* merger are not a mechanically-applied checklist, but a map to guide a reviewing court to a determination that, under the facts established, for all intents and purposes, a merger has or has not occurred between two or more corporations, although not accomplished under the statutory procedure."[63]

### *Liquidation of 1416 Chancellor.*

Ms. Herzfeld pleads, and 1416 Chancellor's counsel represented in court, 1416 Chancellor ceased operations, has no assets, and the sole shareholder, Carmen Milicia, is deceased.

### *APM Club assumed 1416 Chancellor's business liabilities.*

Ms. Herzfeld alleges APM Club took over 1416 Chancellor's operation as an exotic dance club once they completed the sale. APM Club purchased 1416 Chancellor's furniture, fixtures, equipment, and liquor license and once they completed the sale, APM Club began using 1416 Chancellor's equipment, inventory, liquor license, managers, dancers, and other employees to run continuously run the Gold Club as an exotic dance club.

At this stage, we find Ms. Herzfeld pleads facts sufficient to allege 1416 Chancellor's sale of the Gold Club to APM Club is a *de facto* merger.

### B. Ms. Herzfeld does not have standing to bring a class action for conduct on or after January 25, 2016.

Ms. Herzfeld also requests we certify a class of dancers misclassified by APM Club from January 25, 2016 until present under the same Pennsylvania state law theories of recovery. In the alternative, Ms. Herzfeld requests we grant her time to find a suitable representative for the class claims against APM Club. It is undisputed Ms. Herzfeld did not dance at the Gold Club during APM Club's ownership.

17

As discussed fully in the collective action section, Ms. Herzfeld does not have standing to sue APM Club directly for her Pennsylvania Minimum Wage Law, Pennsylvania Wage Payment and Collection Law, and unjust enrichment claims. Our court of appeals recently reiterated Article III standing requirements "do not change in the class action context. "'[N]amed plaintiffs who represent a class must allege and show that **they personally have been injured**, not that injury has been suffer by other, unidentified members of the class to which they belong and which they purport to represent.'"[64] Ms. Herzfeld simply cannot point to any injury she suffered personally which APM Club caused; it is impossible to do.

Ms. Herzfeld requests, in the alternative, we defer ruling on a subclass of dancers against APM Club until "a suitable class representative is found."[65] We do not defer ruling and deny class certification for dancers who worked at the APM Club from January 25, 2016 until present. Ms. Herzfeld has been aware of her standing issues since APM Club moved to dismiss on March 7, 2017. In our March 22, 2017 Order, we allowed claims against APM Club to proceed based on Ms. Herzfeld's allegations of successor liability but dismissed Anthony P. Milicia, sole shareholder of APM Club, because he was never Ms. Herzfeld's employer so she did not have standing to sue him. Ms. Herzfeld should have been aware she lacked standing to assert direct claims against APM Club and used the intervening months to locate a proper representative with standing to sue APM Club and Anthony P. Milicia for injuries caused during their ownership of the Gold Club.

Of course, to the extent another dancer files a case based on these same theories challenging APM Club's conduct on or after January 25, 2016, we may consider the cases related.

## IV. Conclusion

We conditionally certify a collective action under the Fair Labor Standards Act of all Dancers of the Gold Club in Philadelphia, Pennsylvania at any time from August 26, 2011 until January 24, 2016 based on Ms. Herzfeld's modest factual showing she and other dancers are similarly situated. We deny certifying a collective action for conduct on or after January 25, 2016 because Ms. Herzfeld did not dance at the Gold Club during APM Club's ownership and lacks Article III standing to bring a claim because she cannot plead a personalized injury caused by APM Club's conduct.

We also certify a Class under Rule 23(b)(3) against 1416 Chancellor and the APM Club based on conduct on or before January 24, 2016, based on our finding Ms. Herzfeld alleges the Defendants: (1) violated Pennsylvania's Minimum Wage Act by improperly classifying her as an independent contractor failing to pay minimum wage and overtime; (2) violated Pennsylvania's Wage Payment and Collection Law by taking her tips to cover its business expenses; and, (3) she unjustly enriched 1416 Chancellor by remitting her tips to the Gold Club and working promotional events without pay. We deny certifying a class action for conduct on or after January 25, 2016 because Ms. Herzfeld did not dance at the Gold Club during APM Club's ownership depriving her of Article III standing to bring a claim because she cannot plead a personalized injury caused by APM Club's conduct.

---

[1] ECF Doc. No. 97-5 at 4.

[2] ECF Doc. No. 97-4 at 9-10.

[3] *Id.* at 11.

[4] *Id.* at 14-15.

[5] ECF Doc. No. 97-5 at 9.

19

[6] ECF Doc. No. 97-6 at 5.

[7] *Id.* at 6.

[8] *Id.*

[9] *Id.*

[10] ECF Doc. No. 103-3 at 4.

[11] ECF Doc. No. 97-2 at 5.

[12] *Id.* at 2.

[13] *Id.* at 10.

[14] ECF Doc. No. 103-7 at 1.

[15] *See Boyington v. Percheron Field Services, LLC*, No. 14-90, 2015 WL 3756330 at *1(W.D. Pa. June 16, 2015) (internal citations omitted).

[16] While 1416 Chancellor and APM Club signed the sale agreement for Gold Club on July 1, 2015, it appears APM Club did not begin operating until January 25, 2016 when the Pennsylvania Liquor Control Board transferred the liquor license. APM's responses to Ms. Herzfeld's interrogatories confirms the January 25, 2016 date because APM Club swears it does not maintain any records from before January 25, 2016. Unless corrected through discovery, we will use January 25, 2016 as the date APM Club began management and ownership of the Gold Club.

[17] *See Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 536 (3d Cir. 2012).

[18] *Boyington*, 2015 WL 3756330 at *1 (quoting *Zavala*, 691 F.3d at 536 n. 4 and *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011))(overruled on other grounds).

[19] *Id.* (citing *Symczyk*, 656 F.3d at 194).

[20] *Verma v. 3001 Castor, Inc.*, No. 13-3034, 2014 WL 2957453 at *12 (E.D. Pa. June 30, 2014)

[21] *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 152 (3d Cir. 2014).

[22] *Id.* at 151 (quoting *Teed v. Thomas & Betts Power Solutions*, 711 F.3d 763, 766-67 (3d Cir. 2013)).

[23] *Id.*

20

[24] *Guarcas v. Gourmet Heaven. LLC*, No. 15-56, 2016 WL 7632844 (D.R.I. Nov. 30, 2016) *report and recommendation adopted*, No. 15-56, 2017 WL 127868 (D.R.I. Jan. 3, 2017).

[25] *Id.* at 1.

[26] *Id.*

[27] *Id.* at 3.

[28] *Id.*

[29] *Id.* at 7.

[30] *Id.* at 8.

[31] *Id.*

[32] *See id.* at 2.

[33] ECF Doc. No. 62.

[34] *Halle v. West Penn Allegheny Health System Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (citing *Zavala*, 691 F.3d at 536 n. 4).

[35] *Genesis Healthcare Corp. v. Symczyk*, __U.S.__, 133 S. Ct. 1523, 1528 (2013) (internal citations omitted).

[36] *In re Horizon Healthcare Services Inc. Data Breach Litigation*, 846 F.3d 625, 633 (3d Cir. 2017)(quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

[37] 29 U.S.C. 216(b).

[38] *Genesis*, 133 S. Ct. at 1528 (2013).

[39] *Id.* at 1527.

[40] *Id.*

[41] *Id.* at 1529. *See also Moon v. Breathless, Inc.*, No. 15-06297, 2015 WL 7720490, at *3 (D.N.J. Nov. 30, 2015) (granting the exotic dance club's motion to dismiss one plaintiff's Fair Labor Standards Act claims for lack of standing because the exotic dance club submitted an affidavit swearing one of the dancer-plaintiffs never performed and dancer-plaintiff did not offer a conflicting affidavit or pleading. The dancer lacked standing because she never danced at the club and the court did not have jurisdiction over her Fair Labor Standards Act claims.)

[42] ECF Doc. No. 104 at 2.

[43] *In re Community Bank of Northern Virginia*, 622 F.3d 275, 291 (3d Cir. 2010) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F.3d 768, 799 (3d Cir. 1995)).

[44] *Id.*

[45] *Id.*

[46] *See In re Hydrogen Peroxide Antitrust Litigation*, 552 F.3d 305, 320 (3d Cir. 2008) (citing *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2nd Cir. 2008)).

[47] *Stewart v. Abraham*, 275 F.3d 220, 226 (3d Cir. 2001).

[48] ECF Doc. No. 97-4 at 4.

[49] *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 310 (3d Cir. 1998) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 56 (3rd Cir. 1985)).

[50] *In re Flat Glass Antitrust Litigation*, 191 F.R.D. 472, 479 (W.D. Pa. 1999) (internal citations omitted).

[51] *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975) (internal citations omitted).

[52] *Verma v. 3001 Castor, Inc.*, No. 13-3034, 2016 WL 6962522 at *14 (E.D. Pa. Nov. 16, 2016).

[53] *In re Community Bank*, 622 F.3d at 291.

[54] *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 370 (3d Cir. 2015) (internal citations omitted).

[55] *Id.* at 371 (quoting *Amgen Inc. v. Conn. Ret. Plans and Trust Funds,* —— U.S. ——, 133 S.Ct. 1184, 1191–92 (2013)).

[56] *Verma*, 2016 WL 6962522 at *11 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

[57] *Id.*

[58] *See Thompson*, 748 F.3d at 153. ("We must give separate consideration to Thompson's claims under the New Jersey Wage and Hour Law. Because those claims were cognizable in the District Court only by virtue of supplemental jurisdiction, they are governed by the New Jersey standard for successor liability.").

22

[59] *Morrison v. Lindsey Lawn & Garden, Inc.*, No. 13-1467, 2014 WL 831019 at *2 (E.D. Pa. March 4, 2014) (internal citations omitted).

[60] *Continental Ins. Co. v. Schneider, Inc.*, 873 A.2d 1286, 1291 (Pa. 2005) (internal citations omitted).

[61] *United States v. General Battery Corp., Inc.*, 423 F.3d 294, 305 (3d Cir. 2005) (internal citations omitted).

[62] *Fizzano Bros. Concrete Products, Inc. v, XLN, Inc.*, 42 A.3d 951, 969 (Pa. 2012).

[63] *Id.* (internal citations omitted).

[64] *In re Horizon*, 846 F.3d at 634 (3d Cir. 2017)(quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014))(emphasis added).

[65] ECF Doc. No. 104 at 4.