# Exhibit C

Class Action Settlement Agreement

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JESSICA HERZFELD, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Civil Action No.: 2:14-CV-04966-MAK ) ) Hon. Mark Kearney |
| v. | ) ) |
| 1416 CHANCELLOR, INC., f/d/b/a THE GOLD CLUB, APM Club, Inc. d/b/a/ THE GOLD CLUB, ANTHONY P. MILICIA, and DOES 1 Through 10, inclusive, | ) ) ) ) ) |
| Defendants. | ) ) |

## CLASS ACTION SETTLEMENT AGREEMENT

### TABLE OF CONTENTS

**Page**

GENERAL TERMS ............................................................................................. 7

I.      DEFINITIONS ..................................................................................... 9

II.     SETTLEMENT APPROVAL PROCEDURE ........................................ 16

III.    DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL ............... 16

IV.     SETTLEMENT AMOUNT, SCHEDULE, SECURITY, AND ALLOCATION ....... 17

V.      CLAIMS PROCEDURE ......................................................................... 23

VI.     CLAIMS ADMINISTRATOR ................................................................ 28

VII.    ATTORNEYS' FEES AND EXPENSES ................................................. 29

VIII.   RELEASES ............................................................................................ 30

IX.     NO ADMISSION OF LIABILITY ......................................................... 32

X.      DUTIES OF THE PARTIES RELATED TO FINAL COURT APPROVAL ............ 33

XI.     PARTIES' AUTHORITY ........................................................................ 33

XII.     MUTUAL FULL COOPERATION............................................................................ 33

XIII.    DATA REASONABLY ACCURATE ..................................................................... 34

XIV.    FAIR, ADEQUATE, AND REASONABLE SETTLEMENT ................................. 34

XV.     COMMUNICATIONS .......................................................................................... 35

XVI.    CONSTRUCTION ................................................................................................ 35

XVII.   CAPTIONS AND INTERPRETATIONS................................................................ 36

XVIII.  MODIFICATION.................................................................................................. 36

XIX.    INTEGRATION CLAUSE ..................................................................................... 36

XX.     BINDING ON ASSIGNS........................................................................................ 36

XXI.    COUNTERPARTS................................................................................................. 36

XXII.   APPLICABLE LAW.............................................................................................. 37

XXIII.  RETENTION OF JURISDICTION ........................................................................ 37

**CLASS ACTION SETTLEMENT AGREEMENT**

This class action settlement agreement (hereinafter, the "Settlement Agreement" or the "Agreement") is made and entered into this 31st day of January, 2018 by and between Plaintiff Jessica Herzfeld (the "Named Plaintiff"), and all Class and Collective Action Members (hereinafter defined collectively as the "Settlement Class"), on the one hand, and Defendants 1416 Chancellor, Inc., f/d/b/a Gold Club, APM Club, Inc., d/b/a Gold Club, and Anthony P. Milicia (collectively "Defendants"), on the other hand.

**WHEREAS**, the Named Plaintiff, all Class and Collective Action Members, and each Defendant are each individually a "Party" and collectively referred to as the "Parties."  Gary F. Lynch and Jamisen A. Etzel of Carlson Lynch Sweet Kilpela & Carpenter, LLP are "Class Counsel" representing the Class Representative and the Settlement Class.  Matthew J. Hoffer of Shafter & Associates, P.C. and Pasquale J. Colavita of Pasquale J. Colavita, P.C. are "Counsel for Defendants."  Class Counsel and Counsel for Defendants are collectively referred to as the "Attorneys."

**WHEREAS**, on August 26, 2014, Class Counsel filed this action in the United States District Court for the Eastern District of Pennsylvania against Defendant 1416 Chancellor, Inc. on behalf of Plaintiff Jessica Herzfeld, and others similarly situated who were allegedly employed by the owner/operator of Gold Club at 1416 Chancellor Street in Philadelphia as dancers and who were purportedly improperly classified as independent contractors (the "Class Action Litigation" or the "Litigation"). The Complaint alleged, *inter alia*, violations of the Fair Labor Standards Act (FLSA), Pennsylvania Minimum Wage Act (PMWA), Pennsylvania Wage Payment and Collection Law (WPCL) and common law, based on Gold Club's allegedly improper classification of Plaintiff as an independent contractor and claimed failure to pay minimum or overtime wages, and the imposition of improper wage deductions.

3

Plaintiff Herzfeld filed an amended complaint on January 11, 2017, adding Defendants APM Club, Inc. and Anthony P. Milicia. The Court dismissed all claims against Anthony P. Milicia and "direct claims" against APM Club, Inc. on March 22, 2017, but permitted Plaintiff to maintain a claim against APM Club, Inc. as successor in liability to 1416 Chancellor, Inc., for claims accrued between and including August 26, 2011 and January 25, 2016. Defendant 1416 Chancellor, Inc. answered the amended complaint on January 25, 2017, denying liability for all claims and asserting counterclaims against Plaintiff Herzfeld. Defendant APM Club Inc. answered the amended complaint on April 5, 2017, also denying liability and asserting counterclaims.

**WHEREAS,** on June 9, 2017, the Court certified a class action under Fed. R. Civ. P. 23 with respect to state law claims accrued by all dancers at Gold Club between and including August 26, 2011 and January 25, 2016 (hereinafter, the "State Law Class"), and conditionally certified the case as a collective action under the FLSA for the FLSA claims accrued prior to and including January 25, 2016. An approved notice was mailed on July 31, 2017 to 116 class members/putative opt-ins advising them of their right to opt in pursuant to 29 U.S.C. § 216(b) to assert their FLSA claims and to opt out of the State Law Class.

**WHEREAS**, as of the date of this Agreement, a total of six individuals filed opt-in forms (hereinafter, the "FLSA Opt-in Class"). No requests for exclusion from the State Law Class were received by Class Counsel or Analytics Consulting LLC (the firm engaged to mail and manage the notice).

**WHEREAS**, on March 9, 2017, the parties participated in a settlement conference with Magistrate Judge Heffley, but were unsuccessful at resolving the litigation.  The parties then engaged in further discovery and motions practice.

4

**WHEREAS,** the parties continued settlement discussions and on January 5, 2018, the parties reached agreement on all material terms and communicated to the Court that a proposed class settlement had been achieved.

**WHEREAS**, on January 22, 2018, a preliminary approval hearing was held before the Court during which the Court ordered that certain elements of the draft settlement agreement be modified.

**WHEREAS**, it is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all disputes and claims that Plaintiff raised in the Class Action Litigation or that she could have raised, and that are released in this Settlement Agreement.

**WHEREAS**, it is the intention of the Parties that this Settlement Agreement shall constitute a full and complete settlement and release of claims against Defendants pursuant to the terms described herein, which release includes in its effect Defendants and all Related Persons and/or entities as defined herein.

**WHEREAS**, the Parties reached an equitable settlement after substantial discovery and motion practice, and after arm's-length negotiations.  The Parties and the Attorneys believe that this Settlement Agreement provides a fair and reasonable resolution for the Parties.

**WHEREAS**, it is the intention of the Parties that this Agreement shall be binding on: (1) the Named Plaintiff and the classes she represents; and (2) Defendants and their present and former parent companies, subsidiaries, affiliated entities, shareholders, owners, officers, directors, employees, agents, attorneys, insurers, and successors and assigns, subject to the terms and conditions hereof and the approval of the Court.

**WHEREAS**, counsel for the Parties have vigorously pursued their positions and the rights of their clients for three and a half years through extended legal and factual analysis,

dispositive motions practice, an appeal to the U.S. Court of Appeals for the Third Circuit, discovery, and exchanges of information. The terms of the Settlement Agreement are based on a thorough evaluation of the evidence and the underlying case law.

**WHEREAS**, Defendants deny any liability or wrongdoing of any kind whatsoever associated with the claims alleged in Plaintiff's complaint.  Specifically, Defendants deny that Plaintiff or any Class Member was misclassified as a non-employee or that Gold Club's pay practices failed to comply with the FLSA, the PMWA, the WPCL, or any other federal or state law.

**WHEREAS**, Class Counsel represents that they have conducted a thorough investigation into the alleged facts of the Class Action Litigation and have diligently pursued an investigation of the claims asserted in the Litigation.  Based on their own independent investigation and evaluation, Class Counsel are of the opinion that the Settlement is fair, reasonable, and adequate, and in the best interest of the Settlement Class in light of all known facts and circumstances, risks, delays and uncertainties of continued litigation, the defenses asserted by Defendants, the inherent risk of dispositive motion practice, and the risk and uncertainties inherent in a trial on the merits.

**WHEREAS**, Defendants and their counsel also wish to avoid the expense, burden, diversion and risk of protracted litigation and wish to resolve this matter.

**WHEREAS**, should the Settlement Agreement not become final for any reason, nothing from the settlement process, including documents created or obtained from the settlement process and settlement administration, shall be admissible evidence in this action or used in any way contrary to Defendants' or Plaintiff's and  Class Members' interests.  Whether or not the Settlement Agreement is finally approved, neither the Settlement Agreement nor any document,

filing, statement, proceeding, or conduct related to this Agreement, nor any reports or accounts thereof, shall in any event be construed as, offered or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to any party.  However, nothing in this paragraph shall preclude the offer, admission or use of information, testimony, or evidence, otherwise properly and independently obtained through discovery in the ordinary course of litigation.

   **NOW, THEREFORE**, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

## <u>GENERAL TERMS</u>

   1.   In settlement of the Class Action Litigation, Defendants collectively shall pay a total $415,000.00 (the "Gross Settlement Amount").  Defendants shall fund the Gross Settlement Amount by paying a maximum of four installments over the course of three years; the first installment will be due 90 days after the Effective Date (defined below) and three additional installments shall be due no later than each of the next three anniversaries of the Effective Date. The first, second, and third installments shall be used for *pro rata* distribution to Class Members, incentive awards, tax payments, and payment of Claims Administrator Costs. The fourth installment shall consist solely of the approved Class Counsel attorneys' fees and expenses and any remaining Claims Administrator Costs. The payment schedule and allocation of installments towards particular payment elements is described in more detail below.

   2.   All distributions made under the terms of this Agreement shall be made from the Gross Settlement Amount, including each and every Settlement Payment (defined herein) of the Class Members; Class Counsel's attorneys' fees and litigation costs as awarded by the Court (not to exceed the figures set forth in Section VII); incentive awards to the Named Plaintiff and deponents as awarded by the Court (not to exceed a collective total of $14,000) and any other additional expenses incurred in connection with the administration of this Settlement Agreement.

3.      Class Members who are the Named Plaintiff or FLSA Opt-In Plaintiffs shall share $21,000 from the Gross Settlement Amount (the "FLSA Enhancement Fund"), to be distributed according to an allocation formula approved by the Court.

4.      All Class Members, including the Named Plaintiff and FLSA Opt-In Plaintiffs, shall partake in the share of the remainder of the Gross Settlement Amount after the FLSA Enhancement Fund, Counsel's Fees and Costs, incentive awards, and any Claims Administrator Costs have been subtracted (the "Net Claims Fund").

5.      The Net Claims Fund will be further divided into two portions. First, all Class Members will receive equal shares of 33.3%, of the Net Claims Fund (the "Equal Distribution Fund").  Second, 66.7% of the Net Claims Fund will be distributed to Claimants (defined herein) pursuant to a "claims-made" procedure, whereby each Claimant shall receive a payment based on the Claimant's proportional share of damages as determined by the Claims Administrator. This second portion is referred to as the "Proportional Distribution Fund."

6.      Each Class Member who receives and cashes a Settlement Payment shall receive an IRS Form 1099 reflecting the total amount received by the Class Member.

7.      Other than the withholding and reporting requirements herein, if any, Class Members shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Settlement.

8.      Class Counsel's fees, expenses, and costs allocated will be paid from the Gross Settlement Amount.  Any request for Class Counsel's fees shall not exceed $128,700, which is 31% of the Gross Settlement Amount; 32.1% of the Gross Settlement Amount minus the maximum anticipated attorney expenses ($15,000), and 34.3% of the Gross Settlement Amount minus the maximum anticipated attorney expenses and maximum anticipated administration

expenses (max $25,000 administration expenses; max $40,000 combined expenses).  Defendants will not object to any fee petition submitted by Class Counsel so long as the request is not in excess of 35% of the Gross Settlement Amount.

9.      Defendants expressly deny any liability or wrongdoing of any kind associated with the claims in the Class Action Litigation.  By entering into the Settlement Agreement, Defendants do not admit any liability or wrongdoing.

10.     The Parties agree to stay the Class Action Litigation until such time as the Court renders a final ruling of preliminary approval and final approval.

11.     The Parties agree to cooperate to effectuate the terms of this Agreement, to take all steps necessary and appropriate to obtain preliminary approval and final approval of this Settlement Agreement, and to dismiss the Class Action Litigation with prejudice upon final approval.

## I.      **DEFINITIONS**

12.     "Administration Costs" mean all costs associated with administering the Settlement Amount, including the fees and expenses of the Claims Administrator ("Claims Administrator Costs"), which shall be paid from the Gross Settlement Amount.

13.     A "Claim" means a properly completed and timely submitted Claim Form from a Class Member to the Claims Administrator.

14.     The "Claims Administrator" means Analytics Consulting, LLC, the entity charged with administering the Settlement Agreement, in concert with the Parties and their counsel.  The same Claims Administrator was previously used by the parties to send the notice of Rule 23 class certification.

15.     A "Claim Form" means the form, as approved by the Court, by which a Class Member may submit a Claim to the Claims Administrator.  The Form shall be mailed to the last known address of each member of the Settlement Class by the Settlement Administrator.

16.     A "Claimant" means the Named Plaintiff, any FLSA Opt-in Plaintiff, and any Class Member who submits a materially complete and timely Claim Form.

17.     The "Claim Deadline" means the date that is ninety (90) calendar days after the mailing date of the Class Notice, and shall be the last date by which any one of the following actions must occur in order for such action to be timely and effective: (a) a Class Member must submit a Claim Form in the manner specified in Section V; (b) a Class Member who wishes to be excluded from the Settlement Class must submit a Request for Exclusion in the manner specified in Section V; and (c) a Class Member who wishes to object to the Settlement must file with the Court a timely written objection to the Settlement, as such deadline for objecting may be set by the Court.

18.      "Class Counsel" refers to Gary F. Lynch and Jamisen A. Etzel of Carlson Lynch Sweet Kilpela & Carpenter, LLP.

19.     "Class Members" refers to all persons who meet one or both of the definitions of FLSA Collective or the State Law Class, as defined herein. The Claims Administrator is already in possession of a list of Class Members.  Any individuals not named on the list who make themselves known to Class Counsel or the Claims Administrator before the Claim Deadline and are subsequently determined by the Attorneys to fit within the State Law Class definition shall be deemed Class Members.

20.     The "Class Notice" refers to the document titled "Notice of Class Action Settlement and Proposed Hearing Date," to be sent to the Class Members to inform them of the terms of this Settlement Agreement and their rights and options related thereto.

21.     The "Class Period" means August 26, 2011 to January 25, 2016.

22.     The "Class Representative" or "Named Plaintiff" means Jessica Herzfeld.

23.     The "Court" refers to the United States District Court for the Eastern District of Pennsylvania.

24.      "Defendants" or "Gold Club" refers to 1416 Chancellor, Inc.; APM Club, Inc., Anthony P. Milicia, and all of their present and former parent companies, subsidiaries, affiliated entities, shareholders, owners, officers, directors, employees, agents, attorneys, insurers, successors and assigns.

25.     The "Effective Date" means the first business day after the last day of the period for appeal of the Final Judgment, or if an appeal has been filed by an objector/intervenor, the date on which the appeal is final and not subject to further or additional appeal, provided the Final Judgement is upheld and not reversed, overturned, or vacated on appeal. The Parties agree to waive all rights to appeal upon entry of Final Judgment, except that the Named Plaintiff may appeal the allocation of Class Counsel's fees and costs should the sum awarded by the Court be less than 70% of the amount(s) requested. An appeal by the Named Plaintiff of the awarded Class Counsel fees will not toll the Effective Date in the absence of an appeal by an objector/intervenor; the Effective Date would remain as the first business day after the deadline for the filing of a notice of appeal of the Final Judgment, and Defendants must fund the settlement in accordance with the schedule set forth in Section IV.  Notwithstanding the

foregoing, where the Final Judgment entered by the Court grants full relief sought by the Parties in the absence of any objection, the Effective Date shall be the date of the Final Judgment.

26.     The "Equal Distribution Fund" means 33.3% of the Net Claims Fund, defined below. All Class Members will receive an equal share of the Equal Distribution Fund, regardless of whether the Class Members submit a Claim Form.

27.     The "Final Approval Hearing" means the hearing at which the Court will finally approve the Settlement and make such other final rulings as are contemplated by this Settlement Agreement.

28.     "Final Judgment" means the order entered by the Court at the Final Approval Hearing granting final approval to this Settlement Agreement.  The Parties shall submit a Proposed Order of Preliminary Approval setting forth the terms of this Settlement Agreement, by incorporation or otherwise, for execution and entry by the Court at the time of the Preliminary Approval Hearing or at such other time as the Court deems appropriate.

29.     The "Final Settlement Class" refers to all Class Members who do not timely and validly exclude themselves from the Settlement consistent with the exclusion procedures set forth in this Settlement Agreement.

30.     The "FLSA Enhancement Fund" means $21,000 from the Gross Settlement Amount that will be paid to the FLSA Opt-in Plaintiffs in addition to claims paid from the Net Claims Fund.

31.     The "FLSA Opt-in Plaintiffs" (each an "FLSA Opt-in Plaintiff") are: Jessica Herzfeld, Jennifer Davis, Jaclyn Rayne, Keyanna Curtis, Samantha Shapley, Sandra Pereira, and Sherri Crane. "FLSA Collective" refers to this group collectively.

32.     The "Net Claims Fund" means the Gross Settlement Amount minus: (a) attorneys' fees and costs awarded by the Court to Class Counsel, (b) any incentive payments awarded by the Court to the Named Plaintiff or deponents, (c) the FLSA Enhancement Fund, and (d) all Administration Costs.  The FLSA Opt-in Plaintiffs, excluding the Named Plaintiff, shall partake their share of $21,000 from FLSA Enhancement Fund, subject to the allocation formula described herein.  All Class Members shall partake in equal shares of the Equal Distribution Fund, which is 33.3% of the Net Claims Fund, and no Claim Form is required to entitle a Class Member to that share. All Claimants shall partake in proportional shares of the Proportional Distribution Fund, which is 66.7% of the Net Claims Fund.

33.     A "Notice Packet" means the collection of documents that shall be sent by first class mail to each Class Member, and also made available on a website established by the Claims Administrator, consisting of the Class Notice, the Claim Form, the Exclusion Form, and a Claims Administrator-addressed, postage prepaid return envelope.

34.     The "Notice Period" refers to the period during which Class Members may submit Claim Forms or Exclusion Forms or file objections to the Settlement, according to the terms of the Settlement Agreement, and ends coinciding with the Claim Deadline.

35.     An "Opt-Out" is a Class Member who has timely filed a Request for Exclusion using the process specified in the Agreement.

36.     The "Opt-Out Period" refers to the period during which Class Members may exclude themselves from the Settlement, and ends coinciding with the Claim Deadline.

37.     The "Parties" refers to the Named Plaintiff, FLSA Opt-in Plaintiffs, and State Law Class Members, Defendants, and in the singular refers to either of them, as the context makes apparent.

38.     The "Preliminary Approval Date" is the date on which the Court issues the Preliminary Approval Order.

39.     "Released Counterclaims" means all counterclaims that were asserted or could have been asserted by any Defendant against any Plaintiff, FLSA Opt-in Plaintiff, or State Law Class Member in this action for the period between and including August 26, 2011 and January 25, 2016, including but not limited to: claims for remission of entertainment fees, conversion, restitution, fraud, fraud in the inducement, innocent misrepresentation, unjust enrichment, quantum meruit, set off, accounting, constructive trust, or any similar causes of action that were asserted in, could have been asserted in, arise out of, or are related to the subject matter of this Litigation.  The Released Counterclaims shall exclude and shall only exclude counterclaims against a Class Member who is not Plaintiff, an FLSA Opt-in Plaintiff, or a Claimant, where such counterclaims are actually raised by a Defendant in a suit against the Defendant asserting a violation of the FLSA.

40.     The "Released Counterclaim Parties" means the Named Plaintiff, FLSA Opt-in Plaintiffs, and State Law Class Members.

41.     The "Released Parties" means the same as "Defendants" and includes Defendants' present and former parent companies, subsidiaries, affiliated entities, shareholders, owners, officers, directors, employees, agents, attorneys, insurers, and successors and assigns.

42.     "Released State Law Claims" means: 1) any claims under the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and Collection Law, and the common law doctrines of unjust enrichment and successor liability (for damages related to any of the aforementioned substantive claims); 2) that were accrued by State Law Class Members between and including August 26, 2011 and January 25, 2016; and 3) that were asserted in, could have

14

been asserted in, arise out of, or are related to the subject matter of this Litigation.  The Parties stipulate and agree only for purposes of this Agreement that the Court has jurisdiction over all applicable state law claims pursuant to 28 U.S.C. § 1332(d).

43.     "Released Federal Law Claims" means any claims under the federal Fair Labor Standards Act accrued by the Named Plaintiff, the FLSA Opt-in Plaintiffs, and State Law Class Members (but only those who submit valid claim forms) prior to January 26, 2016 and that were asserted in, could have been asserted in, arise out of, or are related to the subject matter of this Litigation.

44.     The "Request for Exclusion" means a request that a Class Member timely and properly submits to the Claims Administrator to be excluded from the Settlement.

45.     The "Settlement Account" means the interest-bearing account controlled by the Claims Administrator at a federally-insured bank, mutually acceptable to the Parties and to the Claims Administrator, into which the installment payments by Defendants to fund the Gross Settlement Amount is or will be deposited.  No other funds shall be commingled within the Settlement Account.

46.     "Settlement Agreement" or "Settlement" refers to this Class Action Settlement Agreement.

47.     The "Settlement Amount" is $415,000, which is the maximum total amount that Defendants shall pay under the terms of this Settlement Agreement, and from which all payments contemplated by this Agreement shall be made.

48.     "Settlement Class" means all Class Members except those State Law Class Members who submitted a valid Request for Exclusion.

49.     A "Settlement Payment" means a Claimant's portion of the payment from the Class Settlement Fund to which that Claimant is entitled pursuant to the Settlement Agreement. Settlement Payments shall be made pursuant to the allocation(s) set forth in Section IV.

50.     The "State Law Class Members" (each a "State Law Class Member") or the "State Law Class" refers to members of the previously certified class in this action: all individuals who performed as entertainers at Gold Club located at 1416 Chancellor Street in Philadelphia, PA on any date between August 26, 2011 and January 25, 2016.

## II.     **SETTLEMENT APPROVAL PROCEDURE**

51.     This Agreement will become final and effective only upon the occurrence of all of the following events:  (a) the Agreement is executed by the Parties; (b) the Court approves the material terms of the Settlement as set forth in this Agreement and enters an order of Preliminary Approval; (c) the Notice Package is sent to the Class Members; (d) Class Members are afforded the opportunity to submit claims, exclude themselves from the Settlement by submission of a Request for Exclusion, or file written objections; (e) the Court holds the Fairness Hearing and enters Final Judgment; and (f) any and all possible appeals of the Final Judgement have been exhausted and/or the time to take such appeals have expired, with the Final Judgement having been upheld and not reversed, overturned, or vacated.

## III.     **DUTIES OF THE PARTIES PRIOR TO COURT APPROVAL**

52.     As soon as is practicable and without undue delay, the Parties shall submit this Settlement Agreement to the Court, seeking preliminary approval of the Settlement Agreement. The Parties shall apply to the Court for the entry of an order substantially in the following form:

   a.     Preliminarily approving the Settlement Agreement, subject only to the objections of Class Members, modification of the Settlement Agreement if agreed to by both parties, and final review by the Court;

b.      Approving as to form and content the Class Notice and Notice Package contents;

c.      Approving as to form and content the proposed Claim Form and Exclusion Form;

d.      Directing the mailing of the Notice Package by first class mail to Class Members; and

e.      Scheduling a final hearing on the question of whether the proposed settlement, including without limitation payment of attorneys' fees, costs, and litigation expenses should be finally approved as fair and reasonable.

## IV.     SETTLEMENT AMOUNT, SCHEDULE, SECURITY, AND ALLOCATION

53.      No later than 90 calendar days after the Effective Date, Defendants shall deliver to the Settlement Administrator the first installment payment towards the Gross Settlement Amount, which shall be deposited into the Settlement Account. Each year thereafter for three years, Defendants shall deliver a further installment payment to the Settlement Administrator no later than the respective anniversary of the first payment in each particular year.

54.      The schedule of installment payments and targets of distribution are as follows:

I) 90 days after Effective Date — First installment payment. Proceeds to be allocated to all payments made from the Equal Distribution Fund, and remainder distributed *pro rata* for: 1/3 the total of each of the following: FLSA Enhancement Payments, Incentive Awards, and Administrator Costs.

II) 455 days after the Effective Date (1 year after first installment payment) — Second installment payment. Proceeds to be allocated *pro rata* for: One-half of all payments made from the Proportional Distribution Fund; remainder distributed *pro rata* for: 1/3 the total of each of the following: FLSA Enhancement Payments, Incentive Awards, and Administrator Costs.

III) 820 days after the Effective Date (2 years after first installment payment) — Third installment payment. Proceeds to be allocated *pro rata* for: One-half of all payments made from

the Proportional Distribution Fund; remainder distributed *pro rata* for: 1/3 the total of each of the following: FLSA Enhancement Payments, Incentive Awards, and Administrator Costs.

IV) 1185 days after the Effective Date (3 years after first installment payment) — Fourth and final installment payment. Proceeds to be allocated to Class Counsel's awarded fees and expenses.

55.     The first installment payment shall be of sufficient size to fund the entire Equal Distribution Fund and pay 1/3 of the totals of each of the following: the FLSA Enhancement Fund; the Incentive Awards, and Administrator Costs. The second and third installment payments shall each be of sufficient size to fund one-half of the Proportional Distribution Fund and 1/3 of the totals of each of the following: the FLSA Enhancement Fund; the Incentive Awards, and Administrator Costs The fourth installment payment shall consist only of the Court-awarded Class Counsel fees and expenses.

Illustration:  Assume the Court awards Class Counsel $128,700 in attorney fees and $15,000 in expenses. The amount remaining in the Gross Settlement Amount would be $271,300. Assume the Court also approves total incentive awards of $14,000, the FLSA Enhancements totaling $21,000, and administration expenses of $20,000. The Net Claims Fund would be $216,300, of which the Equal Distribution Fund (1/3rd) would be $72,027.90 and the Proportional Distribution Fund (2/3rds) would be $144,272.10. Therefore, Defendants' minimum payment requirements would be as follows:

**First installment: $90,361.22**

(100% of Equal Distribution Fund ($72,027.90) + 1/3rd of FLSA Enhancements ($7,000) + 1/3rd of Incentive Awards ($6,666.66) + 1/3rd of Admin Expenses ($4,666.66))

**Second installment: $90,469.37**

(50% of Proportional Distribution Fund ($72,136.05) + 1/3rd of FLSA Enhancements

($7,000) + 1/3rd of Incentive Awards ($6,666.66) + 1/3rd of Admin Expenses ($4,666.66))

**Third installment: $90,469.39**

(50% of Proportional Distribution Fund ($72,136.05) + 1/3rd of FLSA Enhancements

($7,000) + 1/3rd of Incentive Awards ($6,666.67) + 1/3rd of Admin Expenses ($4,666.67))

**Fourth installment: $143,700.00**

(Attorney Fees + Expenses)

Should the Court award Class Counsel less than the figures above, the first three

minimum payments would be larger and the fourth payment would be smaller, to account for the

increased size of the Net Claims Fund.

56.     If Defendants fail to make a payment to the Claims Administrator in accordance

with the schedule set forth herein, Defendants will be deemed to be in default of this Agreement

and the entire unpaid balance of the Gross Settlement Amount will be due immediately.

57.     Defendants agree that in the event of a default, Class Counsel may immediately

move the Court for the entry of a judgment against Defendants for the entire amount of the

unpaid balance of the Gross Settlement Amount.

58.     As security against the risk of Defendants' default of their obligations under this

Agreement, Defendant APM Club, Inc. shall give the Settlement Class a security interest in

Pennsylvania Liquor License No. R-7421, and all furniture, fixtures, and equipment located

within the Gold Club at 1416 Chancellor Street, Philadelphia, PA. This security interest will be

held in the name of the Claims Administrator, Analytics Consulting, LLC as receiver on behalf

of the Settlement Class and Class Counsel.

Defendants shall cooperate with Plaintiff, Class Counsel, and Claims Administrator to permit them to do everything necessary to ensure that this security interest is properly recorded and perfected prior to the Final Approval Hearing. In the event that the Court does not grant Final Judgment or that the Final Judgment is overturned, reversed, overturned or modified in any material fashion on appeal, rehearing, or reconsideration, all security interests identified above shall be null and void, and Plaintiff, Class Counsel, and the Claims Administrator shall cooperate and do all things necessary to remove any recording or record of such security interest.

59.     Except as set forth in this Agreement, no other funds shall be added to or commingled with the Settlement Account.  In no event shall the Claims Administrator withdraw, transfer, pledge, impair or otherwise make use of the funds in the Settlement Account except as expressly provided in this Settlement Agreement.  The Parties agree that the Settlement Account is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code and Treas. Reg. § 1.468B-1, 26 C.F.R. § 1.468B-1, *et seq.,* and will be administered by the Claims Administrator as such.  All interest accruing thereon shall become part of the Gross Settlement Amount.

60.     With respect to the Settlement Account, the Claims Administrator shall:  (1) open and administer the Settlement Account in such a manner as to qualify and maintain the qualification of the Settlement Account as a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. § 1.468B-1; (2) calculate, withhold, remit and report each Claimant's share of applicable payroll taxes, if any, in connection with the Settlement Payment; (3) satisfy all tax reporting, return and filing requirements with respect to the Settlement Account and any interest or other income earned by the Settlement Account; and (4) satisfy out of the Settlement Account all taxes (including any estimated taxes, interest or penalties) with respect to the interest

or other income earned by the Settlement Account. Fees, expenses and costs incurred in connection with the opening and administration of the Settlement Account shall be treated as and included in the costs of administering the Settlement Account and as Administration Costs. The Parties and the Claims Administrator shall elect to treat the Settlement Account as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 C.F.R. § 1.468B-1(j)(2)(i), and such election statement shall be attached to the appropriate returns as required by 26 C.F.R. § 1.468B-1(j)(2)(ii). The Parties agree to cooperate with the Claims Administrator and one another as necessary to effectuate the terms of this Settlement Agreement.

61.     The Settlement Account shall be used to pay:

a.      Court-approved Settlement Payments of the Class Members;

b.      The attorneys' fees, costs, and litigation expenses of Class Counsel, as awarded by the Court;

c.      Incentive payments awarded to the Named Plaintiff and deponents by the Court;

d.      Applicable taxes; and

e.      Any and all Administration Costs.

62.     Class Members who are FLSA Opt-in Plaintiffs, including the Named Plaintiff, shall partake in the FLSA Enhancement Fund of $21,000.

63.     Class Members (including Named Plaintiff and FLSA Opt-in Plaintiffs) shall partake in equal shares of the Equal Distribution Fund, which consists of 33.3% of the Net Claims Fund.

64.     Class Counsel will request that the Court grant an incentive award of $10,000 to Jessica Herzfeld and awards of $1,000 to each of the four FLSA Opt-in Plaintiffs who sat for depositions in this action (Jennifer Davis, Samantha Shapley, Sherri Crane, Sandra Pereira). If

approved, such payments to those individuals shall be in addition to payments those individuals

receive from the FLSA Enhancement Fund and the Net Claims Fund.

65.     The FLSA Enhancement Fund shall be distributed to the FLSA Opt-in Plaintiffs

in equal shares.  The seven FLSA Opt-in Plaintiffs, including the Named Plaintiff, shall each

receive $3,000 from the FLSA Enhancement Fund.

66.     Claimants shall also receive distributions from the Proportional Distribution Fund,

which is 66.7% of the Net Claims Fund, and such distributions will be based on the length of

each Claimant's credited tenure at Gold Club in proportion to the tenures of all other Claimants

during the Class Period.  The determination of each Claimant's credited tenure shall be made by

the Claims Administrator based on all available evidence, including: any documents produced by

Defendants; the claim forms and any documents submitted by Claimants; and deposition

testimony. The Claims Administrator may consult with Class Counsel regarding the tenure

determinations, but the ultimate authority to decide a Claimant's proportional share of

Proportional Distribution Fund will lie exclusively with the Claims Administrator.

Distributions of all payments from the Equal Distribution Fund will be made after receipt

of Defendants' first installment payment.  Distribution of each Claimant's share of the

Proportional Distribution Fund will be made in two payments: 50% after receipt of Defendants'

second installment payment and 50% after receipt of Defendants' third installment payment.

67.     For income and payroll tax purposes, the Parties agree that 100% of each

Settlement Payment shall be treated as miscellaneous income and reported through Form 1099.

Any incentive payments awarded to Named Plaintiff or deponents shall be treated as

miscellaneous income and reported through Form 1099. Other than any withholding and

reporting requirements determined to be applicable by the Claims Administrator, Class Members

shall be solely responsible for the reporting and payment of their share of any federal, state and/or local income or other taxes on payments received pursuant to this Settlement.

68.     To the extent permitted by law, in no event shall any Settlement Payment to a Class Member or any Incentive Payment create any credit or otherwise affect the calculation of or eligibility for any compensation, bonus, deferred compensation or benefit under any compensation, deferred compensation, pension or other benefit plan, nor shall any such Settlement Payment or Incentive Payment be considered as "compensation" under any pension, retirement, profit sharing, incentive or deferred compensation benefit or plan, nor shall any such payment or award require any contribution or award under any such plan, or otherwise modify any benefits, contributions or coverage under any other employment compensation or benefit plan or program.

69.     The Claims Administrator shall determine any applicable payroll tax obligations related to the Settlement Payments to Class Members, and shall ensure that Settlement Payments are adjusted so as to enable all applicable taxes to be paid out of the available funds.  The Claims Administrator shall thereafter remit and report the applicable portions of the payroll tax payment to the appropriate taxing authorities on a timely basis pursuant to its duties and undertakings.

## V.     CLAIMS PROCEDURE

70.     Following the Preliminary Approval Order, Class Counsel and Counsel for Defendants will cooperate to ensure that the Claims Administrator is in possession of the most recent and accurate Class Contact Information available to the Attorneys.

71.     No later than fourteen (14) calendar days following receipt of the data from Attorneys, the Claims Administrator shall mail to each Class Member the Notice Packet at that person's last-known address.  This mailing shall be made via first class mail through the U.S. Postal Service, postage pre-paid.

72.     The equal payments from the Equal Distribution Fund will be made by the Claims Administrator to all Class Members who are known at the time of the Claims Deadline.

73.     To receive a distribution from the Proportional Distribution Fund, a Class Member must materially complete and execute and submit a Claim Form to the Claims Administrator no later than the Claim Deadline, as defined above.  Unless a Notice Packet is returned to the Claims Administrator by U.S. Postal Service as undeliverable, each Notice shall be deemed mailed and received by the Class Member to whom it was sent, and the date of mailing shall control calculation of the Claim Deadline.

74.     The date of submission of a Claim Form to the Claims Administrator is deemed to be the earlier of: (a) the date the Claim Form is deposited in the U.S. Mail, postage pre-paid, as evidenced by the postmark; (b) the date the Claim Form is tendered to an overnight service for delivery, as indicated by a shipping envelope; or (c) the date of receipt by the Claims Administrator of the Claim Form.  The Claims Administrator shall review each Claim Form for timeliness and material completeness.  In the event a Claim Form is timely but is not materially complete, the Claims Administrator shall immediately notify the Class Member, via U.S. mail, about the deficiency.  The Class Member shall have twenty-one days (21) days following the date of mailing of the deficiency notice to cure the deficiency and resubmit the Claim Form. Class Counsel may, in its sole discretion, choose to honor any late but otherwise valid Claim Form returned by any Class Member within ninety (90) calendar days after the Claim Deadline, in which case such Class Members will be deemed to have timely submitted the Claim Form for purposes of this Agreement.  Absent Class Counsel's consent, however, any Class Member who fails to return the properly executed Claim Form by the Claim Deadline will not be eligible to

receive any payment from the Proportional Distribution Fund.  The Claims Administrator shall promptly notify the Parties of any dispute about the validity of a Claim Form.

75.      The Claims Administrator shall be bound by the terms of this Settlement Agreement.  In the event that an issue arises that the Claims Administrator must resolve that is not specifically addressed in the Agreement or is ambiguously addressed, the Claims Administrator shall report to the Attorneys for guidance.

76.      With regard to any settlement documents or checks that are returned to the Claims Administrator as undeliverable, the Claims Administrator will perform customary database searches or skip traces to locate a current address and, if a current address is located, shall promptly re-mail the settlement documents or checks, and all Attorneys agree to provide promptly all information within their possession and requested by the Claims Administrator to research a correct address.

77.      Claimants must identify on the Claim Form the timeframes during which they performed at Gold Club and provide as much specificity as possible and any documents (e.g. schedules, receipts, calendars, etc.) evidencing their claims to the extent such documents are in their possession.

78.      Only members of the Settlement Class may object to the Settlement Agreement. To object to the Agreement, the member of the Settlement Class must send a written objection to the Claims Administrator with copies to Class Counsel and Defendant's counsel, no later than the Claim Deadline.  The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection.

79.     The Claims Administrator shall promptly notify and send a copy of the objection to both counsel for Defendant and Class Counsel, and shall provide Class Counsel with objecting Claimant's last known telephone number as reflected in the Class Contact Information.

80.     For a Class Member to exclude herself from the Settlement, she must submit a Request for Exclusion form to the Claims Administrator.  A blank, fillable Request for Exclusion form will be included in the Notice Packet.  All Requests for Exclusion must be submitted by the Claim Deadline.  No Settlement Class member may exclude herself by telephone.  The date of submission is deemed to be the earlier of: (a) the date the form is deposited in the U.S. Mail, postage pre-paid, as evidenced by the postmark; or (b) the date the form is received by the Claims Administrator. Any Class Member who submits a timely and valid Request for Exclusion Form shall NOT: (i) be bound by any orders or judgments entered in this Class Action Litigation; (ii) be entitled to benefits or relief under this Settlement Agreement; (iii) gain any rights by virtue of this Settlement Agreement; or (iv) be entitled to object to the Settlement or appeal from any order of the Court.  Upon receipt of a Request for Exclusion, the Claims Administrator shall promptly notify and send a copy of the Request for Exclusion to both counsel for the Class and Defendant.  If a fully completed and properly executed Request for Exclusion is not timely received by the Claims Administrator from a Class Member, then that Class Member will be deemed to have forever waived her right to opt out of the Class.  If a Class Member submits both a timely Claim Form and a timely Request for Exclusion, the Claims Administrator shall promptly notify and send copies of the Claim Form and the Request for Exclusion to both counsel for Defendant and Class Counsel, shall provide Class Counsel with such Settlement Class member's last known telephone number as reflected in the Database, and will attempt to contact that individual to ascertain her intent. If those efforts are unsuccessful, whichever

26

document was mailed later will govern, and if both documents were mailed simultaneously, or the sequence of mailings cannot be determined, then the Claim Form shall govern.

81.     No later than 14 calendar days following the Claim Deadline, the Claims Administrator shall prepare and tender a report to Class Counsel and Defendant's counsel containing the following information: (1) the name and last-known address (as updated through the claims administration process) of each Class Member; (2) the name, last-known address, and last-known telephone number of each Class Member who submitted a valid Request for Exclusion; and (3) the overall percentage of Class Members who submitted Requests for Exclusion.  For each Class Member, the report shall further provide: (a) the estimated gross Settlement Payments to that Settlement Class Member, before deduction of the employee's share of taxes and withholding; (b) the net Settlement Payments to the Settlement Class Member, after deduction of the employee's share of taxes and withholding; and (c) a breakdown of each Class Member's check schedule based on the funds the Class Member is participating in and the sequence of allocation of the installment payments set forth above.

82.     No later than seven (7) calendar days in advance of the final approval hearing, or by such other date as the Court may direct: (1) Class Counsel shall file and serve a motion for final approval of the Settlement; and (2) the Parties shall file a proposed order granting final approval of the Settlement, along with a proposed judgment that conforms with Fed. R. Civ. P. 58.

83.     Within 14 calendar days after each of the first three installment payments is made by Defendants, the Claims Administrator shall mail to each Class Member, at her last-known address as reflected in the Report, a check representing the Settlement Payment or *pro rata* payment that corresponds with the Class Member and the installment schedule, as listed in the

Report.  In the event that any Settlement Payment check is returned to the Claims Administrator as undeliverable, the Claims Administrator will use reasonable efforts to locate a current address for the Settlement Class Member and, if a current address is found, re-mail the check.

84.     The Claims Administrator shall be responsible for deducting and withholding the employee's share of all required income, payroll and other taxes, if any, and for deducting, withholding and remitting all necessary taxes and withholdings to the appropriate governmental agencies, if any.  The Claims Administrator shall also be responsible for determining the employer's share of payroll taxes on Settlement payments to Settlement Class Members, if any, for communicating such amount to Defendants, and for remitting and reporting the applicable portions of Defendants' payroll tax payment to the appropriate taxing authorities on a timely basis.

85.     Pursuant to the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants will notify the appropriate governmental authorities, including, but not limited to, the attorneys general of the United States and Pennsylvania.  Defendant also agrees to provide documents and information to the appropriate governmental authorities pursuant to Section 1715.

## VI.     CLAIMS ADMINISTRATOR

86.     The Parties agree that that Analytics Consulting, LLC will serve as Claims Administrator.  The Parties shall have the right to select or substitute a different Claims Administrator by mutual agreement if the need arises.  The Claims Administrator will be responsible for mailing the Notice Packets; initiating a dedicated website; receiving and logging the Claim Forms and Requests for Exclusion; researching and updating addresses through skip-traces and similar means; reporting on the status of the administration of the Settlement to the Parties; resolving any claims dispute, in concert with the counsel for the Parties; preparing a declaration regarding its due diligence in the claims administration process; providing the Parties

with all necessary data; setting up, administering and making payments from the Settlement Account; distributing Settlement Payments and withholding therefrom the Claimants' share of payroll taxes, and remitting such funds to the appropriate taxing authorities, along with any associated tax reporting, return and filing requirements; serving as the named holder of the security interest referenced above on behalf of the Class Members and Class Counsel; cooperating with Class Counsel to liquidate and distribute any proceeds from any assets received in the event of Defendants' default; and performing such additional duties as the Parties may mutually direct. All disputes relating to the Claims Administrator's performance of its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Settlement until all payments and obligations contemplated by this Settlement have been fully carried out.

87.     The actions of the Claims Administrator shall be governed by the terms of the Settlement Agreement.  Class Counsel and Defendant's Counsel may provide relevant information and guidance as needed by the Claims Administrator in the performance of its duties, and engage in related communications with the Claims Administrator with notice and copies to one another, but without notice or copies to the Settlement Class members or the Court, unless requested by the Court.

## VII.   ATTORNEYS' FEES AND EXPENSES

88.     Class Counsel will move the Court for an award of attorneys' fees, litigation expenses and costs of up to 35% of the Settlement Amount. Class Counsel will move for no more than $128,700 for attorney fees and no more than $15,000 for expenses. Defendant will not oppose these requests.

89.     The Claims Administrator shall use the fourth and final installment payment from Defendants to pay Class Counsel, in an amount equal to the attorneys' fees and litigation expenses/costs that are awarded by the Court.

90.     Named Plaintiffs and Class Counsel understand and agree that any fee payments made under this Agreement will be the full, final, and complete payment of all attorneys' fees and costs arising from or relating to the representation of the Named Plaintiffs, Class Members, Claimants, or any other attorneys' fees and costs associated with the investigation, discovery, and/or prosecution of this Action.  Named Plaintiffs and Class Counsel specifically acknowledge and understand that Class Counsel shall not be entitled to an amount of attorneys' fees and litigation expenses/costs that is greater than 35% of the Settlement Amount or the amount ordered by the Court.

## VIII.   <u>RELEASES</u>

91.     Upon Final Approval and in consideration of obligations as set forth in this Agreement, the Class Members, on behalf of themselves and each of their heirs, executors, administrators, representatives, successors, assigns, and attorneys, and all persons who may have a cause of action through them, shall be deemed to unconditionally, irrevocably, completely and forever release and discharge all Released State Law Claims.  In addition, upon Final Approval, the Named Plaintiff, Class Members who are Claimants, and the FLSA Opt-In Plaintiffs shall be deemed to unconditionally, irrevocably, completely and forever release and discharge all Released State Law Claims and all Released Federal Law Claims.  Class Members may hereafter discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of the Released State Law and Released Federal Law Claims. However, on Final Approval (and to the extent provided for in this paragraph), Class Members who are Claimants shall be deemed to have, and by operation of the Final Judgment fully,

finally, and forever settled and released any and all of the Released State Law and Released Federal Law Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts which are released by this Agreement.  This release includes but is not limited to any and all claims based upon the Fair Labor Standards Act (FLSA); Pennsylvania Minimum Wage Act (PMWA), Pennsylvania Wage Payment and Collection Law (WPCL); and any all amendments to said laws; and any other statutory, common law, or public policy claim related to the facts and claims alleged in the Amended Complaint; whether in law or in equity; whether statutory or common law; whether of any type whatsoever from the beginning of the world to the Effective Date of this Agreement.  This complete release additionally includes, without limitation, any and all claims for attorney's fees, costs, and expenses.

92.     The Class Members acknowledge that a portion of the payments received pursuant to this Agreement constitute consideration that they are accepting in place of any compensation they may otherwise be entitled to receive from Gold Club/Defendants, and that they are not entitled to any additional compensation.

93.     Each Class Member who has not submitted a valid Request for Exclusion forever agrees that she shall not institute any action seeking, nor accept, back pay, overtime premiums, penalties, liquidated damages, punitive damages, penalties of any nature, attorneys' fees and costs, or any other relief from any other suit, class or collective action, administrative claim or other claim of any sort or nature whatsoever against Released Parties, for any period through the

Preliminary Approval Date, arising from any claims released in this Agreement, with the understanding that only the Named Plaintiff, Class Members who are Claimants, and the FLSA Opt-In Plaintiffs shall be deemed to have released the Released Federal Law Claims pursuant to this Agreement.  This release shall become effective upon the Final Approval of the Settlement Agreement.

94.     Upon Final Approval, Defendants, on behalf of themselves and each of their heirs, executors, administrators, representatives, successors, assigns, and attorneys, and all persons who may have a cause of action through them, shall be deemed to unconditionally, irrevocably, completely and forever release and discharge all Released Counterclaims. This complete release additionally includes, without limitation, any and all claims for attorney's fees, costs, and expenses, which are related to the Released Counterclaims.

## IX.     NO ADMISSION OF LIABILITY

95.     This Agreement shall not in any way be construed as an admission by Defendant that it has acted wrongfully with respect to Named Plaintiffs or Class Members collectively or individually or to any other person, or that those individuals have any rights whatsoever against Defendant, and Defendant specifically disclaims any liability to or wrongful acts against the Named Plaintiffs and Class Members or any other person, on the part of Defendant, and its predecessors, successors and assigns, its current and former direct and indirect parents, affiliates, subsidiaries, divisions, and related business entities, and its and their current and former officers, directors, owners, shareholders, employees, attorneys, agents, and representatives.  Furthermore, the Parties agree that this Agreement does not constitute an adjudication of the merits of the Litigation or any other matters released in this Agreement.  Accordingly, the Parties agree that none of them has prevailed on the merits, nor shall this Agreement serve or be construed as

evidence that any party has so prevailed or that Defendant or the Released Parties have engaged in any wrongdoing or unlawful activity.

96.      This Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce its terms.

## X.     DUTIES OF THE PARTIES RELATED TO FINAL COURT APPROVAL

97.      No later than seven (7) calendar days prior to the date of the final approval hearing, or by such other date as the Court may direct, the Parties shall submit a proposed final order and judgment:

    a.      Approving the Settlement, adjudging the terms thereof to be fair, reasonable, and adequate, and directing consummation of its terms and provisions;

    b.      Approving the Settlement Payments;

    c.      Approving Class Counsel's application for an award of attorneys' fees and costs;

    d.      Approving incentive awards to the Named Plaintiff and deponent;

    e.      Dismissing this lawsuit with prejudice and permanently barring and enjoining all Settlement Class Members from filing or prosecuting against Released Parties, any individual or class or collective claims released herein pursuant to Section VIII above, upon satisfaction of all payments and obligations hereunder.

## XI.   PARTIES' AUTHORITY

98.      The signatories hereto hereby represent that they are fully authorized to enter into this Settlement and bind the Parties hereto to its terms and conditions.

## XII.  MUTUAL FULL COOPERATION

99.      The Parties agree to fully cooperate with each other to accomplish the terms of this Settlement, including but not limited to, execution of such documents and taking such other action as reasonably may be necessary to implement the terms of this Settlement.  The Parties to

this Settlement shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Settlement and the terms set forth herein.  As soon as practicable after execution of this Settlement, Class Counsel shall, with the assistance and cooperation of the Defendants and its counsel, take all necessary steps to secure the Court's final approval of this Settlement.

100.    Should the Court not approve the Agreement, or should the Court not approve and enter the Preliminary Approval Order (or in a form without any changes by the Court that either of the Parties deems material), the terms of this Agreement will be null and void, the Parties will retain all rights and defenses in the Litigation, and all negotiations and information and materials pertaining in any way to this Agreement or the settlement of the Litigation will be inadmissible. In such an event, the Parties agree in good faith to negotiate about appropriate revisions and re-submit for the Court's approval.  In the event this settlement is never approved by the Court, the Parties will retain all rights and defenses in the Litigation, and all negotiations and information and materials pertaining in any way to this Litigation or the settlement of the Litigation will be inadmissible.

## XIII.   DATA REASONABLY ACCURATE

101.    The computation of Settlement Payments to Claimants will be based in part on documents produced by Defendants. Defendants represent that, to the best of their knowledge and belief, all data supplied is reasonably accurate, and Defendants further understand that this representation is a material term of this Agreement.

## XIV.   FAIR, ADEQUATE, AND REASONABLE SETTLEMENT

102.    The Parties agree that the Settlement Agreement is fair, adequate, and reasonable, and will so represent to the Court.

## XV.    COMMUNICATIONS

103.    Unless otherwise specifically provided, all notices, demands or other communications given under this Settlement shall be in writing and shall be deemed received on the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

a.    **To the Plaintiffs:**

ATTN: Jamisen Etzel or Gary Lynch
Carlson Lynch Sweet Kilpela & Carpenter, LLP, 1133 Penn Ave., 5th Floor, Pittsburgh, PA 15222, Telephone: 412-322-9243, Facsimile: 412-231-0246

b.    **To Defendants:**

ATTN: Matt Hoffer
Shafer & Associates, P.C.
3800 Capital City Boulevard, Suite 2
Lansing, MI  48906
Tel: 517-886-6560; Fax: 517-886-6560

AND

Pasquale J. Colavita
Pasquale J. Colavita, P.C.
1026 Winter Street, Suite 300B
Philadelphia, PA  19107
Tel: 215-351-5300; Fax 215-440-7882

## XVI.    CONSTRUCTION

104.    The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arms-length negotiations between the Parties, and that the Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his/her or its counsel participated in the drafting of this Settlement.

## XVII.  CAPTIONS AND INTERPRETATIONS

105.     Paragraph titles or captions contained in this Settlement are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement or any of its provisions.

## XVIII. MODIFICATION

106.     This Settlement Agreement may not be changed, altered, or modified, except in writing and signed by the Parties and approved by the Court.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties and approved by the Court.

## XIX.  INTEGRATION CLAUSE

107.     This Settlement Agreement contains the entire agreement between the Parties relating to the settlement of the Litigation, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged in this Settlement.  No rights under this Settlement may be waived except in writing.

## XX.  BINDING ON ASSIGNS

108.     This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, assigns, guardians, conservators, and court-appointed representatives.

## XXI.  COUNTERPARTS

109.     This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement

Agreement.  A copy, facsimile or digital image of this executed Agreement or a counterpart shall be binding and admissible as an original.

## XXII.   APPLICABLE LAW

110.    This Settlement Agreement shall be governed by and construed in accordance with Pennsylvania law.

## XXIII. RETENTION OF JURISDICTION

111.    The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, and all Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the terms of this Settlement Agreement.

**CLASS COUNSEL:**                                   **NAMED PLAINTIFF:**

_____        _____

Gary F. Lynch                                       Jessica Herzfeld

_____

Jamisen A. Etzel


**ATTORNEYS FOR DEFENDANTS:**           **DEFENDANTS:**

_____        _____

Matt Hoffer                                         Anthony P. Milicia, for himself and APM Club, Inc.

_____        _____

Pasquale Colavita                                   Deborah Milicia, for 1416 Chancellor, Inc.

_____